**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAREN WEGMANN,

                Plaintiff,

v.

YOUNG ADULT INSTITUTE, INC., *et al.*,

                Defendants.

Case No. 1:15-cv-03815-KPF

ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 1

II.  STANDARD FOR MOTION TO DISMISS UNDER 12(b)(6) ............................. 4

III. ARGUMENT ......................................................................................................... 5

   A.  The Court Should Dismiss Ms. Wegmann's ERISA Claims .................................. 5

      1.  Ms. Wegmann's Claim For Benefits Under ERISA § 502(a)(1)(B) Should Be
          Dismissed ..................................................................................................... 5

      2.  Ms. Wegmann Is Not Entitled To Equitable Relief Under ERISA Or A Promissory
          Estoppel Theory ........................................................................................... 8

      3.  ERISA § 510 Does Not Afford Ms. Wegmann Any Relief .......................... 11

   B.  The Court Should Dismiss Ms. Wegmann's State Common Law Claims As Preempted By
       ERISA ................................................................................................................ 12

   C.  The Court Should Dismiss Ms. Wegmann's Federal, State, And Local Law Discrimination
       Claims ............................................................................................................... 14

      1.  Ms. Wegmann's Sex And Gender Discrimination Claims Are Time-Barred ............... 14

      2.  Ms. Wegmann Fails To Make A Prima Facie Case For Sex And/Or Gender
          Discrimination ............................................................................................. 17

IV. CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07 CIV. 7017 (DAB), 2009 WL 928143
(S.D.N.Y. Mar. 20, 2009)...................................................................................................... 9
*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)....................................................................... 13
*Aramony v. United Way of Am.*, 949 F. Supp. 1080 (S.D.N.Y. 1996)......................................... 13
*Arnold v. Storz*, No. 00-CV-4485 (CBA), 2005 WL 2436207 (E.D.N.Y. Sept. 30, 2005) .......... 10
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................ 4, 5, 11
*Baba v. Warren Mgmt. Consultants, Inc.*, 882 F. Supp. 339 (S.D.N.Y.), *aff'd*, 89 F.3d 826 (2d
Cir. 1995) ............................................................................................................................ 14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 5, 11
*Borden v. Blue Cross & Blue Shield of W. N.Y.*, 418 F. Supp. 2d 266 (W.D.N.Y. 2006).............. 5
*Bright v. Coca Cola Refreshments USA, Inc.*, No. 12 CIV. 234 BMC, 2014 WL 5587349
(E.D.N.Y. Nov. 3, 2014) ................................................................................................. 16, 18
*Burrell v. AT&T Corp.*, No. 03 CIV. 2490(SAS), 2005 WL 2656124 (S.D.N.Y. Oct. 18, 2005)
................................................................................................................................................13
*Cabrera v. NYC*, 436 F. Supp. 2d 635 (S.D.N.Y. 2006)............................................................... 15
*Callahan v. Unisource Worldwide, Inc.*, 451 F. Supp. 2d 428 (D. Conn. 2006) ..................... 9, 10
*Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234 (S.D.N.Y. 2000)...................................... 18
*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44 (2d Cir. 1999) .......... 7
*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...................................................... 5
*Chardon v. Fernandez*, 454 U.S. 6 (1981)................................................................................... 16
*CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) ..................................................................... 6, 8
*Cioinigel v. Deutsche Bank Ams. Holding Corp.*, No. 12 Civ. 434(KBF), 2013 WL 120618
(S.D.N.Y. Jan. 10, 2013)..................................................................................................... 11
*Demery v. Extebank Deferred Comp. SERP (B)*, 216 F.3d 283 (2d Cir. 2000)............................. 1
*Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94 (2d Cir. 1999)........................................ 10
*Devlin v. Empire Blue Cross Blue Shield*, 274 F.3d 76 (2d. Cir. 2001) ...................................... 10
*Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432 JMF, 2015 WL 1514955 (S.D.N.Y. Apr. 1,
2015)............................................................................................................................... 18, 19
*Eastman Kodak Co. v. Bayer Corp.*, 369 F. Supp. 2d 473 (S.D.N.Y. 2005), *vacated and
remanded on other grounds*, 452 F.3d 215 (2d Cir. 2006)...................................................2
*Edwards v. Akzo Nobel, Inc.*, 103 F. Supp. 2d 214 (W.D.N.Y. 2000)........................................ 11
*E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014) ......................................... 18
*Egan v. Marsh & McLennan Cos., Inc.*, No. 07CIV.7134(SAS), 2008 WL 245511 (S.D.N.Y. Jan.
30, 2008).......................................................................................................................... 7, 8
*Gary v. Pension Fund of Int'l Union of Operating Eng'rs,* 101 F.3d 682 (2d Cir. 1996) .............. 9
*Giordano v. Thomson*, 564 F.3d 163 (2d Cir. 2009)..................................................................... 6
*Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756 (2d Cir. 2005)................................... 9

i

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ..................................................... 4

*Jones v. Unum Life Ins. Co. of Am.*, 223 F.3d 130 (2d Cir. 2000) .................................................. 8

*Kubicek v. Westchester Cnty.*, No. 08-CV-372KMK, 2009 WL 3720155 (S.D.N.Y. Oct. 8, 2009) ................................................................................................................................... 15

*Ladouceur v. Credit Lyonnais*, 159 F. App'x 302 (2d Cir. 2005) ................................................ 10

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), *superseded, in part, by statute*, Fair Pay Act of 2009, Pub. L. No. 111–2, 42 U.S.C. § 2000e–5(e)(3)............................17

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) .......................................................... 13

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002)........................................ 4, 6

*McGath v. Auto-Body N. Shore, Inc.*, 7 F.3d 665 (7th Cir. 1993) ............................................... 12

*Milani v. Int'l Bus. Machs. Corp., Inc.*, 322 F. Supp. 2d 434 (S.D.N.Y. 2004), *aff'd*, 137 F. App'x 430 (2d Cir. 2005) ......................................................................................................... 14, 15

*Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89 (2d Cir. 1999) ............................................ 18

*O'Brien v. Rabobank Int'l*, No. 12 CIV. 9018, 2014 WL 1495971 (S.D.N.Y. Mar. 31, 2014) ... 16

*Pereira v. Cogan*, 200 F. Supp. 2d. 367 (S.D.N.Y. 2002) ............................................................ 2

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ................................................................... 13

*Raff v. Travelers Ins. Co.*, No. 90 CIV. 7673, 1996 WL 137310 (S.D.N.Y. Mar. 26, 1996)....... 13

*Rafter v. Liddle*, 704 F. Supp. 2d 370 (S.D.N.Y. 2010).............................................................. 4

*Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir. 2015)................................................ 8

*Roe v. Empire Blue Cross Blue Shield*, No. 12–cv–04788 (NSR), 2014 WL 1760343 (S.D.N.Y. May 1, 2014) ........................................................................................................................ 11

*Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238 (S.D.N.Y. 2001) ................................. 18, 19

*Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331 (2d Cir. 1997)..................................... 12

*Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72 (2d Cir. 1996)...................................... 10

*Seaman v. Arvida Realty Sales*, 985 F.2d 543 (11th Cir. 1993) ................................................. 12

*Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566 (E.D.N.Y. 2011) ..................................... 16

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)..................................................................... 11

*Tryals v. Altairstrickland, LP*, No. CIV.A. H-08-3653, 2010 WL 743917 (S.D. Tex. Feb. 26, 2010)........................................................................................................................................ 17

*Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167 (2d Cir. 2005).................. 9

*Williams v. AAA S. New England*, No. 13 CV 855 VB, 2015 WL 864891 (S.D.N.Y. Mar. 2, 2015)........................................................................................................................................ 12

*Young-Wolff v. McGraw-Hill Cos.*, No. 13-CV-4372 KMW JCF, 2014 WL 349711 (S.D.N.Y. Jan. 31, 2014) ......................................................................................................................... 5

*Zimmelman v. Teachers' Ret. Sys. of City of N.Y.*, No. 08 CIV 6958 DAB DF, 2010 WL 1172769 (S.D.N.Y. Mar. 8, 2010)............................................................................................. 17

**Statutes**

26 U.S.C. § 4958...............................................................................................................2

29 U.S.C. § 1051(2) ........................................................................................................ 1

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ............................................... *passim*

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ......................................................... *passim*

ERISA § 510, 29 U.S.C. § 1140 ............................................................................ *passim*

Fair Pay Act of 2009, Pub. L. No. 111–2, 42 U.S.C. § 2000e–5(e)(3)................................. 16, 17

**Rules**

Fed. R. Civ. P. 12(b)(6).........................................................................................*passim*

Defendants Young Adult Institute ("YAI" or "Company") and the Trustees of the Supplemental Pension Plan and Trust for Certain Management Employees of Young Adult Institute (collectively, "Defendants"), respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiff Karen Wegmann's complaint (Dkt. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     <u>INTRODUCTION</u>

In her complaint, Ms. Wegmann asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  The crux of each claim is that, because Ms. Wegmann is a woman, she was denied participation in and benefits under the Supplemental Pension Plan and Trust for Certain Management Employees of Young Adult Institute ("SERP" or "Plan").[1]  She alleges that she qualified to participate in the SERP in 2001.  (Compl. ¶ 48.)

YAI is a New York not-for-profit corporation dedicated to providing services to people with developmental disabilities and their families throughout the greater New York metropolitan area, New Jersey, Puerto Rico, and the U.S. Virgin Islands.  (Compl. ¶¶ 13, 15.)  It is a charity and a tax-exempt organization pursuant to Internal Revenue Code of 1986 § 501(c)(3).

YAI adopted the SERP in 1985.  (Compl. ¶ 34.)  The SERP is a so-called "top hat" plan: an employee benefit plan established for a "select group" of an organization's "management or highly compensated employees."[2]  29 U.S.C. § 1051(2) (defining top hat plans).  Put another

---

[1] The Supplemental Pension Plan and Trust for Certain Management Employees of Young Adult Institute and amendments is attached as Exhibit A ("Ex. A") to the Declaration of Michael J. Prame.

[2] Top hat plans are exempt from ERISA's funding, vesting and fiduciary rules.  *Demery v.*

way, not ***all*** "management" employees participate in top hat plans; rather only a "select group" are allowed to participate for the plan to qualify as a top hat plan.

Subsequent to YAI's adoption of the SERP, Congress passed several tax laws that had adverse tax consequences on top hat plans and other executive compensation arrangements.[3] In response to the changes in the tax law, YAI limited participation in the SERP to its Executive Director, Joel Levy, its Associate Executive Director, Phillip Levy, its Chief Financial Officer, Joseph Rut, and its Assistant Executive Directors, Stephen Freeman and Thomas Dern – all of whom were male, but each of whom was already a participant in the SERP. (Compl. ¶¶ 45-46.) By plan amendment, the SERP benefits of these five plan participants were frozen at their accrued value as of June 30, 2004. Another amendment to the SERP – adopted in 2008 – further memorialized that only those five individuals were participants in the SERP. (Compl. ¶¶ 44-45.)

Against this backdrop, Ms. Wegmann alleges that she satisfied the eligibility requirements to participate in the SERP in 2001, but the "net effect" of the 2008 amendment was to "exclude[] female eligibility." (Compl. ¶¶ 48, 44.) Ms. Wegmann also alleges that YAI's CEO "personally advised [her] that she was entitled to participate in the . . . [SERP]." (Compl. ¶ 50). Following the cessation of her employment with YAI in 2014, Ms. Wegmann applied for and was denied benefits under the SERP. (Compl. ¶ 65.) She alleges that the male participants in the SERP were afforded benefits, while Defendants allegedly applied discriminatory criteria to avoid paying her benefits. (Compl. ¶¶ 66-67.)

---

*Extebank Deferred Comp. SERP (B)*, 216 F.3d 283, 286-87 (2d Cir. 2000). Instead of looking to the substantive provisions of ERISA, courts apply general contract principles when determining the parties' rights in connection with a top hat plan. *Eastman Kodak Co. v. Bayer Corp.*, 369 F. Supp. 2d 473, 478 (S.D.N.Y. 2005), *vacated and remanded on other grounds*, 452 F.3d 215 (2d Cir. 2006); *Pereira v. Cogan*, 200 F. Supp. 2d. 367, 375 n.5 (S.D.N.Y. 2002).

[3] For example, the adoption of 26 U.S.C. § 4958 in 1996, which imposes excise taxes on excess benefit transactions.

Ms. Wegmann's attempt to turn the responsive measures that YAI took to the changes in the tax law into ERISA violations and discriminatory acts fails and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Although Ms. Wegmann presents an array of claims for the Court's consideration, the real aim of each one is to obtain "the value of benefits" she claims are "due and owing" to her under the SERP. (Compl. at pp. 8-17.) She seeks relief under ERISA §§ 502(a)(1)(B), 502(a)(3), and 510. She also pleads promissory estoppel, conversion, and unjust enrichment claims. Turning to anti-discrimination laws, she alleges sex and/or gender discrimination under Title VII, the NYSHRL, and the NYCHRL.

With respect to her ERISA claims, Ms. Wegmann is not entitled to benefits under ERISA § 502(a)(1)(B) because, as she herself recognizes, the express terms of the 2008 Plan amendment make clear that she is not a participant in the SERP. By the same token, any claim for benefits she attempts to advance under the Plan document that was operative in 2001 is time-barred because it was clearly repudiated by the Plan amendment in 2008. Her § 502(a)(1)(B) claim additionally fails because she alleges no facts in support of her position that she was excused from ERISA's requirement that she exhaust the administrative remedies available under the terms of the SERP.

Ms. Wegmann also fails to sufficiently allege claims for equitable relief under either ERISA § 502(a)(3) or a promissory estoppel theory. As to her ERISA § 502(a)(3) claim, it is merely a "repackaged" claim for benefits under the terms of the SERP. As to her promissory estoppel claim, estoppel principles apply in ERISA cases only under "extraordinary circumstances," and she has pleaded no such circumstances here. ERISA § 510 similarly affords Ms. Wegmann no relief because such a claim is limited to adverse employer-employee action. Ms. Wegmann's complaint identifies no adverse employment action. Further, Ms. Wegmann's

state law claims for conversion and unjust enrichment must be dismissed because they are preempted by ERISA.

With respect to Ms. Wegmann's federal, state, and local law discrimination claims, they are all time-barred because they accrued either in 2001, when she alleges she qualified to be a Plan participant, but was not granted such status, or, at the latest, in 2008, when she admits a Plan amendment expressly limited the SERP's participants to five male management employees. The statutes of limitations on these claims thus ran out years ago. Even if they were timely, Ms. Wegmann fails to make out a *prima facie* case under either Title VII or the NYSHRL because her complaint does not contain any allegations regarding why she was similarly situated to the male management employees who purportedly received preferential treatment. For these reasons, Ms. Wegmann's complaint should be dismissed with prejudice in its entirety.

## II.   STANDARD FOR MOTION TO DISMISS UNDER 12(b)(6)

"Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 374 (S.D.N.Y. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a 12(b)(6) motion, a court must "accept[] the factual allegations in a complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Id.* However, a court need not credit conclusory allegations if "they are belied by more specific allegations of the complaint" or any other materials properly considered on the motion. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (allegations that are contradicted by a document properly considered on a motion to dismiss are insufficient to defeat the motion). "Nor does a complaint suffice if it 'tenders naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In ruling on a 12(b)(6) motion, a court is "generally limited to the facts presented in the complaint."  *Young-Wolff v. McGraw-Hill Cos.*, No. 13-CV-4372 KMW JCF, 2014 WL 349711, at *2 (S.D.N.Y. Jan. 31, 2014).  The complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  "If a plaintiff does not attach or incorporate by reference documents that are integral to the Complaint, the court may consider those documents without converting the motion to one seeking summary judgment."  *Borden v. Blue Cross & Blue Shield of W. N.Y.*, 418 F. Supp. 2d 266, 273 (W.D.N.Y. 2006) (considering ERISA plan document on motion to dismiss, reasoning, "Although Plaintiff did not attach a copy of the Plan to his Complaint, he references the Plan therein, and it is clearly essential to this Court's analysis.").

## III.   ARGUMENT

### A.   The Court Should Dismiss Ms. Wegmann's ERISA Claims

#### 1.   Ms. Wegmann's Claim For Benefits Under ERISA § 502(a)(1)(B) Should Be Dismissed

Ms. Wegmann's claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is based on her allegation that she "is entitled to benefits under Article X, Subsection II of the [SERP]," which sets forth benefit eligibility "based upon the participant's years of service."  (Compl. ¶ 97.)  She further claims that, after she ceased employment with YAI, she "properly requested and was wrongfully denied benefits under the [SERP] to which she

was entitled and which by virtue of the express language of the plan were due and owing."

(Compl. ¶ 98.)

Ms. Wegmann cannot maintain a claim for benefits under ERISA § 502(a)(1)(B) because, under the express terms of the SERP, she is not a participant in the Plan. As the Supreme Court has recognized, a claim for benefits under § 502(a)(1)(B) is limited to the express terms of the plan. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876-77 (2011); *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009) (ERISA § 502 plaintiff must show that: "(1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [benefits] owed under the plan.") (citations omitted). As Ms. Wegmann herself recognizes, the terms of the SERP expressly limit its participants to Joel M. Levy, Phillip H. Levy, Stephen Freeman, Thomas Dern, and Joseph Rut. (Compl. ¶ 45). The express language of the Plan document thus makes clear that Ms. Wegmann neither is a participant in the SERP as required to make a claim under ERISA § 502(a)(1)(B), nor is she entitled to any benefits under the SERP. The Court need not take Ms. Wegmann's allegation that she is a participant in the SERP as true because it is contradicted by the face of the Plan document.[4] *See, e.g.*, *Matusovsky*, 186 F. Supp. 2d at 400.

Even if Ms. Wegmann was attempting to assert a § 502(a)(1)(B) claim based upon the terms of the Plan document that were operative in 2001, such a claim is time-barred because it was clearly repudiated by the 2008 amendment. The Second Circuit has held that an ERISA § 502(a)(1)(B) claim "accrues upon a clear repudiation by the plan that is known, or should be

---

[4] The Court also need not take as true Ms. Wegmann's conclusory, unsubstantiated allegation that she was a "management" employee in 2001. Although she alleges that she held various positions with YAI – Assistant Controller, Controller, Chief Financial Officer, and Chief Business Officer, (Compl. 31) – she does not allege when she held each position. She also fails to allege that any other YAI employee who held the same title she held in 2001 – Controller – was a participant in the SERP.

known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999) (affirming judgment that plaintiff's ERISA claim was barred by six-year statute of limitation). In reaching this holding, the Second Circuit rejected the argument that a claim for benefits should accrue upon denial of a formal application for benefits. *Id.* ("[Plaintiff] argues that . . . when an employee *has* filed [a formal] application [for benefits]—as [Plaintiff] did—the claim should accrue upon denial of that application. We find these arguments to be without merit, and instead . . . hold[] that an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits."). Any claim Ms. Wegmann may have had to benefits under the SERP was clearly repudiated in 2008, and the six-year limitations period consequently expired in 2014. *See Carey*, 201 F.3d at 48 (applying six-year limitations period to ERISA § 502(a)(1)(B) claim).

Finally, Ms. Wegmann's ERISA § 502(a)(1)(B) claim should be dismissed because, notwithstanding her conclusory allegation that she "exhausted any and all applicable administrative procedures under the [SERP]'s administrative appeals process," (Compl. ¶ 99), she conceded that she did not exhaust administrative remedies in her pre-motion correspondence. (Dkt. 12 at 2-3); *see, e.g.*, *Egan v. Marsh & McLennan Cos., Inc.*, No. 07CIV.7134(SAS), 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008) (noting requirement that ERISA claimants must exhaust administrative remedies provided for under plan.). More specifically, Ms. Wegmann made no attempt to argue that she followed the claims appeal process set forth in the SERP. Instead, she took the position that doing so would have been futile. (Dkt. 12 at 2-3.) But the complaint she filed provides no support for this position – Ms. Wegmann makes no allegation

that pursuit of administrative remedies under the Plan would have been futile. *See, e.g.*, *Egan*, 2008 WL 245511, at *10 ("While a plaintiff may be excused from exhausting administrative remedies where such exhaustion would be futile, the Second Circuit requires a "clear and positive showing" of futility) (quoting *Jones v. Unum Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000)). For all these reasons, Ms. Wegmann's ERISA § 502(a)(1)(B) claim fails to state a claim upon which relief can be granted, and should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

        2.     <u>Ms. Wegmann Is Not Entitled To Equitable Relief Under ERISA Or A Promissory Estoppel Theory</u>

Ms. Wegmann seeks equitable relief under both ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and a promissory estoppel theory. (Compl. ¶¶ 112, 113, 133.) With respect to ERISA § 502(a)(3), Ms. Wegmann cannot – as she attempts to do here – "repackage" her claim for benefits as an ERISA § 502(a)(3) claim for equitable relief. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375 (6th Cir. 2015) ("[T]he Supreme Court has never stated that recovery under both § 502(a)(3) and § 502(a)(1)(B) may be warranted for a single injury."). Although ERISA § 502(a)(3) offers claimants an avenue to seek "appropriate equitable relief," *Amara*, 131 S. Ct. at 1878, a claimant cannot pursue a § 502(a)(3) claim where § 502(a)(1)(B) is a means of redress. *See Rochow*, 780 F.3d at 371 (appropriate equitable relief "is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant's injury."). Ms. Wegmann proceeds under both ERISA § 502(a)(1)(B) and ERISA § 502(a)(3) to seek the same relief: the benefits to which she claims she is entitled under the Plan. (Compl. ¶¶ 97-98, 108, 112-13.) She does not articulate a distinct injury for which she seeks redress under ERISA § 502(a)(3), and for which ERISA § 502(a)(1)(B) does not provide an adequate remedy. As such, Ms. Wegmann's claim under § 502(a)(3) should be dismissed.

Ms. Wegmann also fails to sufficiently allege a promissory estoppel claim. To maintain an estoppel claim, an ERISA plaintiff must allege the four traditional elements: (1) a promise; (2) reliance on the promise; (3) an injury caused by reliance; and (4) an injustice if the promise is not enforced. *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005). In addition, she must plead facts sufficient to establish "extraordinary circumstances," *id.* at 172–73, which requires a showing of "conduct tantamount to fraud." *Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756, 759 (2d Cir. May 16, 2005).

As an initial matter, Ms. Wegmann does not allege that any person having authority to bind the Plan promised her benefits. She claims that, "Joel Levy, the Executive Director for Respondent YAI, personally advised Plaintiff that she was entitled to participate in the Trust Plan." (Compl. ¶¶ 50, 124). However, administrative authority with respect to the SERP is vested with YAI's Board, not Mr. Levy. *See* Ex. A at Amendment 12 § 1.3 ("The administration of the Plan shall be the responsibility of the [Executive Compensation Committee] of the Board of Trustees of Young Adult Institute, Inc."). Ms. Wegmann does not and cannot allege that Mr. Levy had authority to promise her benefits. *See, e.g.*, *Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07 CIV. 7017 (DAB), 2009 WL 928143, at *1, *4-*5 (S.D.N.Y. Mar. 20, 2009) (dismissing estoppel claim where plaintiff failed to plead that alleged promisor had authority to bind defendant); *see also Gary v. Pension Fund of Int'l Union of Operating Eng'rs*, 101 F.3d 682 (2d Cir. 1996) (affirming grant of summary judgment as to plaintiff's estoppel claim "because the alleged promise . . . even if made, came from a person without authority to commit benefits from the pension fund.").

Even if Ms. Wegmann was able to adequately plead the four traditional elements, the facts she alleges fall far short of establishing "extraordinary circumstances." In *Callahan v.*

*Unisource Worldwide, Inc.*, for example, the court found that plaintiff's reliance on a promise of unconditional benefits made to him by the company's Vice President of Human Resources "does not rise to the level of 'extraordinary circumstances.'" 451 F. Supp. 2d 428, 438 (D. Conn. 2006) (citing *Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 102 (2d Cir. 1999)). Like the plaintiff in *Callahan*, Ms. Wegmann does not plead any facts that render her case "extraordinary."[5] Other fact patterns that have given rise to "extraordinary circumstances" further expose Ms. Wegmann's allegations as deficient. For example, this Circuit found "extraordinary" a scenario where the defendants "promised severance benefits as an inducement to persuade [the plaintiff] to retire." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 86 (2d Cir. 2001) (citing *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79-80 (2d Cir. 1996)). The Eastern District of New York found "extraordinary circumstances" estopping a pension fund from denying benefits to the plaintiff where the fund had been accepting contributions from the plaintiff's employer for ***twenty-five years***, and even went so far as to secure an arbitration award requiring the employer to make additional contributions on the plaintiff's behalf. *Arnold v. Storz*, No. 00-CV-4485 (CBA), 2005 WL 2436207, at *9-11 (E.D.N.Y. Sept. 30, 2005). Ms. Wegmann does not allege circumstances anywhere close to these, and her conclusory, unsubstantiated allegations that "[e]xtraordinary circumstances require that the terms of the Trust Plan . . . be enforced," (Compl. ¶¶ 132-33), do not save her promissory estoppel claim: "Threadbare recitals of the elements of a cause of action, supported by mere

---

[5] In her pre-motion correspondence, Ms. Wegmann cites *Ladouceur v. Credit Lyonnais*, 159 F. App'x 302 (2d Cir. 2005), in support of her position that dismissing her promissory estoppel claim prior to engaging in discovery is improper. (Dkt. 12 at 3.) In contrast to Ms. Wegmann, the plaintiffs in *Ladouceur* alleged the existence of writings that would prove the existence of a promise, and further alleged that they took a job with the defendant employer in reliance on that promise. 159 F. App'x at 103-04. The Second Circuit found that they sufficiently alleged a promissory estoppel claim, and reversed the district court's dismissal. This holding is inapplicable to Ms. Wegmann's complaint, which does not include analogous allegations.

conclusory statements do not suffice," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it 'tenders naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Accordingly, the Court should dismiss her promissory estoppel claim.

### 3. ERISA § 510 Does Not Afford Ms. Wegmann Any Relief

Ms. Wegmann attempts to assert a claim under ERISA § 510, 29 U.S.C. § 1140, which makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of an employee benefit plan] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." ERISA § 510, however, "only proscribes interference with the employment relationship," and, accordingly, "is limited to instances involving adverse employer-employee action." *Roe v. Empire Blue Cross Blue Shield*, No. 12–cv–04788 (NSR), 2014 WL 1760343, at *5-*6 (S.D.N.Y. May 1, 2014) (quoting *Cioinigel v. Deutsche Bank Ams. Holding Corp.*, No. 12 Civ. 434(KBF), 2013 WL 120618, at *2 (S.D.N.Y. Jan. 10, 2013)); *see also Edwards v. Akzo Nobel, Inc.*, 103 F. Supp. 2d 214, 218 (W.D.N.Y. 2000) (dismissing an ERISA § 510 claim because it was "in essence a claim for benefits that is properly brought under 29 U.S.C. § 1132(a)(1)(B)"); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers provide any particular benefits, and *does not itself proscribe discrimination in the provision of employee benefits*.") (emphasis added).

The complaint is devoid of any allegation of an adverse employment action that Defendants took against Ms. Wegmann that would give rise to an ERISA § 510 claim. There is no allegation, for example, that she was demoted or terminated. *See Roe*, 2014 WL 1760343, at

*4 (describing such a claim as a "prototypical" ERISA § 510 claim). Although the complaint does allege that the 2008 amendment to the SERP "excluded female eligibility," (*see, e.g.*, Compl. ¶ 44), a plan sponsor's amendment of an ERISA plan does not give rise to a § 510 claim. *See, e.g.*, *McGath v. Auto-Body N. Shore, Inc.*, 7 F.3d 665, 667-69 (7th Cir. 1993) ("[T]he focus of [ERISA] § 510 is not on amendments to the plan itself."); *Seaman v. Arvida Realty Sales*, 985 F.2d 543, 546-47 (11th Cir. 1993) (while ERISA "prohibits employers from discharging employees to avoid paying benefits," it also "permits employers to reduce or terminate non-vested benefits simply by changing the terms of a plan."). ERISA simply does not contain the substantive anti-discrimination protections Ms. Wegmann seeks to invoke relative to the Plan amendment, and her ERISA § 510 claim should accordingly be dismissed.

In addition, Ms. Wegmann's ERISA § 510 claim should be dismissed because it is time-barred. The Second Circuit has held that a two-year statute of limitations applies to ERISA § 510 claims. *See Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 336-37 (2d Cir. 1997). The SERP amendment Ms. Wegmann points to in setting forth her ERISA § 510 claim was added in 2008. (Compl. ¶¶ 119-21.) The two-year limitations period thus expired in 2010, nearly five years before she filed her complaint. *See, e.g.*, *Williams v. AAA S. New England*, No. 13 CV 855 VB, 2015 WL 864891, at *3 (S.D.N.Y. Mar. 2, 2015) (dismissing ERISA § 510 claims as time-barred and concluding that such claims do not accrue upon the deprivation of benefits). For these reasons, Ms. Wegmann's ERISA § 510 claim should be dismissed.

## B. The Court Should Dismiss Ms. Wegmann's State Common Law Claims As Preempted By ERISA

Ms. Wegmann's claims for unjust enrichment and conversion are preempted by ERISA and should be dismissed. (Compl. ¶¶ 134 – 143.) The Supreme Court has held repeatedly that the "comprehensive civil enforcement" scheme of ERISA § 502 provides the exclusive set of

remedies relating to the management and administration of employee benefit plans and that any state-law cause of actions that duplicate, supplement, or supplant the remedies available under ERISA are preempted. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (the "integrated enforcement mechanism" of §502(a) is "a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("[T]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.") (emphasis in original) (quoting *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)).

Applying these principles, the courts have consistently held that unjust enrichment and conversion claims are preempted by ERISA. *See, e.g.*, *Burrell v. AT&T Corp.*, No. 03 CIV. 2490(SAS), 2005 WL 2656124, at *5 (S.D.N.Y. Oct. 18, 2005) ("ERISA . . . preempts the common law claim for unjust enrichment"); *Raff v. Travelers Ins. Co.*, No. 90 CIV. 7673, 1996 WL 137310, * 3-4 (S.D.N.Y. Mar. 26, 1996) (finding that ERISA preempted plaintiffs' claims for breach of contract, conversion, and unjust enrichment); *see also Aramony v. United Way of Am.*, 949 F. Supp. 1080, 1084 (S.D.N.Y. 1996) ("Plaintiff may not resort to a state common law action to enforce the terms of an ERISA-controlled benefit plan.").

Here, Ms. Wegmann's conversion and unjust enrichment claims seek the return of "benefits due and owing" to her, (Compl. 138, 141), which Defendants allegedly "exercised unauthorized dominion over," "were enriched by," and "unlawfully benefited from," (Compl. ¶¶ 138-39, 141-42). These common law claims seek to duplicate, supplement, or supplant the

remedies available under ERISA and, therefore, are preempted by ERISA and should be dismissed.

### C. The Court Should Dismiss Ms. Wegmann's Federal, State, And Local Law Discrimination Claims

#### 1. Ms. Wegmann's Sex And Gender Discrimination Claims Are Time-Barred

Proceeding under Title VII, the NYSHRL, and the NYCHRL, Ms. Wegmann alleges that, after she "was already vested in the [SERP]," Defendants amended the Plan in 2008 to "exclude female eligibility," and, six years later, "applied the discriminatory criteria" to deny the benefit request she submitted in 2014. (Compl. ¶¶ 64-67, 76-79, 88-91.) Ms. Wegmann's federal, state, and local law sex and gender discrimination claims are time-barred. The statute of limitations for each discrimination claim that Ms. Wegmann asserts began to run when she knew or should have known of the alleged discriminatory act. *See Baba v. Warren Mgmt. Consultants, Inc.*, 882 F. Supp. 339, 342 (S.D.N.Y.) (Title VII limitations period "begins to run when the plaintiff knew or should have known of the alleged discriminatory act."), *aff'd*, 89 F.3d 826 (2d Cir. 1995); *Milani v. IBM*, 322 F. Supp. 2d 434, 451 (S.D.N.Y. 2004) (NYSHRL and NYCHRL discrimination claims accrue "on the date that an adverse employment determination is made and communicated to the plaintiff." (quotation omitted)), *aff'd*, 137 F. App'x 430 (2d Cir. 2005).

In this case, the allegations of the complaint describe that Ms. Wegmann knew or should have known that she was not a participant in the SERP either in 2001, when she alleges she qualified to be a Plan participant, but was not granted such status, or at the latest, in 2008, when she admits a Plan amendment expressly limited the SERP's participants to five male management employees: Joel M. Levy (Executive Director), Phillip H. Levy (Associate Executive Director), Stephen Freeman (Assistant Executive Director), Thomas Dern (Assistant

Executive Director), and Joseph Rut (Chief Financial Officer), (Compl. ¶ 44). *See Kubicek v. Westchester Cnty.*, No. 08-CV-372KMK, 2009 WL 3720155, at *5 n.7 (S.D.N.Y. Oct. 8, 2009) ("[A] plaintiff cannot avoid a statute of limitations merely by omitting information from her complaint.").

More specifically, notwithstanding her allegations that she "became a participant in the [SERP]" "[o]n or around December 2001," (Compl. ¶ 49), Ms. Wegmann cannot point to any communications she received ***from the Plan*** – such as an enrollment packet or periodic benefits statements – that would substantiate this allegation. Indeed, the only affirmative communication she pinpoints is an alleged "promise" by Joel Levy, who, at some unspecified point in time, "personally advised [her] that she was entitled to participate in the [SERP]." (Compl. ¶¶ 50, 111.) The logical inference of the promise, however, is that she was ***not*** a participant at the time it was made – if she were, she would not have needed to "rely upon" his representations regarding her status in the Plan, (*see, e.g.*, Compl. ¶¶ 128-29). If this were not enough to establish that Ms. Wegmann knew or should have known she was not a participant in the SERP, the confirmation of that fact came in 2008, when an amendment to the SERP identified its five "sole participants," none of which was Ms. Wegmann. (Compl. ¶ 45.) Any suggestion that Ms. Wegmann – who was the Chief Financial Officer at the time – was not aware of this amendment in 2008 strains credibility.[6] Therefore, at the latest, Title VII's 300-day charging period expired in 2009, and the NYSHRL's and NYCHRL's three-year limitations periods ran out in 2011. *See, e.g.*, *Cabrera v. NYC*, 436 F. Supp. 2d 635, 641-42 (S.D.N.Y. 2006) (300-day charging period

---

[6] For the same reasons set forth in this paragraph and the preceding one, the Company's alleged discriminatory decision to exclude Ms. Wegmann from the SERP was made and communicated to her in either 2001 or 2008. *See Milani*, 322 F. Supp. 2d at 451 (NYSHRL and NYCHRL discrimination claims accrue "on the date that an adverse employment determination is made and communicated to the plaintiff.").

for Title VII claimants); *Bright v. Coca Cola Refreshements USA, Inc.*, No. 12 CIV. 234 BMC, 2014 WL 5587349, at *3 (E.D.N.Y. Nov. 3, 2014) (3-year statute of limitations for NYSHRL and NYCHRL plaintiffs). Ms. Wegmann did not file a charge with the EEOC until October 2014, and did not bring her NYSHRL and the NYCHRL claims until May 2015.[7] Both of these dates fall far outside the applicable limitations periods for Title VII, NYSHRL, and NYCHRL claims.

Ms. Wegmann is likely to argue that the applicable limitations periods began to run in 2014 when she was denied benefits. This argument is contrary to law as the courts have consistently held that discrimination claims accrue at the time of the alleged discriminatory act— *i.e.*, in either 2001 or 2008—not when the plaintiff may experience the effects of the alleged discrimination. *See Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 576-77 (E.D.N.Y. 2011) ("The court's inquiry does not focus on 'the point at which the *consequences* of the act become painful.'") (emphasis in original) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8, (1981)); *O'Brien v. Rabobank Int'l*, No. 12 CIV. 9018, 2014 WL 1495971, at *6-7 (S.D.N.Y. Mar. 31, 2014) (NYSHRL and NYCHRL limitations periods triggered "when the defendant allegedly engaged in the discriminatory acts, not when those acts impacted the plaintiff."). Ms. Wegmann's claims, thus, are time-barred even if she did not feel the effect of the alleged discrimination until she applied for SERP benefits in 2014.

The Lily Ledbetter Fair Pay Act ("Ledbetter Act") does not mandate a different result. In the pre-motion letter exchange, (Dkt. 11-12), Ms. Wegmann took the position that, under the

_____

[7] Although the limitations period for NYSHRL and NYCHRL claims may be tolled during the pendency of the EEOC, *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 208 (E.D.N.Y. 2014), any such tolling would not save Ms. Wegmann's state and local law claims. As noted above, the statutes of limitations for those claims had run by 2011, several years before Ms. Wegmann filed her EEOC charge.

Ledbetter Act, "irrespective of when the discriminatory criteria were first enacted, Plaintiff's claims accrued each time Defendants provided, or failed to provide, benefits on account of discriminatory treatment." (Dkt. 12 at 2.) But the courts have rejected Ms. Wegmann's argument, continuing to differentiate between paychecks and pension payments following the passage of the Ledbetter Act. *Zimmelman v. Teachers' Ret. Sys. of City of N.Y.*, No. 08 CIV. 6958 DAB DF, 2010 WL 1172769, at *9-10 (S.D.N.Y. Mar. 8, 2010) ("discriminatory pension distribution or payment" does not occur "upon the issuance of each check."), *report and recommendation adopted*, No. 08 CIV. 6958 (DAB), 2010 WL 2034436 (S.D.N.Y. May 20, 2010). What is more, the Ledbetter Act "did not change the general rule that the [EEOC] charging period is triggered when a discrete unlawful practice takes place." *Tryals v. Altairstrickland, LP*, No. CIV.A. H-08-3653, 2010 WL 743917, at *7 (S.D. Tex. Feb. 26, 2010). "The rule set out in *Ledbetter* and prior cases—that 'current effects alone cannot breathe new life into prior, uncharged discrimination,'—is still binding law for Title VII disparate treatment cases involving discrete acts other than pay." *Id.* at *7 (quoting *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628 (2007), *superseded, in part, by statute*, Fair Pay Act of 2009, Pub. L. No. 111–2, 42 U.S.C. § 2000e–5(e)(3)). Ms. Wegmann consequently cannot salvage her untimely claims by pretending that they fall under the purview of the Ledbetter Act, and dismissal is appropriate pursuant to Rule 12(b)(6).

2.   Ms. Wegmann Fails To Make A Prima Facie Case For Sex And/Or Gender Discrimination

"To establish a *prima facie* case of discrimination under Title VII and the NYSHRL, a plaintiff must demonstrate that: 1) she is a member of the protected class; 2) she was qualified for and satisfactorily performing her job; 3) she was subjected to an adverse employment decision; and 4) the adverse decision occurred under circumstances giving rise to an inference of

discrimination." *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001)

(citations omitted); *Bright*, 2014 WL 5587349, at *1 ("Discrimination claims under the

[NY]SHRL are analyzed the same way they would be analyzed under Title VII").  "[W]hile a

discrimination complaint need not allege facts establishing each element of a prima facie case of

discrimination to survive a motion to dismiss," to proceed, "it must at a minimum assert

nonconclusory factual matter sufficient to 'nudge[ ] [its] claims' . . . 'across the line from

conceivable to plausible.'" *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir.

2014) (internal citations omitted).

 "One way to create an inference of discrimination is to show that similarly situated

employees, outside plaintiff's protected class, were treated preferentially." *Campbell v. Alliance

Nat'l Inc.*, 107 F. Supp. 2d 234, 244 (S.D.N.Y. 2000).  But "[i]n order to make such a showing,

the plaintiff must compare herself to employees who *are similarly situated in all material

respects*." *Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432 JMF, 2015 WL 1514955, at *3

(S.D.N.Y. Apr. 1, 2015) (emphasis in original) (quoting *Norville v. Staten Island Univ. Hosp.*,

196 F.3d 89, 95 (2d Cir. 1999)).

 Conclusory allegations of the type Ms. Wegmann proffers here are insufficient to raise

such an inference of discrimination.  Ms. Wegmann merely alleges that, "Upon information and

belief, YAI's male employees, similarly situated both in position and responsibility to Plaintiff,

participated in [the SERP] and were afforded benefits."  (Compl. ¶ 54.)  But her complaint does

not contain any factual allegations supporting her bald statement that she was similarly situated

to those male employees.  Other than alleging that Joel Levy is YAI's Executive Director,

(Compl. ¶ 50) – a position she admits she never held, (Compl. ¶ 31) – Ms. Wegmann does not

include any allegations establishing the titles of the male SERP participants.  Nor does she allege

when they became participants in the SERP, their titles, how many years of service to YAI they had accumulated at the time, and/or the timing of their participation relative to the tax law changes. The Court consequently cannot evaluate whether Ms. Wegmann was similarly situated to Joel Levy, Phillip Levy, Joseph Rut, Stephen Freeman, or Thomas Dern, who were the male participants in the SERP.

Ms. Wegmann consequently fails to establish a *prima facie* case of discrimination under either Title VII or the NYSHRL, and her claims should be dismissed. *See, e.g.*, *Rose*, 163 F. Supp. 2d at 242 (granting motion to dismiss sex discrimination claims where "Plaintiff has provided no specific factual allegations to enable the Court to evaluate her information and belief assertions that male employees of Defendant performing 'substantially equal work' were treated preferentially."); *Dooley*, 2015 WL 1514955, at *3 (granting defendant's motion to dismiss plaintiff's sex discrimination claim where "there is no factual basis to conclude that the two male comparators are similarly situated—the Amended Complaint provides no information about their tenure, rank . . . .").

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Ms. Wegmann's complaint should be dismissed in its entirety with prejudice.

Dated: August 28, 2015

Respectfully Submitted,

*/s/ Michael J. Prame*
Michael J. Prame
Natasha S. Fedder
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W.
Washington, D.C., 20006
(T) 202-861-6633
(T) 202-861-5437
(F) 202 659-4503
mprame@groom.com
nfedder@groom.com

*Attorneys for Defendants Young Adult Institute*
*and the Trustees of the Supplemental Pension*
*Plan and Trust for Certain Management*
*Employees of Young Adult Institute*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on August 28, 2015, I filed in this action the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** electronically via the Court's ECF System. Notice of this filing will be sent in this action by operation of the Court's electronic system to all counsel of record in the ECF System.

Respectfully Submitted,

*/s/ Michael J. Prame*
Michael J. Prame
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W.
Washington, D.C., 20006
(T) 202-861-6633
 (F) 202 659-4503
mprame@groom.com

*Attorney for Defendants Young Adult Institute*
*and the Trustees  of the Supplemental Pension*
*Plan and Trust for Certain Management*
*Employees of Young Adult Institute*