USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 2, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                            :

KAREN WEGMANN,                      :

                        Plaintiff,     :       15 Civ. 3815 (KPF)

               v.           :      OPINION AND ORDER

YOUNG ADULT INSTITUTE, INC., *et al.*,    :

                     Defendants.  :

                            :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Plaintiff Karen Wegmann has filed suit against her former employer of nearly 30 years, the Young Adult Institute, Inc. ("YAI"), and the Trustees of the Supplemental Pension Plan for Certain Management Employees of YAI (the "Trustees," and together with YAI, "Defendants"). Plaintiff alleges (i) violations of certain provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), namely, §§ 502(a)(1)(B), 502(a)(3), and 510, 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 1140; (ii) sex- or gender-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290-301, and the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code §§ 8-101 to 8-131; and (iii) state-law claims for promissory estoppel, conversion, and unjust enrichment. Defendants now move to dismiss Plaintiff's complaint. For the reasons stated in this Opinion, Defendants' motion is granted in full.

# BACKGROUND[1]

## A.    Factual Background

Defendant YAI is a not-for-profit corporation that provides health and human services for individuals with intellectual and developmental disabilities. (Compl. ¶¶ 13, 15).  YAI hired Plaintiff in December 1986, initially as an Assistant Controller.  (*Id.* at ¶ 30).  Over the ensuing 28 years, Plaintiff held, at various times, the positions of Controller, Chief Financial Officer ("CFO"), and Chief Business Officer ("CBO") of YAI.  (*Id.* at ¶ 31).

When Plaintiff began her employment with YAI, the company had in place a "Supplemental Pension Plan for Certain Management Employees of Young Adult Institute Trust" (the "Plan").  (Compl. ¶ 34).  The Plan provided deferred compensation benefits to employees who satisfied the Plan's eligibility requirements, namely, management employees with a minimum of 15 years of employment at YAI.  (*Id.* at ¶¶ 36-39; Prame Decl. Ex. A-1 § 10.1.2).  The express terms of the Plan, as originally implemented, contain no further eligibility requirements.  (Compl. ¶ 40; Prame Decl. Ex. A-1 §§ 10.1.2, 10.1.3). Plaintiff thus alleges that, as a "management employee," her benefits under the

---

[1]    The facts contained in this Opinion are primarily drawn from Plaintiff's complaint (the "Complaint" or "Compl.") (Dkt. #1), and are taken as true for purposes of this motion. *See Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)).  Additional facts come from the exhibits submitted in connection with the declaration of Defendants' counsel, Michael Prame (Dkt. #20), which exhibits consist of documents referenced by the Complaint and are therefore properly considered on a motion to dismiss.  *See* Discussion Sec. A, *infra*.  For convenience, Defendants' brief in support of their motion to dismiss (Dkt. #19, 21) will be referred to as "Def. Br.," and the supporting declaration exhibits as "Prame Decl. Ex."; Plaintiff's opposition (Dkt. #23) as "Pl. Opp."; and Defendants' reply brief (Dkt. #25) as "Def. Reply."

Plan vested in 2001. (Compl. ¶¶ 48-49). Plaintiff additionally alleges that Joel Levy, the Executive Director of YAI, "personally advised [her] that she was entitled to participate in the [] Plan." (*Id.* at ¶ 50).

In 2008, the Trustees amended the eligibility requirements of the Plan such that Joel M. Levy, Philip H. Levy, Stephen Freeman, Thomas Dern, and Joseph Rut — all of whom are male — were expressly deemed the sole participants. (Compl. ¶¶ 45-46; Prame Decl. Ex. A-2 § 10.1.2). Plaintiff alleges that this amendment had the dual effect of (i) divesting her of benefits to which she was entitled, and (ii) "exclud[ing] female eligibility" under the Plan. (Compl. ¶¶ 52-53). After Plaintiff resigned from her employment with YAI in June 2014, Plaintiff applied for and was denied benefits under the Plan. (*Id.* at ¶ 53).

## B.    Procedural Background

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") in or about October 2014. (Compl. ¶ 7). The EEOC issued Plaintiff a Notice of Right to Sue on March 27, 2015 (*id.* at ¶ 9), and Plaintiff commenced the instant action by filing her Complaint on May 18, 2015 (Dkt. #1). Following the exchange of pre-motion letters, the Court endorsed a schedule submitted by the parties setting dates for Plaintiff's submission of an amended complaint and for the briefing on Defendants' motion to dismiss. (Dkt. #18). Plaintiff declined to submit an amended complaint as of the agreed-upon date, and on August 28, 2015, Defendants filed their motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (Dkt. #19). Plaintiff filed her opposition to Defendants'

motion on September 11, 2015 (Dkt. #23), and Defendants concluded the

briefing by filing their reply on September 25, 2015 (Dkt. #25).

## DISCUSSION

### A.      Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court should "draw all reasonable inferences in [the

plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief." *Faber* v.

*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While Twombly does not require heightened fact pleading of specifics, it

does require enough facts to 'nudge [a plaintiff's] claims across the line from

conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d

Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a

court must accept a complaint's allegations as true is inapplicable to

threadbare recitals of a cause of action's elements, supported by mere

conclusory statements." *Id.*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). In the instant matter, documents fairly considered include the text of the original Plan (Prame Decl. Ex. A-1), as well as the amendments made to the Plan during Plaintiff's tenure at YAI (*id.* at Ex. A-1, A-2).

## B.     Plaintiff's ERISA Claims Are Dismissed

### 1.     The Application of ERISA to "Top Hat" Plans

ERISA "promotes the interests of employees and their beneficiaries in employee benefit plans." *Plumbing Indus. Bd., Plumbing Local Union No. 1* v. *E. W. Howell Co.*, 126 F.3d 61, 66 (2d Cir. 1997). For qualifying plans, ERISA accomplishes its goal "by controlling the administration of the plans through rules regarding participation, funding and vesting, and by promulgating uniform standards for reporting, disclosure and fiduciary responsibility." *Id.* The Plan at issue in this matter, however, is what is known as a "top hat" plan. Such plans are unfunded, and are "maintained by an employer primarily for

the purpose of providing deferred compensation for a select group of management or highly compensated employees." *See* 1 Lee T. Polk, ERISA PRACTICE AND LITIGATION § 2:4 (2015) (citing ERISA §§ 201(2), 301(a)(3), and 401(a)(1), 29 U.S.C. §§ 1051(2), 1051(a)(3), and 1104(a)(1)). Top hat plans are exempt from many of ERISA's provisions, including its requirements governing participation and vesting, funding, and fiduciary responsibilities. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Such plans do, however, remain subject to ERISA's disclosure and claims procedure requirements, as well as its civil enforcement provision. *See* 29 U.S.C. §§ 1021, 1132, 1133.

### 2.    Analysis

#### a.    ERISA § 502(a)(1)(B)

ERISA § 502 provides an avenue through which a pension plan participant or beneficiary may enforce her rights as provided by that plan's terms. *See* 29 U.S.C. § 1132. Relevant to the instant matter, § 502(a)(1)(B) permits a plan participant to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B).

Because ERISA does not contain a statute of limitations for denial of benefits claims, the Second Circuit directs district courts to look to the most analogous state action, breach of contract, for the applicable limitations period. *Guilbert* v. *Gardner*, 480 F.3d 140, 148-49 (2d Cir. 2007). Consequently, the

6

six-year statute of limitations applicable to New York law breach of contract cases applies to cases brought under ERISA § 502(a)(1)(B).  *Id.* at 148.

The Second Circuit has further held that a cause of action under ERISA accrues "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff — regardless of whether the plaintiff has filed a formal application for benefits."  *Carey* v. *Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999); *see also Miles* v. *N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983).  In the present matter, Defendants argue that Plaintiff's claim accrued, at the latest, when the 2008 amendment repudiated any benefits to which Plaintiff might previously have been entitled.  (Def. Br. 6-7; Def. Reply 2). Plaintiff contends, however, that her claim accrued from the time at which she applied for and was denied benefits, in June 2014.  (Pl. Opp. 12 n.2).

While it may be true that the 2008 amendment clearly repudiated Plaintiff's right to benefits under the Plan, no facts suggest at this stage of the litigation that Plaintiff "discover[ed], or with due diligence should have discovered," that repudiation prior to her unsuccessful application for benefits. *Ferro* v. *Metro. Ctr. for Mental Health*, No. 13 Civ. 2347 (PKC), 2014 WL 1265919, at *7 (S.D.N.Y. Mar. 27, 2014) (quoting *Carey*, 201 F.3d at 48), *reconsideration denied,* No. 13 Civ. 2347 (PKC), 2014 WL 2039132 (S.D.N.Y. May 16, 2014).  There is no suggestion, for instance, that the Plan sent Plaintiff any notification of adopted amendments, or that she received in-person notification from any of the Board Members.  Defendants point to the fact that

Plaintiff did, at some point during her tenure, serve as CFO (Def. Reply 3); the Court is not willing to say, prior to discovery, that this title alone establishes Plaintiff's knowledge — either constructive or actual — of the 2008 amendment.  Consequently, because Defendants cannot point to facts within the materials fairly considered by the Court on a motion to dismiss indicating that Plaintiff knew, or should have known, about her lack of rights under the amended Plan prior to 2014, Plaintiff's ERISA claims cannot be dismissed on limitations grounds.

Defendants additionally argue that Plaintiff's § 502(a)(1)(B) claim fails because, by the express terms of the Plan, Plaintiff is not a participant.  (Def. Br. 6).  However, Defendants support this argument by citing to the enumeration of the five covered employees contained within the 2008 amendment.  (*Id.*).  Plaintiff does not dispute that the express terms of that amendment repudiate her participation in the Plan.  On the contrary, that is the very crux of her claim — that she had vested benefits under the Plan, but that the 2008 amendment improperly stripped her of those benefits by expressly cutting her out of the Plan.  (*See, e.g.*, Compl. ¶¶ 88, 98, 113).  The relevant question is whether Plaintiff has alleged participation in the Plan *prior* to that amendment.[2]  The Court finds that, for the purposes of the instant motion, she has.

---

[2]    The Plan expressly provides that, once a participant has vested under the Plan, no subsequent amendment may divest the participant of benefits to which she would have been entitled had she ceased employment immediately prior to the adoption of the amendment.  (Prame Decl. Ex. A-1 § 7.1).

The explicit terms of the Plan, prior to the 2008 amendment, define a "participant" as "an employee who satisfied the eligibility requirements of Subsection 10.1.2." (Prame Decl. Ex. A-1 § 10.1.3). Subsection 10.1.2 states, in turn, that "[e]ach Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the Plan." (*Id.* at § 10.1.2). Plaintiff alleges that she began her tenure with YAI in 1986, and that she served as a management employee, having held the positions of "Assistant Controller, Controller, Chief Financial Officer, and Chief Business Officer." (Compl. ¶¶ 30-31). Thus, Plaintiff contends, under the terms of the Plan, her benefits vested in 2001. Defendants argue in response that these positions are not obviously "managerial," and that Plaintiff's assertion that she qualified for benefits is "conclusory" and "unsubstantiated." (Def. Br. 6 n.4).

Plaintiff's dates of employment and titles held assuredly do not *prove* her eligibility; but, at the pleading stage, the Court does not require proof of a Plaintiff's claims. Under the plausibility standard set forth in *Iqbal* and *Twombly*, the Court need ask only whether Plaintiff has provided sufficient factual support to push her claims across "the line between possibility and plausibility of entitlement to relief," and to provide her adversaries with fair notice of the claims being raised. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court finds that, in regard to her alleged eligibility for the Plan, Plaintiff meets that standard.

Finally, Defendants argue that Plaintiff's claim should be dismissed for failure to exhaust the administrative remedies contained within the Plan, as is required before an ERISA claimant may bring suit. (Def. Br. 7). *See Eastman Kodak Co.* v. *STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) ("ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation."). The Second Circuit has made plain that "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." *Paese* v. *Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006). Additionally, a claimant may be excused from exhaustion where pursuing a claim through administrative means would be futile. However, a court will "excuse an ERISA plaintiff's failure to exhaust only 'where claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile." *Davenport* v. *Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (emphasis in original) (quoting *Kennedy* v. *Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).

In the present case, Plaintiff alleges that she "exhausted any and all applicable administrative procedures under the Trust Plan's administrative appeals process." (Compl. ¶ 99). In some cases, such an allegation might suffice; in light of statements made by Plaintiff in her briefing and by her counsel to the Court, here it cannot. The Complaint does not set forth the steps in which Plaintiff actually engaged to pursue her claim. The Court finds this a notable omission, as one of the primary purposes of ERISA's exhaustion

requirement is to "provide a sufficiently clear record of administrative action if litigation should ensue." *Kennedy*, 989 F.2d at 594.  More significant — and more troublesome — is that Plaintiff has repeatedly stated in connection with the instant motion that exhaustion would have proved futile, strongly suggesting that she has *not* in fact exhausted the administrative remedies available.  (*See* Dkt. #12 at 3; Pl. Opp. 18).  In light of this confusion, the Court cannot say that Plaintiff has adequately pleaded exhaustion, nor does she allege anywhere in her Complaint that pursuing administrative remedies would have proved futile — let alone provide factual support for any such claim of futility.[3]  Consequently, Plaintiff's claim under § 502(a)(1)(B) is dismissed.

### b.  Plaintiff Fails to State a Claim Under ERISA § 502(a)(3)

Plaintiff additionally seeks to state a claim under § 502(a)(3), which permits civil actions by an ERISA plan participant "(a) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  29 U.S.C. § 1132(a)(3).  ERISA § 502(a)(3) functions "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Varity Corp.* v. *Howe*, 516 U.S. 489, 512 (1996).  Where § 502 otherwise provides adequate relief for an injury, there "will likely be no

---

[3]     Plaintiff argues in her opposition brief that the very denial of her benefits claim establishes the futility of exhaustion.  (Pl. Opp. 18).  If mere denial of benefits sufficed to show futility, however, ERISA's exhaustion requirement would be rendered a nullity, as claimants presumably only pursue a plan's administrative remedies after they have been denied benefits.

need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515 (internal quotation marks omitted).

While a plaintiff's claim for relief under § 502(a)(1)(B) does not necessarily preclude a claim under § 502(a)(3), the law is clear that a § 502(a)(3) claim cannot exist solely as a second route to the damages sought under § 502(a)(1)(B). *See, e.g., Winfield* v. *Citibank, N.A.*, 842 F. Supp. 2d 560, 566 (S.D.N.Y. 2012) ("The relief available under [§ 502(a)(3)] is limited to equitable relief: monetary damages are generally unavailable."); *Harrison* v. *Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 433 (S.D.N.Y. 2006) (dismissing a plaintiff's claim under § 502(a)(3) where "the gravamen of [the plaintiff's] claim [was] a claim for monetary compensation for Defendants' alleged failure to comply with the provisions of the Plan").

The Second Circuit provided guidance concerning the circumstances in which a plaintiff's §§ 502(a)(1)(B) and 502(a)(3) claims may exist in tandem in *Frommert* v. *Conkright*, 433 F.3d 254 (2d Cir. 2006). There, the Court upheld a district court's dismissal of a claim for equitable relief under § 502(a)(3) to the extent that the claim in fact served as a vehicle to recover monetary damages owed pursuant to the terms of an ERISA plan. *See id.* at 269 ("affirming the district court as to the denial of equitable relief to pursue money damages"). In contrast, the *Frommert* Court reversed "the district court's judgment concerning the availability of § 502(a)(3) to state a claim for breach of fiduciary duties against the Plan administrators," reasoning that the relief the plaintiffs

12

sought in connection with that claim could not be adequately addressed by the relief available under § 502(a)(1)(B).  *Id.* at 269-72.

In the Complaint, Plaintiff's § 502(a)(1)(B) and § 502(a)(3) claims request nearly identical relief, with the primary difference being that her § 502(a)(3) claim additionally states that "[e]quity requires" the Court to "compel Defendant[s] to enforce the terms of the Trust Plan." (Compl. ¶ 112).  In other words, both claims request money damages in the form of benefits "due and owing" under the terms of the Plan.  (*Id.* at ¶¶ 98, 113).  Her § 502(a)(3) claim, unlike that considered in *Frommert*, does not allege any breach of fiduciary duty.[4]

Plaintiff does state that she relied on "material representations" by Joel Levy to the effect that Plaintiff fell within the scope of the Plan.  (Compl. ¶¶ 109-10).  Plaintiff does not, however, premise her Plan eligibility on Levy's statements; rather, she repeatedly asserts that she is entitled to benefits "by virtue of the express language of the [P]lan," and additionally alleges that affirmation from the Board of Directors was not relevant to membership in the Plan, so long as an employee met the express written requirements (namely, being a management employee with 15 years' employment at YAI).  (Compl. ¶¶ 51, 98, 113).  Hence, unlike the claim being considered in *Frommert*, Plaintiff alleges no separate factual basis for an ERISA violation in connection

---

[4]     Nor, for that matter, could breach of fiduciary duty be validly asserted in this case, as "the fiduciary responsibility provisions of ERISA do not apply to top hat plans."  *Demery* v. *Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 290 (2d Cir. 2000); *accord Paneccasio* v. *Unisource Worldwide, Inc.*, 532 F.3d 101, 108 (2d Cir. 2008).

to her request for relief under § 502(a)(3).  Rather, "the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Frommert*, 433 F.3d at 270 (citing *Gerosa* v. *Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003)).  Plaintiff's claim under § 502(a)(3) seeks wrongfully denied benefits "due and owing" to her under the Plan, and accordingly duplicates her claim under § 502(a)(1)(B).  Her § 502(a)(3) claim is therefore dismissed.

### c.   Plaintiff Fails to State a Claim for ERISA Promissory Estoppel

Plaintiff similarly asserts Levy's "advise[ment]" that she qualified for the Plan as the basis for her promissory estoppel claim.  (Compl. ¶¶ 124, 128-30).  A valid claim for promissory estoppel consists of four elements: "[i] a promise, [ii] reliance on the promise, [iii] injury caused by the reliance, and [iv] an injustice if the promise is not enforced." *Devlin* v. *Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (quoting *Aramony* v. *United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999)).  Additionally, in the ERISA context, a "plaintiff must adduce [] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] extraordinary circumstances requirement as well." *Id.* (alterations in original, internal quotation marks omitted); *accord Boban* v. *Bank Julius Baer Postretirement Health & Life Ins. Program*, 723 F. Supp. 2d 560, 567-68 (S.D.N.Y. 2010); *Graffino* v. *Trustees of the NYSA-ILA Pension Trust Fund & Plan*, No. 14 Civ. 8577 (RWS), 2015 WL 4241408, at *3 (S.D.N.Y. July 13, 2015).  For example, where a fiduciary's representations of a plan's terms have

14

intentionally or foreseeably induced an employee to retire early, *see Schonholz* v. *Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79-80 (2d Cir. 1996), or to forgo retirement for a period of years, *see Devlin*, 274 F.3d at 87, the Second Circuit has found that the "extraordinary circumstances" prong may be satisfied. Here, however, Plaintiff has asserted no such inducement, either to action or forbearance.  She asserts only reliance on Levy's alleged representations; but reliance is one of the four threshold requirements for an estoppel claim, and consequently does not satisfy the extraordinary circumstances prong.  *Devlin* v. *Transp. Commc'ns Int'l Union*, 173 F.3d 94, 102 (2d Cir. 1999) ("[R]eliance is one of the four basic elements of promissory estoppel, and would not by itself render this case 'extraordinary.'").  Hence Plaintiff's Complaint fails to assert promissory estoppel under ERISA, and Defendants' motion to dismiss that claim is granted.[5]

### d.    Plaintiff Fails to State a Claim Under ERISA § 510

ERISA § 510, as codified at 29 U.S.C. § 1140, provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which [she] is entitled under the provisions of an

---

[5]    Plaintiff additionally points to a summary order from the Second Circuit, *Ladouceur* v. *Credit Lyonnais*, 159 F. App'x 302 (2d Cir. 2005), for the proposition that a claim for promissory estoppel under ERISA should not be disposed of on a motion to dismiss. (Pl. Opp. 20).  Simply stated, *Ladouceur* does not stand for such a proposition; rather, *Ladouceur* presents an instance in which, on the facts of that case, the plaintiff had pleaded adequate support for her assertion of "extraordinary circumstances" such that her promissory estoppel claim was entitled to proceed to discovery.  *Ladouceur*, 159 F. App'x at 304.  Plaintiff's assertion here that she has documentary evidence of her *vesting* under the Plan does not bear on the Complaint's lack of any factual support for her conclusory allegation of "extraordinary circumstances."  (Pl. Opp. 20).  In short, unlike the plaintiff in *Ladouceur*, Plaintiff has alleged nothing to suggest that discovery will produce evidence of the "extraordinary circumstances" required for a promissory estoppel claim under ERISA.

> employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140.  The Second Circuit has noted that § 510 was "designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister* v. *Continental Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (internal quotation marks omitted).  As a result, "courts in this district have . . . held that § 510 only proscribes interference with the employment relationship."  *Roe* v. *Empire Blue Cross Blue Shield*, No. 12 Civ. 4788 (NSR), 2014 WL 1760343, at *4 (S.D.N.Y. May 1, 2014) (internal quotation marks omitted) (collecting cases), *aff'd*, 589 F. App'x 8 (2d Cir. 2014) (summary order).  In other words, in order for a claim under § 510 to survive, courts in this District require an employer to take an adverse employment action that consequently prevents an employee from attaining her benefits; mere denial of benefits is not enough, as § 502(a)(1)(B) provides the appropriate avenue for relief under that circumstance.  *See, e.g., Pelosi* v. *Schwab Capital Mkts., L.P.*, 462 F. Supp. 2d 503, 512 (S.D.N.Y. 2006) (observing that § 510 "is designed to protect the employment relationship that gives rise to an individual's benefit rights, not to create an action for 'wrongfully withheld benefits,' which is covered by [§ 502(a)(1)]"); *DeSimone* v. *Transprint USA, Inc.*, No. 94 Civ. 3130 (JFK), 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996) ("The focus of § 510 is [ ] the employment relationship; an adverse change in that relationship that is

motivated at least in part by the employer's desire to prevent the employee from attaining the benefits under the benefit plan[.]" (citation omitted)).

In the instant matter, Plaintiff alleges that YAI discriminated against her "on the basis of her sex to interfere with, and deny paying, benefits that were due and owing to her under the Trust Plan." (Compl. ¶ 122). The alleged "adverse employment action" consists of the 2008 amendment, which Plaintiff asserts divested her of the benefits to which she was entitled under the Plan's prior terms, and which additionally had the "net effect" of precluding female participation in the Plan. (*Id.* at ¶¶ 44, 119-22).

The Second Circuit has not directly ruled on the question of whether an amendment to a pension plan may constitute an "adverse employment action" for purposes of a § 510 claim. The Supreme Court has made clear, however, that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp.* v. *Schoonejongen,* 514 U.S. 73, 78 (1995). A number of Circuits have, applying similar reasoning, limited the application of § 510 to claims involving an adverse action affecting the employer-employee relationship. *See, e.g., McGath* v. *Auto-Body North Shore, Inc.,* 7 F.3d 665, 668 (7th Cir. 1993) ("[T]he focus of § 510 is not on amendments to the plan itself. Rather ... '[i]t is clear from the text of the statute ... that § 510 was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right.... Simply put, § 510 was designed to protect the employment relationship which gives rise to an

individual's pension rights.... This means that a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.'" (quoting *Deeming* v. *American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir. 1990)); *Haberern* v. *Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994); *West* v. *Butler*, 621 F.2d 240, 245-46 (6th Cir. 1980).

Plaintiff's allegation that the Plan was amended to deny her benefits on the basis of her sex does not set forth the sort of interference with an employment relationship typically required for claims under § 510. *Cf. Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 143 (1990) (setting forth an employer's termination of a plan participant, motivated by the employer's desire to prevent the employee's pension from vesting, as "prototypical of the kind [of claim] Congress intended to cover under § 510"). Furthermore, "section 510 has consistently been excluded from application to allegedly discriminatory plan terms, especially by courts in this Circuit." *Roe*, 2014 WL 1760343, at *7. In part, this reflects ERISA's legislative history; a substantive anti-discrimination provision was in fact considered, but was ultimately omitted from the statute due to sufficient preexisting federal prohibitions on discriminatory conduct. *See Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 104 (1983) (recounting floor debates in which Senator Mondale "questioned whether the Senate bill should be amended to require nondiscrimination in ERISA plans," and the ensuing determination that Title VII and the Equal

Employment Opportunity Act already prohibit discrimination in pension plans such that a nondiscrimination amendment was not necessary).

Plaintiff's § 510 claim boils down to allegations that she was entitled to benefits under the Plan; that the 2008 amendment divested her of those benefits; and that the 2008 amendment was motivated by sex-based discriminatory animus. Under the facts alleged in this case, the 2008 amendment is not the sort of interference with an employment relationship that courts in this District have recognized as giving rise to a claim under § 510. Rather, Plaintiff's claim sounds in the sort of alleged discrimination that Congress found was already addressed by other federal statutes. Accordingly, Plaintiff's allegation that the Plan was amended with the intent to preclude female participation fails to state a claim under § 510 of ERISA.[6]

---

[6]   Even were the Court to find that the 2008 amendment to the Plan constitutes the sort of interference actionable under § 510, Plaintiff's claim would fail for two independent reasons: First, while § 510 prohibits, *inter alia*, discriminatory interference with a plan participant's rights under a benefits plan, the usual *enforcement* mechanism for violations of that section is found in § 502(a)(3). *See DeSimone* v. *Transprint USA, Inc.*, No. 94 Civ. 3130 (JFK), 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996); *accord Pelosi* v. *Schwab Capital Mkts., L.P.*, 462 F. Supp. 2d 503, 513 (S.D.N.Y. 2006). As discussed, *supra*, Plaintiff has failed to state a claim for equitable relief under § 502(a)(3). Second, a plaintiff claiming discrimination under § 510 must satisfy the same standard as a plaintiff pleading Title VII discrimination: While she need not state a *prima facie* case, she must allege sufficient facts to establish a plausible inference of discrimination. *Pelosi*, 462 F. Supp. 2d at 518 (quoting *Dister* v. *Continental Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)); *see also Blessing* v. *J.P. Morgan Chase & Co.*, 394 F. Supp. 2d 569, 582 (S.D.N.Y. 2005). Hence, for the reasons discussed in relation to Plaintiff's Title VII claim, *infra*, Plaintiff has similarly failed to state a claim for discrimination under § 510.

**C.    Plaintiff's State-Law Claims Are Preempted by ERISA**

   **1.    Applicable Law**

ERISA ensures uniformity in benefits laws through an express

preemption clause, § 514(a), which provides, in relevant part, "that ERISA shall

supersede any and all State laws insofar as they may now or hereafter *relate to*

any employee benefit plan covered by ERISA." *Plumbing Indus. Bd.*, 126 F.3d

at 66 (quoting 29 U.S.C. § 1144(a)) (emphasis in original); *see also Aetna Health

Inc.* v. *Davila*, 542 U.S. 200, 208-09 (2004) ("The policy choices reflected in the

inclusion of certain remedies and the exclusion of others under the federal

scheme would be completely undermined if ERISA-plan participants and

beneficiaries were free to obtain remedies under state law that Congress

rejected in ERISA.  'The six carefully integrated civil enforcement provisions

found in § 502(a) of the statute as finally enacted ... provide strong evidence

that Congress did *not* intend to authorize other remedies that it simply forgot to

incorporate expressly.'" (quoting *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 107

(1987))).  Relevant to the instant matter, ERISA preempts any state law that

"has a clear 'connection with' a plan in the sense that it ... 'provid[es]

alternative enforcement mechanisms'" to those provided by ERISA.  *Plumbing

Indus. Bd.*, 126 F.3d at 67 (quoting *N.Y. State Conference of Blue Cross & Blue

Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 658 (1995)).

   **2.    Analysis**

Plaintiff has brought state-law claims for conversion and for unjust

enrichment.  (Compl. ¶¶ 134-43).  Both claims serve as precisely the sort of

"alternative enforcement mechanisms" that § 514(a) precludes.  Plaintiff's claim for conversion rests on the same set of factual allegations as her claim under § 502(a)(1)(B), and seeks to "remit such benefits [as] are and remain due and owing to her under the Trust Plan."  (*Id.* at ¶ 139).  In other words, Plaintiff's claim for conversion consists of no more than a relabeling of her claim under ERISA for denial of benefits.  Consequently, it is preempted under § 514(a).

Similarly, Plaintiff's unjust enrichment claim alleges that "equity and good conscience" require the Court to prevent Defendants from retaining "Plaintiff's benefits accrued under the Trust Plan, which are due and owing." (Compl. ¶ 143).  Like her claim for conversion, Plaintiff's unjust enrichment claim simply rephrases her claim for benefits, which is properly brought under § 502(a)(1)(B) — and thereby preempted under § 514(a).  That Plaintiff pleads unjust enrichment "in the alternative" does not save the claim:  ERISA's preemption provision, as interpreted by the Supreme Court's jurisprudence, explicitly renders unenforceable claims that would provide "alternative enforcement mechanisms" for a Plaintiff's claims for benefits due under a pension plan.  *N.Y. State Conference of Blue Cross*, 514 U.S. at 658; *see also Pilot Life Ins. Co.*, 481 U.S. at 54.  Plaintiff's unjust enrichment claim, like her claim for conversion, is preempted by ERISA.  Defendants' motion to dismiss those claims is therefore granted.

21

**D.      Plaintiff's Discrimination Claims Under Title VII, the NYSHRL, and the NYCHRL Are Dismissed**

**1.      Applicable Law**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a *prima facie* case of discrimination, a plaintiff must demonstrate (i) membership in a protected class; (ii) qualifications for her position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination.  *Ruiz* v. *County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).

Plaintiff's claim under the NYSHRL is analyzed in an identical manner, *see Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013); not so, however, for her claim under the NYCHRL. Previously, courts construed the NYCHRL to be coextensive with federal and state anti-discrimination laws.  *See generally Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013).  In 2005, however, the New York City Council amended, and thereby expanded the reach of, the NYCHRL.  *Id.* at 109; *see* Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85.  "Pursuant to these revisions, courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination

22

plaintiffs." *Mihalik*, 715 F.3d at 109 (internal citations and quotation marks omitted).

The Second Circuit in *Mihalik* declined to decide "whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims," 715 F.3d at 110 n.8, but offered the following analysis:

> While it is unclear whether *McDonnell Douglas* continues to apply to NYCHRL claims and, if so, to what extent it applies, the question is also less important because the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, nondiscriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that "discrimination play[ed] no role" in its actions.

*Id.* (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)). While *Mihalik* arose in the context of a summary judgment motion, its principles have been extended by the Second Circuit to motions to dismiss, albeit in non-precedential decisions. *See Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552 F. App'x 100, 101-02 (2d Cir. 2014) (summary order) (finding that the district court had erred in dismissing certain NYCHRL claims "because it improperly applied the same standard as in its analysis of the ADEA, Title VII, and NYSHRL claims"); *Leung* v. *N.Y. Univ.*, 580 F. App'x 38, 40 (2d Cir. 2014) (summary order) (remanding to district court to consider hostile work environment claims independently under the NYCHRL).

The Supreme Court has held that, to withstand a motion to dismiss, an "employment discrimination plaintiff need not plead a *prima facie* case of discrimination." *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 515 (2002). In light of *Swierkiewicz*, the Second Circuit recently clarified that "'at the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory intent.'" *Johnson* v. *Andy Frain Servs., Inc.*, No. 15-1143, 2016 WL 210098, at *1 (2d Cir. Jan. 19, 2016) (summary order) (quoting *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "Rather, what must be plausibly supported by the facts alleged in the Complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (citations and internal quotation marks omitted); *accord Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 86 (2d Cir. 2015).

2.   **Analysis**

a.   **Plaintiff Fails to State a Claim Under Title VII and the NYSHRL**

Plaintiff alleges that Defendants "amended the Trust Plan to [] exclude female eligibility," and that "[u]pon information and belief, YAI's male employees, similarly situate[d] in position and responsibility to Plaintiff, were participants in the Trust and were afforded benefits." (Compl. ¶¶ 64-66). Defendants argue that these allegations fail to raise an inference of discrimination, as Plaintiff's Complaint gives no factual support for her contention that she and the male Plan participants were similarly situated.

24

(Def. Br. 18-19).  Plaintiff responds by noting that she need not allege all the facts necessary to support a *prima facie* case at the pleading stage, and, in any event, that she has pleaded sufficient factual matter to demonstrate that the 2008 amendment denied her benefits under circumstances giving rise to an inference of discrimination.  (Pl. Opp. 9-10).

Disparate treatment "is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case," and "requires the plaintiff to show that the employer treated ... her less favorably than a similarly situated employee outside of the protected group." *Raspardo* v. *Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (internal quotation marks omitted). However, "[a] plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Mandell* v. *County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (affirming in part grant of summary judgment) (quoting *Graham* v. *Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

Here, Plaintiff has failed to plead even "minimal support" for her assertion that she and the five males who were Plan participants after the 2008 amendment were "similarly situated":  She alleges that she served, at various times, in multiple "management level" positions.  (Compl. ¶¶ 31, 33).  She fails, however, to specify when or for how long she held any given position, or the respective positions, responsibilities, tenure, or experience of the male Plan participants.  Plaintiff certainly need not prove discrimination at the pleading stage, nor even make out a *prima facie* case; but her Complaint fails to provide

adequate support even for a plausible inference of discrimination, as the only facts alleged are that (i) Plaintiff is female and the post-2008 amendment Plan participants are male, and (ii) she and each of the male participants were at some time, for some period, some sort of "management" employee. These allegations fail to indicate that Plaintiff and the male Plan participants were "similarly situated" so as to support Plaintiff's discrimination claim on the basis of disparate treatment. *Cf. E.E.O.C.* v. *Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 249 (2d Cir. 2014) (upholding district court's grant of motion for judgment on the pleadings in Equal Pay Act case, based in part on finding that plaintiff had failed to allege that male and female attorneys were similarly situated; rejecting theory that "an attorney is an attorney is an attorney").[7] As such, Plaintiff's Complaint fails to set forth enough facts to "nudge [her] claims across the line from conceivable to plausible," and her claims under Title VII and NYSHRL are dismissed.

---

[7]     Indeed, there are reasons to doubt that Plaintiff's putative comparators were similarly situated. Among other things, a report from YAI's Executive Compensation Committee to the Board of Trustees on March 22, 2005, indicates that at that time, the Plan covered the "top 5 executives," *viz.*, the CEO, President, two Associate Executive Directors, and the CFO. (Prame. Decl. Ex. A-1 at 47). No names are provided for those participants, but their respective tenures with YAI are listed in the report as 33.33 years; 33.33 years; 27 years, 25.5 year, and 25.5 years. (*Id.*). As of 2005, Plaintiff would have spent 19 years at YAI; she does not allege her position in YAI as of that date.

        To be clear, the Court does not take this report as evidence that Plaintiff's benefits had not vested as of 2001, nor does it rely on the report as evidence that no discrimination occurred. That said, this report illustrates how the missing information from Plaintiff's Complaint leaves the Court with insufficient information to raise a plausible inference of discrimination, as it may well be that the male Plan participants were differently situated from Plaintiff.

### b.  Defendants' Motion to Dismiss Plaintiff's NYCHRL Claim as Untimely Fails

Defendants do not argue that Plaintiff has substantively failed to state a claim under the NYCHRL; rather, they argue that any claim she might have under that law is barred by the statute of limitations.  (Def. Br. 15-17; Def. Reply 9 n.3).  An action for discrimination under the NYCHRL "must be commenced within three years after the alleged unlawful discriminatory practice or act … occurred."  N.Y.C. Admin. Code § 8-502(d).  As Defendants note in their moving brief, a plaintiff's discrimination claims under the NYSHRL and the NYCHRL accrue "on the date that an adverse employment determination is made and communicated to the plaintiff."  (Def. Br. 15 n.6 (citing *Milani* v. *Int'l Bus. Machines Corp.,* 322 F. Supp. 2d 434, 451 (S.D.N.Y. 2004), *aff'd,* 137 F. App'x 430 (2d Cir. 2005) (summary order))).  Defendants further state that YAI's "alleged discriminatory decision to exclude Ms. Wegmann from the [Plan] was made and communicated to her in either 2001 or 2008."  *Id.*  Nothing in the pleadings, however, supports Defendants' assertion that Plaintiff learned or should have learned of the 2008 amendment prior to her unsuccessful request for benefits in 2014.  Because Plaintiff allegedly did not learn of the 2008 amendment prior to leaving YAI in June 2014, her NYCHRL claim falls within the three-year limitations period, and Defendants' motion to dismiss for untimeliness fails.[8]

---

[8]    In response to Defendants' assertion that her discrimination claims are untimely, Plaintiff additionally argues that both (i) the "continuing violation" doctrine, and (ii) an exception contained in the Lily Ledbetter Pay Act (the "Ledbetter Act"), 42 U.S.C. § 2000e-5 (e)(3), apply to remedy this defect.  (Pl. Opp. 4-7).  The Defendants counter

27

### c.     The Court Declines to Exercise Supplementary Jurisdiction Over Plaintiff's NYCHRL Claim

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to" federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Such jurisdiction, however, is "discretionary," *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c). Multiple courts in this Circuit have declined to exercise supplemental jurisdiction over NYCHRL discrimination claims under circumstances where all other federal discrimination claims have been dismissed. *See, e.g.*, *Emmanuel* v. *Cushman & Wakefield, Inc.*, 2015 WL 5036970 (GHW), at *9 (S.D.N.Y. Aug. 26, 2015) (declining supplemental jurisdiction over NYCHRL claim); *Lioi* v. *N.Y. City Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 595 (S.D.N.Y. 2012) (declining supplemental jurisdiction over NYSHRL and NYCHRL claims); *see also Vuona* v. *Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393-94 (S.D.N.Y. 2013) (resolving NYSHRL

---

that neither of those theories applies to discrete employment acts, such as the Plan amendment at issue in this case. (Def. Br. 16-17; Def. Reply 7-8).

The Court has serious doubts about the viability of either theory as applied to the facts at hand: In regards to the former, Plaintiff has not asserted the sort of ongoing discriminatory policy or pattern of behavior necessary for a continuing violation. *See, e.g., Fitzgerald* v. *Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). Rather, she has alleged a discrete action, the effects of which she felt at a later date. The Ledbetter Act similarly would not seem to apply, as it generally does not protect against discrete acts of employment discrimination. *See Davis* v. *Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 270 (2d Cir. 2015). The Court need not decide whether either the continuing violation doctrine or the Ledbetter Act serves to bring Plaintiff's claim within the statute of limitations, however, as the Complaint states a timely claim.

claims together with Title VII claims, while declining to exercise supplemental jurisdiction over NYCHRL claims); *Brown* v. *City of New York*, No. 14 Civ. 2668 (PAE), 2014 WL 5394962, at *8 n.8 (S.D.N.Y. Oct. 23, 2014) (same).

In light of the NYCHRL's "uniquely broad and remedial purposes, which go beyond those of counterpart state or federal civil rights laws," *Emmanuel*, 2015 WL 5036970, at *9 (citation omitted), and the Court's dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim for discrimination under the NYCHRL. This claim is therefore dismissed without prejudice to its potential refiling in state court, unless Plaintiff seeks leave to replead as specified in the following section.

### E.    Plaintiff May Request Leave to Replead

Plaintiff has not requested leave to replead and, given the deficiencies outlined throughout this Opinion, she may elect not to do so. Should she choose to do so, she may submit a request with sufficient new factual allegations and particulars plausibly showing how such repleading would correct the deficiencies identified in the Court's findings, and thus would not be futile. *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (stating that the central inquiry for a court in determining whether leave to replead is appropriately granted under Rule 15 is whether such "amendment would be futile").

**CONCLUSION**

For the reasons discussed in this Opinion, Defendants' motion to dismiss is GRANTED.  Any request to replead must be filed within 21 days of the date of this Opinion.  Should no request be made, the Clerk of Court will be directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      March 2, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge