G4EQWEGc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  KAREN WEGMANN

4            Plaintiff

5         v.                          15 CV 3815 (KPF)
                                      Oral Argument
6  YOUNG ADULT INSTITUTE, INC.,
   TRUSTEES OF THE SUPPLEMENTAL
7  PENSION PLAN FOR CERTAIN
   MANAGEMENT EMPLOYEES OF YOUNG
8  ADULT INSTITUTE

9            Defendants

10 ------------------------------x
                                      New York, N.Y.
11                                    April 14, 2016
                                      4:00 p.m.
12
   Before:
13
                      HON. KATHERINE POLK FAILLA
14
                                      District Judge
15
                          APPEARANCES
16
   ZABELL & ASSOCIATES
17      Attorney for Plaintiff
   SAUL D. ZABELL
18
   GROOM LAW GROUP, CHARTERED
19      Attorneys for Defendants
   NATASHA S. FEDDER
20 MICHAEL J. PRAME

21

22

23

24

25

G4EQWEGc

```
 1              (In open court; case called)
 2              THE DEPUTY CLERK:  Counsel, please identify yourselves
 3    for the record beginning with plaintiff.
 4              MR. ZABELL:  For the plaintiff, Saul Zabell from the
 5    law firm of Zabell & Associates.  Good afternoon, Judge.
 6              THE COURT:  Good afternoon.
 7              MS. FEDDER:  For the defendants Natasha Fedder and
 8    Michael Prame of the Groom Law Group, Chartered.  Good
 9    afternoon, your Honor.
10              THE COURT:  Good afternoon.  Ms. Fedder, will you be
11    taking the laboring lead?
12              MS. FEDDER:  Yes, I will.
13              THE COURT:  I will direct my questions to you then.
14    Thank you very much.
15              Mr. Zabell, let me speak first with you, sir.  In my
16    last communication, it was my opinion to the parties with
17    respect to the motion to dismiss, and I suggested that if you
18    wished to amend, you could.  So you have now filed a proposed
19    amended complaint.  Is that correct, sir?
20              MR. ZABELL:  I have, and I have filed that one day
21    late.
22              THE COURT:  Yes.
23              MR. ZABELL:  And it was brought up by my adversary.
24              THE COURT:  Yes.  Why don't we talk about that.  Why?
25    Could it not have been filed on time, sir?
```

G4EQWEGc

1          MR. ZABELL:  It absolutely could have and was

2     completed the day before.  I can't even call it law office

3     failure.  It's my fault, your Honor.  I misdiaried the date.  I

4     don't know why I diaried the date as I did.  All I could think

5     of is that I looked at your order and counted days from that

6     order as opposed to including that order.  I apologize.  I

7     apologize to my adversary.  It has instilled in me a feeling of

8     inadequacy that I have not had since I was a newly admitted

9     attorney.

10          THE COURT:  OK.  Well, I don't know -- we are not

11     going to lay out a couch anywhere for you, sir.  So that is

12     fine.  I did want to hear what had happened.

13          MR. ZABELL:  That's why when I submitted it, I did not

14     even realize it was late.  It wasn't until my adversary brought

15     it to the Court's attention in their letter, that's when I

16     immediately wrote the letter I did asking for an opportunity to

17     respond or be heard.

18          THE COURT:  Thank you very much.

19          Let me talk to Ms. Fedder then.  Thank you.

20          Ms. Fedder, I am aware that what I meant to do and

21     what I did in the opinion is not to commit necessarily to

22     accepting the proposed amended complaint because what I was

23     trying to do, just so everyone is aware, is I am trying to

24     forestall another round of motion practice.

25          So I have thought about, and I will continue to think

G4EQWEGc

1    about, the arguments you've made, but can we talk first,

2    please, about the discrimination claims, the gender

3    discrimination claims under state, federal and city laws.

4           I am understanding your argument to be that there just

5    isn't enough to show similar situation.  Is that correct?

6           MS. FEDDER:  Yes, your Honor, that's correct.

7           THE COURT:  Let me ask you a couple of foundational

8    questions:  Ms. Wegmann only has to show similar situation with

9    one person, correct, one male in this case.  Would you agree?

10          MS. FEDDER:  At this stage, yes, your Honor.

11          THE COURT:  Would you agree with me also that the one

12   she comes closest to or the one she tries to align herself most

13   closely with is Mr. Rut?

14          MS. FEDDER:  I would agree with you there, your Honor.

15          THE COURT:  One might argue -- I think it's been

16   argued -- that she believes that she followed the same career

17   path or career trajectory that he had.  Why is that not

18   sufficient?  Can you tell me why she's not similarly situated

19   to him?

20          MS. FEDDER:  Yes.  Thank you, your Honor.

21          THE COURT:  Sure.

22          MS. FEDDER:  Although Ms. Wegmann has alleged, as

23   you've stated, she still has not alleged when Mr. Rut became a

24   participant in the plan or what his title, duties or tenure

25   were at that time.

G4EQWEGc

1          Briefly, your Honor, when he and the other five males

2     became participants in the SERP and their titles and duties at

3     that time is material.  The SERP was adopted in 1985 for

4     certain management employees.  When it was adopted, only Joel

5     Levy, the executive director, and Phillip Levy, the associate

6     executive director, were participants.

7          In 1993, the board approved the addition of four more

8     participants to the plan:  Three men and one woman.  The three

9     men were Joseph Rut, Stephen Freeman and Thomas Dern, and their

10    titles at the time when they entered the plan were,

11    respectively:  CFO, assistant executive director, and assistant

12    executive director.

13          THE COURT:  I'm sorry the second and third one again,

14    please.

15          MS. FEDDER:  It's Joseph Rut.

16          THE COURT:  One was CFO.  One was --

17          MS. FEDDER:  Stephen Freeman was the assistant

18    executive director.

19          THE COURT:  OK.

20          MS. FEDDER:  And Thomas Dern held the same title.  He

21    was also assistant executive director.

22          THE COURT:  Thank you.

23          MS. FEDDER:  You're welcome.

24          After that time, the board did not add anyone else to

25    the plan.  The board limited participation in the SERP in

G4EQWEGc

response to certain changes in the tax laws that had adverse

tax consequences for top hat plans like the SERP, and that

included grandfatherings.

        For example, your Honor, Congress enacted a statue in

1996:  26 U.S.C. Section 4958, which included a grandfather

rule.  Under that rule, binding contracts that were in

existence as of September 13, 1995, and that were not

materially changed as of that date, were permitted to operate

under the old, more favorable law.  And, accordingly, no one

was added to the SERP after 1995.

        THE COURT:  Let me stop you, please.

        MS. FEDDER:  Yes.

        THE COURT:  So, if Ms. Wegmann is analogizing herself

to Mr. Rut, is it your argument that she would have to allege,

either because she knows or on information and belief that she

was CFO at a particular time period or is it enough -- was she

ever an assistant executive director?

        MS. FEDDER:  No.

        THE COURT:  No, that was not her position.  So, what

you're saying is the absence of reference to Mr. Rut's title is

significant because it was by dint of his title of CFO that he

was included in this plan.

        MS. FEDDER:  Yes, the absence of his title at the time

he became a participant is significant.

        THE COURT:  OK.

G4EQWEGc

1          MS. FEDDER:  And also the absence of an allegation as

2     to the time when he became a participant is significant

3     because, as I've stated, no one was put into the plan after

4     1995 and in response to these changes in the tax laws.

5          So, in the absence of such allegations that

6     Ms. Wegmann was similarly situated to Mr. Rut in terms of his

7     title, duty and tenure at the time he was put into the plan,

8     her allegation is really just that he is a man and he is in the

9     plan and that's not enough for her discrimination claims.

10         THE COURT:  I think what she is saying is, he is a man

11    behind whom I followed very closely, and substantively, our

12    roles and our responsibilities in the company were indistinct.

13    So if he gets in, I should get in.

14         Could you remind me again.  Mr. Rut was placed in the

15    plan in 1993.  When did the defendant make the determination

16    not to include anyone else?  Was that shortly thereafter?

17         MS. FEDDER:  Your Honor, it would have been in 1996.

18         THE COURT:  1996.  OK.

19         MS. FEDDER:  Following the passage -- and I would say

20    I would need to confirm with my client, but at this point my

21    belief is that it was in 1996, shortly after the passage of the

22    tax law that included the grandfather rule that I described.

23    That was the reason why no one was added to the plan after

24    1995.

25         THE COURT:  Just playing devil's advocate for a

G4EQWEGc

1    moment, I understand what you are saying in the context of, for

2    example, a summary judgment motion.

3         MS. FEDDER:  Absolutely.

4         THE COURT:  Where what you say to me is, even assuming

5    a prima facie case is made, we have a non-gender based reason

6    for her non-inclusion in the program, and she cannot prove

7    pretext in that regard, right?  So I know the summary judgment

8    motion you're going to make some day if we get that far.  But

9    I'm just wondering how I get to do all of this on a motion to

10   dismiss because what she is saying is, I need to allege

11   similarity, and I am telling you I am similar to this gentleman

12   who is a member of the plan because I held these roles, and I

13   had these responsibilities, and they are, again, substantively

14   and distinct to what he did.

15        So I am just wondering in this context why that fails.

16   Why when I'm analyzing, if you will, with a 12(b)(6) lens, why

17   these allegations fail.

18        MS. FEDDER:  Yes, your Honor.  I appreciate your

19   question.  I would offer a few points in response.

20        First, as Ms. Wegmann alleges in her complaint, she

21   was the CFO of the company in 2006; and in that position, we

22   know it to be the case that she was familiar with the SERP, and

23   thus, we believe that she could include allegations regarding

24   when these male participants were put into the plan and what

25   their titles and duties were at that time if those allegations

G4EQWEGc

1     were helpful to her.

2               Second, your Honor, I certainly appreciate the

3     procedural posture of the case, and we appreciate your

4     listening to us preview for you what our position would be at a

5     later stage.

6               THE COURT:  OK.  May I turn then to the ERISA claim,

7     please.

8               MS. FEDDER:  Absolutely.

9               THE COURT:  So there I'm understanding your -- let's

10    call it your futility argument because basically what you're

11    saying is, these amendments don't help.  They make the claims

12    no more viable than they were at the time I was analyzing them

13    in the context of the motion to dismiss.

14              So with respect to the ERISA claim, I'm understanding

15    your principal argument to be exhaustion or failure to exhaust.

16    Am I correct?

17              MS. FEDDER:  Yes, your Honor.

18              THE COURT:  What Ms. Wegmann says back to me is, she

19    was not made aware of certain things.  She was not given the

20    information that she needed to be given.  She never received

21    the written notice and, therefore, cannot be faulted for

22    failure to exhaust.

23              Now, you know, and your adversary knows, and I know,

24    and in fact the Second Circuit issued a decision two days ago

25    on the point, that failure to comply with the sort of

G4EQWEGc

claims-handling procedure can vitiate the need or basically can

constitute exhaustion.  So she's saying I didn't even know

about it, so I didn't know to exhaust.

Why should I disregard that in this setting?

MS. FEDDER:  Your Honor, the Second Circuit in the

case *Davenport v. Harry N. Abrams, Inc.*, which I believe the

Court cited in its opinion, but for everyone's convenience, the

case cite is 249 F. 3d 130.  In that case, the Second Circuit

agreed with the district court and said:  Even if plaintiff was

unaware of her remedies under the plan prior to the institution

of this action, she became aware of them now, and yet has

inexcusably failed to avail herself of them.  Davenport, the

plaintiff, was required to exhaust even if she was ignorant of

the proper claims procedure.

The page where that language is found is 134.  So

under the Second Circuit's ruling in this case, it is not

enough that Ms. Wegmann was not aware of her rights under the

plan.

THE COURT:  I understand the argument better.  I

reserve the right to come back to you, but I want to talk to

Mr. Zabell first.  Thank you.

MS. FEDDER:  Thank you, your Honor.

THE COURT:  Mr. Zabell, let's talk about the

discrimination claims and the similar situation.

MR. ZABELL:  Sure.  I think what I'm most troubled by

G4EQWEGc

1    is counsel identified three men that were let into the plan and

2    she alluded to a woman that was allowed in the plan as well.

3            THE COURT:  Yes.

4            MR. ZABELL:  We allege in the red line version of --

5    we allege in our proposed amended complaint that at some point

6    a female secretary prior to 2007, a secretary was allowed in

7    the plan.

8            THE COURT:  OK.

9            MR. ZABELL:  That we believe undercuts the argument

10   that my client's position as assistant controller all the way

11   up is a management level position, and we certainly allege

12   throughout the complaint that she was advised that she was a

13   management level employee.  She was treated as a management

14   level employee.  She was given management level employee

15   benefits other than the SERP.  That's one issue.

16           She did follow the trajectory of Rut.  And Rut was,

17   according to what counsel was saying, Rut was in the position

18   of CFO for a year or two before, as counsel says, he was

19   eligible.  My client was in the CFO position for two years, '06

20   and '07, before the plan was changed.

21           THE COURT:  Tell me, please, when the plan was

22   changed.

23           MR. ZABELL:  It was changed effective July of 2007.

24           THE COURT:  OK.

25           MR. ZABELL:  And I believe it was changed December of

G4EQWEGc

1    '06 to be effective that July of '07.

2             THE COURT:  Did I mishear your adversary speaking

3    earlier about 1996 as the time period when certain tax changes

4    went into effect?

5             MR. ZABELL:  I believe that counsel references certain

6    tax changes and certain eligibility, but the eligibility in the

7    plan document which governs the plan was not changed until

8    2007, effective 2007.  So when I say 2007, I only mean

9    effective 2007.

10            THE COURT:  All right.

11            MR. ZABELL:  So that plan eligibility only says each

12   management employee with 15 years of service with the institute

13   whose compensation is not fully considered in the computation

14   of federal social security benefits --

15            THE COURT:  Slow down.  Thank you, counsel.

16            MR. ZABELL:  Sorry.  I know when I read, I speed up.

17   Sorry.

18            -- shall be eligible to participate in the plan.

19            That's the only plan requirements.  It's not a matter

20   of the board wanting to put somebody in the plan.  The board

21   adopted the language of the plan document.  So whether or not

22   the board wants to honor the language of the plan document,

23   their only avenue is to change the plan document, because once

24   they adopt the plan, they're stuck by its terms until it's

25   amended.  And, in essence, what they did was they created a

G4EQWEGc

```
1    plan that by virtue of my client's years of service and her

2    management level, which, OK, I understand it's a disputed

3    issue, but it's a disputed issue that relies on facts that we

4    need to develop, and I'm fairly confident we'll be able to

5    develop, and I think in the amended complaint we were able to

6    outline exactly why my client believed that her position all

7    along from the date of hire was a management level position.

8               So, if all that is required is 15 years as a

9    management level employee and your admission into the plan is

10   automatic, then counsel's reference to the board putting people

11   in is moot.  It's really misdirection.  OK, once they amend the

12   plan effective July of 2007, they've changed the plan.  At that

13   point my client had already been in the plan for over six

14   years.

15              THE COURT:  Or so she thought.

16              MR. ZABELL:  Or so she thought.

17              THE COURT:  Yes.

18              MR. ZABELL:  Now, in addition, in the proposed amended

19   complaint, we have allegations that she was told by the

20   chairman of the board, the person who was responsible for

21   signing off on the amendments to the plan, that she was

22   mistreated; she should have been in the plan.  And that if she

23   stayed with the organization, that he would remedy that.

24              THE COURT:  But how does that get you a gender

25   discrimination claim.
```

G4EQWEGc

1          MR. ZABELL:  That's our smoking gun.  That's an

2    admission of discrimination.

3          THE COURT:  What's the totality of what this

4    individual said to her?

5          MR. ZABELL:  The totality as I believe --

6          THE COURT:  Yes, tell me the paragraph number.

7          MR. ZABELL:  I want to say paragraph 76.  I'm sorry,

8    paragraph 77.

9          THE COURT:  He advised her that she -- because your

10   statement to me a few moments ago did not include the gender

11   part.  It says, she was not treated equivalently to male

12   executives.  That is exactly what he said or in substance

13   that's what he said?

14         MR. ZABELL:  That's what she relayed to me, yes.

15         THE COURT:  Ms. Fedder, I promise I'll let you talk

16   momentarily.  I see you standing.

17         MS. FEDDER:  I'm sorry.  I was standing up to get a

18   better view of my binder.

19         THE COURT:  Fine.

20         Mr. Zabell, keep talking.

21         MR. ZABELL:  Sure.  To address counsel's argument that

22   as CFO she should have known that there was an amendment and

23   that's when her time to complain about that amendment ran,

24   factually, that is not the information that my client had.  My

25   client was not provided a copy of the amended plan until after

G4EQWEGc

1   her employment ended.

2           THE COURT:  But she was CFO, correct?

3           MR. ZABELL:  Yes.

4           THE COURT:  How did she not know?

5           MR. ZABELL:  Because as CFO, as she relayed to me, her

6   responsibilities had more to do with the financial planning,

7   not the financial administration of the business.  So she was

8   arranging for loans, she was making sure that creditors were

9   paid, she was overseeing certain departments.  She was not

10  handling the SERP, which was handled solely by the board.  And

11  in the plan language, it talks about the board being

12  responsible.

13          Now, there is yet another issue, the exhaustion.

14          THE COURT:  Yes.

15          MR. ZABELL:  It seems to me, Judge, that the language

16  that you cited from the Second Circuit's recent decision is

17  applicable here, but it is applicable to show that YAI did not

18  comply with their obligations to notify my client that she

19  wasn't eligible for the plan properly.  That, according to the

20  plan 2007 amendment, talks about futility.  It talks about the

21  review process and if, YAI does not reject her application or

22  her request for benefits in writing notifying her of her

23  rights, then they've waived their argument to claim that.

24          "Except for claims requiring an independent

25  determination of a participant's disability status, her request

G4EQWEGc

```
 1    for a review of a denied claim must be made in writing."  I'm
 2    sorry, I'm reading the wrong paragraph.
 3              THE COURT:  OK.
 4              MR. ZABELL:  Manner and content of denial of initial
 5    claims.
 6              If the administrator denies a claim, it must provide
 7    to the claimant in writing or by electronic communication the
 8    specific reasons for the denial, a reference to the plan
 9    provision upon which the denial is based, and a whole host of
10    other obligations, including a statement of the claimant's
11    right to bring a civil action under ERISA as amended, and I
12    paraphrase the language there.
13              And it says that:  Failure of the plan to follow
14    procedures -- it's its own caption.  If the plan fails to
15    follow the claims procedures required by this section, a
16    claimant shall be deemed to have exhausted the administrative
17    remedies available under the plan and shall be entitled to
18    pursue any available remedy under ERISA Sections 502(a) on the
19    basis that the plan has failed to provide a reasonable claims
20    procedure that would yield a decision on the merits of the
21    claim.
22              That is futility.
23              THE COURT:  So, you're saying irrespective of how the
24    courts have interpreted the failure to comply with one's own
25    claims processing procedures, the fact that there is a
```

G4EQWEGc

1    provision in the agreement that obviates the need for option is

2    what controls here?

3              MR. ZABELL:  I think their plan gives the Second

4    Circuit a pat on the back and says, "You got it right."

5              THE COURT:  Oh, OK.

6              MR. ZABELL:  I'm making light of it, but their own

7    plan says exactly what you quoted from the Second Circuit.

8              THE COURT:  In the absence of that Second Circuit

9    decision, would this still control?  She would not need to

10   exhaust because of that provision?

11             MR. ZABELL:  This says that she did exhaust.

12             THE COURT:  I see.  That's the argument.

13             MR. ZABELL:  Right.

14             THE COURT:  OK.

15             MR. ZABELL:  It says she did exhaust because, in

16   essence, it would have been futile to proceed because the plan

17   didn't comply with their obligations; not that they said

18   futile, but they talk about the same standard -- the plan has

19   failed to provide a reasonable claims procedure that would

20   yield a decision on the merits of the claim, which is the

21   essence of futility.

22             THE COURT:  Anything else, sir?

23             MR. ZABELL:  No.

24             THE COURT:  Ms. Fedder, something in reply?

25             MS. FEDDER:  Your Honor, would you like me to kind of

G4EQWEGc

1    freestyle a response or is there a point you would like me to

2    begin with?

3            THE COURT:  Let's go with free-styling.  I don't have

4    specific questions for you.  I've heard your arguments.  I've

5    heard Mr. Sable's responses.  And before I step off the bench

6    and think about what you both have said, I wanted to give you a

7    final word.

8            MS. FEDDER:  Thank you, your Honor.  I appreciate

9    that.

10           First, with respect to our similarly situated

11   allegations, I appreciate the points Mr. Zabell has made about

12   plaintiff's eligibility, but what is at issue here is whether

13   this amended complaint had cured the deficiencies that the

14   Court identified in its opinion and order.

15           While, of course, we do not concede that the plaintiff

16   was a participant in the plan or was entitled to benefits under

17   the plan, we certainly respect the Court's determination that

18   at this stage she has pleaded sufficient allegations with

19   respect to her participation in the plan.  So we don't think

20   that that is an issue here.

21           With respect to similarly situated, the point we're

22   making is one of timing; that it is a critical point that no

23   one was put into the plan after 1995, and that one of the

24   aspects of that timing is that the change in these tax laws

25   puts Ms. Wegmann in a circumstance that is different from

G4EQWEGc

1    Mr. Rut.

2            In other words, Mr. Rut was put into the plan.  There

3    was an intervening change in the tax laws.  No one was put into

4    the plan after that time.  And she has failed to put forth

5    allegations that indicate that she was similarly situated to

6    Mr. Rut at a time when participants were still being added to

7    the plan.  So that is our argument with respect to the

8    similarly situated point.

9            We would also add that the fact Enid Barbel, a woman,

10   was put into the plan, notably undercuts Ms. Wegmann's claim

11   that she was discriminated against on the basis of her female

12   sex and/or gender.

13           With respect to the points that Mr. Zabell makes --

14           THE COURT:  May I just stop you --

15           MS. FEDDER:  Yes, absolutely.

16           THE COURT:  -- with what you just said.

17           I'm not disagreeing with the argument that

18   Ms. Barbel's inclusion does seem to complicate the analysis

19   because she is both a woman and non-management level employee.

20           I guess, what am I to do with the allegation that was

21   recited to me earlier that Mr. Green, this was in paragraph 77,

22   Mr. Green advised plaintiff that she was not treated

23   equivalently to male executives under the plan and indicated

24   that he would attempt to remedy the discriminatory conduct.

25           I appreciate that what I asked for in my opinion was a

G4EQWEGc

1    little bit more clarity on the similar situation, but I can't

2    necessarily overlook an allegation that does seem to suggest

3    that someone within YAI believed she was treated improperly

4    because of her gender.  What do I do with that?

5           MS. FEDDER:  Well, your Honor, in response, Mr. Green

6    did not have the authority to speak for the plan.  The

7    administrator of the plan is the YAI board.  There is no

8    indication in the complaint that the YAI board, which is the

9    entity with decision-making power with respect to the plan,

10   uttered any discriminatory words towards the plaintiff.

11          THE COURT:  Could you speak then about the exhaustion

12   point?

13          MS. FEDDER:  Yes, your Honor.

14          First, Section 5.4A of the plan provides one avenue

15   for claimants to initiate a claim for benefits, and that is to

16   file a claim with the plan administrator.

17          Ms. Wegmann does not allege that she filed such a

18   claim.  At most, she alleges that she made an informal request

19   for benefits, and that is insufficient to establish that she

20   exhausted administrative remedies.  The case law is clear on

21   that point.  For example, Ms. Wegmann is like a plaintiff that

22   the Southern District of New York found did not exhaust

23   administrative remedies where it did not submit an initial

24   application for benefits.

25          The case that I am referring to there, your Honor, is

G4EQWEGc

1    *Park v. The Trustees of the 1199 SEIU Health Care Employs*

2    *Pension Fund*.  The cite for that case is 418 F. Supp. 2d 343.

3    And the finding that I have referred to is on page 355 of that

4    case.

5         Also instructive is a case we cited in our letter

6    motion, *Capiello v. NYNEX Pension Plan*, where the court

7    dismissed a benefits claim for lack of exhaustion where the

8    plaintiff merely alleged that she had made a verbal request for

9    review of the benefits denial through her union representative

10   and conceded that she was merely told verbally that her review

11   of benefits denial was not successful.  Permitting judicial

12   review of informal benefits requests like Ms. Wegmann's would

13   thwart the purpose of the exhaustion requirement.

14        The Second Circuit has recognized that exhaustion was

15   intended to, among other things, uphold Congress's desire that

16   ERISA trustees be responsible for their actions, not the

17   federal courts, to minimize costs, to reduce the number of

18   frivolous ERISA lawsuits, to provide a clear administrative

19   record in the event of litigation, to assure that any judicial

20   review is made under the arbitrary and capricious standard and

21   not de novo.  None of these purposes can be satisfied here

22   because Ms. Wegmann has failed to exhaust.

23        With respect to futility, we understand that

24   Ms. Wegmann has pointed the Court to language in the plan

25   document which states, and I quote:

G4EQWEGc

1          "If the plan fails to follow the claims procedure by

2     this section, a claimant shall be deemed to have exhausted the

3     administrative remedies under the plan."

4          First, that section addresses administrative

5     exhaustion and not futility.  But, second, while Ms. Wegmann

6     does allege that she received no written denial of benefits,

7     she does not sufficiently allege that she ever initiated a

8     claim for benefits in the first place by filing a claim with

9     the plan administrator as is required under the SERP.  In other

10    words, as pleaded, her benefits claim provides no basis for the

11    Court to conclude that this plan provision was triggered in the

12    first place.

13         I would also add that courts in this circuit generally

14    will not apply the futility doctrine where the plaintiff has

15    not submitted an application for benefits under the ERISA plan

16    in the first place.  That principle is recognized by the *Park*

17    case that I quoted to you earlier, and there are numerous other

18    cases that recognize that principle as well.

19         Your Honor, are there any other points that I can

20    address for you?

21         THE COURT:  Not at this exact moment.  Let me take a

22    moment, take all of my notes with me and step off the bench.

23         MR. ZABELL:  Your Honor, may I just say very briefly?

24    I have three very small issues.

25         THE COURT:  Yes, but she will still get the last word.

G4EQWEGc

1            MR. ZABELL:  I understand that.  First and foremost,

2     with regard to my client's application for benefits directed

3     towards Mr. Green and Mr. Green's statement and counsel saying

4     he is not an individual who is authorized.  If you look at page

5     88 of Mr. Green's affidavit that he submitted in support of his

6     motion, there is an actual amendment to the supplemental

7     pension plan and trust where Eliot Green is listed -- it's not

8     actually signed, although I believe somewhere in here there is

9     a signed copy from Mr. Green where he's listed as the chair and

10    the individual who is responsible for signing off on the plan

11    amendment.  That is one.

12            Number two, her initial claim.  Counsel is quick to

13    cite other cases but not the underlying facts regarding them.

14            THE COURT:  I want to stop you for a moment, sir.

15    Because I'm still back with Mr. Green.  I'm just noting your

16    allegation complaint is that he is chairman of the board of

17    directors and an individual who held himself out to be a plan

18    administrator.  That is your point?

19            MR. ZABELL:  That is correct.

20            THE COURT:  OK.  Please proceed to your second point,

21    sir.

22            MR. ZABELL:  The initial claim is guided by the

23    supplemental document which says participant or beneficiary who

24    believes he or she is entitled to any plan benefit under this

25    plan may file a claim with the administrator.  There is no

G4EQWEGc

1    reference to how or in what form that claim is to be filed.

2    That's their plan language.  We are not looking outside at

3    anything other than their own language with regard to their

4    application.

5              And, thirdly, because I promised this would be brief--

6              THE COURT:  Yes.

7              MR. ZABELL:  -- counsel indicated that Mr. Rut was put

8    into the plan in 1995.

9              THE COURT:  1993?

10             MR. ZABELL:  I heard '95.  Can we inquire?

11             THE COURT:  Go ahead.

12             MS. FEDDER:  The board exclusion was added in 1993 and

13   no participants were added to the plan after 1995 due to the

14   changes in the tax laws.  Thank you.

15             MR. ZABELL:  If it was 1993, that would mean he was

16   employed for nine years before he was put in the plan.  That

17   contradicts the plan language saying that you need to be

18   employed for 15 years.  So I believe that that representation

19   contradicts the entire plan document.

20             THE COURT:  OK.

21             MR. ZABELL:  And it's not a matter of putting somebody

22   in the plan.  If you look at the plan that was in place in 1993

23   or 1995, it is still the same plan document that says in order

24   to be eligible, you just need to complete 15 years and be a

25   management level employee.  It doesn't even say you need to do

G4EQWEGc

```
1    15 years as a management level employee.  It just says you need

2    to be there 15 years and be a management level employee.  And

3    then it says --

4              THE COURT:  Sir, sir, you said brief.

5              MR. ZABELL:  Thank you.

6              THE COURT:  Thank you.  All right.

7              Ms. Fedder, final, final thoughts.

8              MR. ZABELL:  I apologize.  I started this.

9              MS. FEDDER:  No problem.  Thank you, your Honor.

10             Just briefly, the plan document contemplates a written

11   claims procedure.

12             THE COURT:  Where?

13             MS. FEDDER:  Well, it says that the participants --

14   this is Section 5.4A:  Participant or beneficiary who believes

15   that he or she is entitled to any plan benefit may file a claim

16   with the administrator.

17             I suppose in that particular provision, it doesn't use

18   the term written, but it's difficult to imagine how one would

19   file an unwritten claim.

20             And later provisions in the plans, for example, one

21   that Ms. Wegmann's counsel has pointed us to, I believe,

22   indicates that if the administrator denies a claim, it must

23   provide to the claimant in writing or by electronic

24   communication, and then it provides or, you know, it enumerates

25   certain things that must be provided in writing.
```

G4EQWEGc

1          But, in short, viewing section 5.4 as a whole, it

2    contemplates a written procedure that will result in the

3    compilation of a written administrative record that would then

4    facilitate judicial review or judicial review sought following

5    the completion of the claim procedure.

6          THE COURT:  OK.

7          MS. FEDDER:  Again, we reiterate that the board is the

8    plan administrator, and the board must act as a board.  No

9    individual person has the authority to make representations on

10   behalf of the plan.  It's the board that is the administrator.

11         THE COURT:  This is in response to the allegations

12   concerning Mr. Green's statements or not?

13         MS. FEDDER:  Yes.

14         THE COURT:  Thank you.

15         MS. FEDDER:  Your Honor, I know Ms. Wegmann's counsel

16   has indicated that or has pointed to the plan document and its

17   eligibility requirements.  I would just add that the plan

18   document does not define the term management employee.  There

19   is not a definition section that puts that forward.

20         THE COURT:  But I didn't think that was the key to the

21   first thing he was telling me.  I thought the 15 years versus

22   nine years was the heart of his issue.  Yes?

23         MS. FEDDER:  Yes, your Honor, I do recognize that.  My

24   point is that board as plan administrator interprets the plan,

25   and in connection with its interpretation of the plan, the

27

G4EQWEGc

1   board's practice has been to identify employees who are

2   eligible for participation in the SERP and to execute board

3   resolutions to put them into the plan.  That has been the

4   board's practice.  I just offer that for clarification and for

5   the Court's consideration.

6               THE COURT:  OK.

7               MS. FEDDER:  Finally, your Honor, we would ask that if

8   you are inclined to let the discrimination claims go forward,

9   we would ask if we could inquire whether Ms. Wegmann intends to

10  exhaust her administrative remedies under the plan.  To the

11  extent her benefit claim is dismissed for lack of exhaustion

12  and she does wish to pursue exhaustion, we would suggest that

13  it may make sense to stay the case, to stay the discrimination

14  claims pending the completion of the administrative review

15  process.

16              THE COURT:  Is there a chance that she is going to be

17  put into this plan?

18              MS. FEDDER:  No, your Honor.  My reason for suggesting

19  that is that during the administrative review process a record

20  would be developed which may be helpful to the Court in

21  considering the discrimination claims.

22              For example, as your Honor knows, the parties disagree

23  about whether Ms. Wegmann was a participant in the plan in the

24  first place.  Of course, it is our position that she wasn't,

25  and her position, as we understand it, is that she became

G4EQWEGc

```
 1   eligible in 2001 and was eliminated from the plan by operation
 2   of a discriminatory amendment in 2008.
 3           However, if the Court finds that she was never a
 4   participant in the first place, that would render her
 5   discrimination claims moot and the Court would not need to
 6   expend the judicial resources to reach them.
 7           THE COURT:  I'm sorry to cut you off, but this is the
 8   thing that confuses me.  I thought I just heard you say that
 9   depending on the constellation of claims that is left standing
10   after I've decided this issue, I might want to stay the matter
11   while things are resolved.  While what is resolved, her ERISA
12   claim?
13           MS. FEDDER:  Yes, your Honor.  To the extent you are
14   inclined to dismiss her ERISA claims for lack of exhaustion but
15   to let her discrimination claims go forward, we would suggest
16   that if she intends to exhaust her ERISA claim, the
17   discrimination claims be stayed so that the Court could have
18   the benefit of the administrative record that will be developed
19   when it considers the discrimination claims.
20           THE COURT:  I need to think about this a little bit
21   more, but it sounds like -- and I don't mean this with any
22   malice -- it sounds like you want me to stay so that your
23   client can basically paper the record and explain why she did
24   or did not qualify, and I think that I should be relying on the
25   record that is currently in front of me.
```

G4EQWEGc

1          But I think I understand the suggestion you're making,

2     which is:  If it turns out she does not qualify for conclusion

3     in the SERP, then that is the alleged discriminatory conduct.

4     And if she doesn't qualify, then there is no discrimination

5     because she fails at the first hurdle because she hasn't even

6     established that there was something that she did not get, or,

7     if you want, we could say she fails at the second hurdle

8     because you would say that the reason why she did not get this

9     benefit is because she did not qualify.

10          I'm just a little bit perplexed as to why I want to

11     stay these proceedings to let you all figure that out, because

12     I think what she is saying is, you did all figure that out.

13          MS. FEDDER:  Certainly, your Honor, and I understand

14     and appreciate your question.

15          Our point is simply that in the context of the

16     administrative procedure that is contemplated by the SERP, we

17     at the board would have to respond in writing to Ms. Wegmann's

18     claim.  She could then seek review and then, again, we would

19     have to provide a written response.  In other words --

20          THE COURT:  I'm sorry, Ms. Fedder.  Is not -- she is

21     going to ask, and you're going to say, "No, because there was a

22     change in the tax laws and you, therefore, do not qualify."

23          And she will say, "OK, I wish to take this, you know,

24     up to wherever I can take this up."

25          I am just not sure why the procedure you are just now

G4EQWEGc

1   articulating isn't futile, in the colloquial sense of the term,

2   in the sense that nothing is going to be different when the

3   process ends.  But maybe I'm misunderstanding what it is and

4   why it is you want me to stay this litigation.

5       MS. FEDDER:  Certainly, your Honor.  Our point with

6   the stay is simply that if Ms. Wegmann intends to use our

7   claims procedure a record would be developed because it must be

8   under the plan, and it seems that that record would be helpful

9   to the court, and would also in some requests be duplicative of

10  the record that would be developed in discovery before this

11  Court.

12      So, perhaps from a judicial economy sense, it would

13  make sense to stay the case during that procedure, which is an

14  abbreviated procedure which is not intended to take a long

15  time.

16      THE COURT:  I know I want you to have the last word,

17  but I want to be sure you and I aren't speaking about something

18  that is just immaterial to the case.

19      Mrs. Zabell, do you intend on exhausting the claim or

20  are you just going forward here and assuming that there is no

21  need to present this to the board at YAI.

22      MR. ZABELL:  We believe that we have exhausted our

23  obligations under the plan.  If your Honor was to determine

24  that my client made no claim for benefits she still would be

25  timely because she's got six years from the end of her

G4EQWEGc

1  employment, but I think counsel is missing something that maybe

2  that resides only in my mind.

3         The discrimination claim has to do with failure to pay

4  comparably for comparable work.  Part of that compensation is

5  the benefits awarded under the SERP.  That claim would exist

6  regardless of whether or not the SERP was there.  It's the

7  compensation that was received from the SERP.  So the

8  discrimination claim we believe can stand on its own, doesn't

9  need the SERP.

10        And I understand your Honor's question with regard to

11  futility.  Why stall everything just so we could develop a

12  record and provide further support for why we didn't give you

13  benefits that according to the plan you qualified for.

14        And with regard to that, counsel's motion to dismiss

15  conceded that Ms. Wegmann did apply for benefits.  It's

16  throughout their papers.  They treated that as the beginning.

17  They didn't argue in their motion to dismiss that she did not

18  file an application for benefits.  They conceded through the

19  complaint that she did, if only for purposes of the motion to

20  dismiss.

21        THE COURT:  My question was so much simpler.

22        MR. ZABELL:  I'm sorry.

23        THE COURT:  Irrespective of how I decide this, if I

24  accept your complaint, are you then going to say, "Thank you,

25  Judge.  I'm going to try to now exhaust my remedies with the

G4EQWEGc

1    plan"?

2              MR. ZABELL:  No.

3              THE COURT:  OK.  No matter what I do, you're not going

4    back before the plan.  You're taking your chances here in this

5    court, correct?

6              MR. ZABELL:  Correct.

7              THE COURT:  I understand.

8              OK.  Anything else, Ms. Fedder?

9              MS. FEDDER:  Your Honor --

10             THE COURT:  Briefly.

11             MS. FEDDER:  -- briefly.  It is an element of her

12   discrimination claim whether or not she was a participant in

13   the plan.  She needs to establish that she was a participant in

14   the plan for her discrimination claim to be able to go forward.

15             THE COURT:  I think she may even agree with you on

16   that.  I guess her point is that she doesn't think that she

17   needs to go through the exhaustion process.  She thinks the

18   plan documents make it clear she was a participant.  That's the

19   chance they're taking, but they don't want to press pause here

20   and go to your board and try and figure out whether she

21   qualifies or not.  They've made their determination in that

22   regard but I think I understand better as a result of this

23   conversation why you were offering the stay option.

24             MS. FEDDER:  Yes.  Well, because it is an ERISA

25   determination whether she was a participant in the plan.

G4EQWEGc

1    THE COURT:  Got it.  Anything else?

2    MS. FEDDER:  No, your Honor.

3    THE COURT:  OK.  Please be patient for a few moments.

4    I want to step off the bench and see if I can resolve this

5    orally rather than in writing.  I'll see what I can do.  Thank

6    you.

7    (Recess)

8    THE COURT:  Let me begin this section by in the manner

9    in which I began the conference by noting this is a little bit

10   unusual in that we've basically had an oral argument for a

11   motion that has not been filed, and that is because I

12   deliberately in the opinion set it up so that, if you will --

13   and isn't this the motto of Missouri, Show Me -- I wanted

14   plaintiff to show me why these claims should persist.

15   So, looking at the claims and thinking about the law

16   and thinking about everything that was said today, and

17   recognizing that the arguments Ms. Fedder has made are the best

18   arguments that can be made, I am going to allow the complaint

19   to be filed.

20   I've heard everything that you've said.  I think many

21   of your arguments have a lot of traction a few months from now,

22   but I have thought about futility, and I have thought about --

23   without you having asked me specifically -- the pleading

24   requirements of 12(b)(6).  I think with respect to the

25   discrimination claims, the allegations or the alignment with

G4EQWEGc

1    Mr. Rut, plus the allegations regarding Mr. Green, which I must

2    take as true, including -- even though it's a little bit

3    conclusory -- the fact that he was an individual who held

4    himself out to be a plan administrator.  Maybe discovery will

5    show otherwise, but I've got that.

6            And on the exhaustion issue, *Davenport* is what it is

7    and these cases are, you know, they are fact dependent, but on

8    these facts, I at least accept what's been alleged here, which

9    is that she was not given the notice she needed to be given,

10   and that effectively, therefore, her claims are deemed to be

11   exhausted because it would not have been worth anything for her

12   to try this.

13           Ms. Fedder will excuse me for the amount of

14   back-and-forth I had with her on the need to exhaust them now.

15   Mr. Zabell has said to me that is not what he wishes me to do.

16   So, I am accepting this complaint.

17           I am not going to tell the folks at the back table

18   what to do because they are professionals and they know what to

19   do.  You will have a period of 30 days to either answer or

20   move.  I can't stop you from making a motion, but we have had a

21   lot of discussion here today, and I think Ms. Fedder has really

22   clued me into all of the arguments and has put forth the best

23   arguments that could be put.  I'm not sure it is going to get

24   any better on paper, so I will just let you do with that what

25   you will.

G4EQWEGc

 1          If there is an answer and not a motion, then what I'm
 2   likely to do is to file on your behalf a discovery schedule.  I
 3   don't think this case will take years to do discovery.  The one
 4   thing I will just tell the parties is, I will give you a fair
 5   amount of time, but I'm not going to give you extensions so
 6   please don't ask me for them.  And if during discovery the
 7   parties would rather try and mediate this matter or have any
 8   other sort of alternative dispute resolution, I understand it
 9   and I can make it happen.  We have a Magistrate Judge, Judge
10   Peck.  We have mediators aplenty, who are affiliated with the
11   court and who do not charge you for the mediation.  I can
12   handle a settlement conference if the parties wish.  If the
13   parties want to go through discovery and then talk about
14   further motion practice, I certainly understand that as well.
15          But for now what I'm going to do is I am going to
16   authorize the filing of the proposed amended complaint that has
17   been provided by plaintiff's counsel, and I will anticipate a
18   response of some sort in 30 days unless that falls on a
19   weekend, then in which case the next business day, and we'll go
20   from there.
21          Mr. Zabell, anything else today, sir?
22          MR. ZABELL:  Only do I now electronically file the
23   complaint or is it deemed --
24          THE COURT:  I'm going to see if we can't get our
25   people to just have it filed.  If not, we'll call you, but I'm

G4EQWEGc

1   going to talk to our docketing people and see if they will just

2   not accept it.  It is on there as an attachment as an exhibit

3   to one of your submissions to me.

4              MR. ZABELL:  Yes.

5              THE COURT:  That should be enough.  If not, I'll let

6   you know.  I think I can make it happen though.

7              MR. ZABELL:  Thank you.

8              THE COURT:  Ms. Fedder, anything else today?

9              MS. FEDDER:  No, your Honor.  I thank you.

10             THE COURT:  Thank you very much.

11             I'm going to ask the parties, please, to get a

12  transcript of this because some day in another context I may

13  need it.  In the ordinary course please.  Thank you very much

14  for staying.

15             (Adjourned)

16

17

18

19

20

21

22

23

24

25