```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
KAREN WEGMANN,                                              :
                                                            :
                              Plaintiff,                    :     15 Civ. 3815 (KPF)
                                                            :
                     v.                                     :     OPINION AND ORDER
                                                            :
YOUNG ADULT INSTITUTE, INC., et al.,                        :
                                                            :
                              Defendants.                   :
                                                            :
-------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 5, 2016

KATHERINE POLK FAILLA, District Judge:

The instant action arises out of an allegedly discriminatory denial of Plaintiff Karen Wegmann's claim for benefits under a retirement plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), codified in part at 29 U.S.C. ch. 18.  Having previously succeeded on a motion to dismiss several of Plaintiff's ERISA-based claims, Defendants Young Adult Institute, Inc. ("YAI") and Trustees of the Supplemental Pension Plan for Certain Management Employees of Young Adult Institute (the "Trustees," and together with YAI, "Defendants"), now seek to dismiss Plaintiff's claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), or, in the alternative, to stay the action pending Plaintiff's exhaustion of administrative procedures.  For the reasons set forth in the remainder of this Opinion, Defendants' motion is granted insofar as it seeks to stay the case pending exhaustion of Plaintiff's administrative remedies, and denied insofar as it seeks dismissal of Plaintiff's § 502(a)(1)(B) claim.

## BACKGROUND[1]

### A. Factual Background

The factual background of this matter is set forth in detail in the Court's Opinion on Defendants' previous motion to dismiss. *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *1 (S.D.N.Y. Mar. 2, 2016). In brief, the facts relevant to the instant motion are as follows: Plaintiff began working for Defendant YAI on December 15, 1986, and was employed by YAI for over 27 years prior to her resignation on June 30, 2014. (Am. Compl. ¶¶ 30, 46). YAI maintains a deferred compensation plan subject to ERISA (the "Plan"), in which YAI's Executive Director Joel Levy orally advised Plaintiff that she was entitled to participate. (*Id.* at ¶ 72).

"Upon cessation of her employment" in 2014, Plaintiff orally "requested payment of her benefits from Eliot Green, Chairman of [YAI's] Board of Directors and an individual who held himself out to be a Plan Administrator," but was "denied benefits … to which she was entitled." (Am. Compl. ¶ 76). Plaintiff specifically alleges that she "was verbally advised on or about June 30, 2014 that she was not to receive any benefits from the [P]lan as she was

---

[1] The facts contained in this Opinion are primarily drawn from Plaintiff's Amended Complaint ("Am. Compl.") (Dkt. #32), and are taken as true for purposes of this motion. *See Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)). Additional facts come from the exhibits submitted in connection with the declaration of Defendants' counsel, Michael Prame (Dkt. #37), which exhibits consist of documents integral to the Complaint that are properly considered on a motion to dismiss. *See* Discussion Sec. A.1., *infra*. For convenience, Defendants' brief in support of their motion to dismiss (Dkt. #38) will be referred to as "Def. Br.," and the supporting declaration exhibits as "Prame Decl. Ex."; Plaintiff's opposition (Dkt. #40) as "Pl. Opp."; and Defendants' reply brief (Dkt. #42) as "Def. Reply."

voluntarily leaving the agency and it was felt that she received enough compensation." (*Id.* at ¶ 78). Plaintiff was never provided with a written response to her oral benefits request, nor was she given notice that she had a right to request review of a benefits claim denial. (*Id.* at ¶¶ 79-80).

The Plan provides that a claimant "who believes he or she is entitled to any Plan benefit ... may file a claim with the Administrator. The Administrator shall review the claim itself or appoint an individual or an entity to review the claim." (Prame Decl. Ex. A-2 at 10).[2] The Plan additionally states that claimants "shall be notified within ninety (90) days after [their] claim is filed whether the claim is allowed or denied," and that in the case of a denial, the Administrator must provide written notice of certain facts, including the reason for the denial and the claimant's right to seek administrative review of the decision. (*Id.* at 10-11).

## B. Procedural Background[3]

The Court issued an Opinion and Order granting in full Defendants' motion to dismiss Plaintiff's initial Complaint in this matter on March 2, 2016, but providing Plaintiff a period of 21 days within which to seek leave to replead. (Dkt. #27). Plaintiff filed a letter motion seeking leave to replead on March 24, 2016 (Dkt. #28), to which Defendants responded on March 29, 2016 (Dkt. #29), and on which the Court held a telephonic conference of April 14, 2016 (*see*

---

[2]   When citing the exhibits attached the Prame Declaration, the Court uses the page numbers assigned by the Court's Electronic Court Filing system.

[3]   The procedural history of this case prior to Defendants' first motion to dismiss is set forth in detail in the Court's March 2 Opinion. (Dkt. #27). Accordingly, this section sets forth only the procedural events subsequent to those addressed in that Opinion.

Dkt. #31). The Court entered an Order granting Plaintiff's motion for leave to replead on April 15, 2016 (Dkt. #33), and Plaintiff filed her Amended Complaint that same day (Dkt. #32).

Defendants filed their motion to dismiss Count IV of Plaintiff's Amended Complaint on May 16, 2016. (Dkt. #36, 38).[4] Plaintiff filed her brief in opposition on June 15, 2016 (Dkt. #40), and Defendants concluded the briefing by filing their reply on June 29, 2016 (Dkt. #42).

## DISCUSSION

**A.   Applicable Law**

### 1.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to

---

[4]   Plaintiff's Amended Complaint additionally contains claims for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301; and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131. None of these claims is implicated by Defendants' instant motion.

4

'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, a court need not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court is not limited to the face of the complaint. Rather, the court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)); *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Documents fairly considered in the instant matter include the text of the original Plan (Prame Decl. Ex. A-1), as well as the amendments made to the Plan during Plaintiff's tenure at YAI (*id.* at Ex. A-1, A-2), as the Plan and its amendments are integral to the ERISA claim at issue on this motion.

### 2. The Exhaustion Requirement for Claims Under ERISA § 502(a)(1)(B)

ERISA § 502 provides an avenue through which a pension plan participant or beneficiary may enforce her rights as provided by that plan's terms. *See* 29 U.S.C. § 1132. As relevant to the instant matter, § 502(a)(1)(B) permits a plan participant to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Before a plaintiff brings such action, however, she must exhaust the administrative remedies contained within the plan from which her claim arises. *See Eastman Kodak Co.* v. *STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) ("ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation.").

Under Second Circuit law, "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." *Paese* v. *Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006). Nevertheless, "courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe* v. *New York Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (collecting cases). Requiring claimants to exhaust their remedies under the relevant plan prior to resort to federal court provides a "safeguard that encourages employers and others to undertake the voluntary step of providing medical and retirement benefits to

6

plan participants." *Halo* v. *Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 55 (2d Cir. 2016) (internal alterations and citation omitted).

A claimant may be excused from exhaustion where pursuing a claim through administrative means would be futile. *See Kennedy* v. *Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). However, a court will "excuse an ERISA plaintiff's failure to exhaust only 'where claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile." *Davenport* v. *Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (emphasis in *Davenport*) (quoting *Kennedy*, 989 F.2d at 594).

**B.   Analysis**

   **1.   Plaintiff Has Failed to Plead Exhaustion of Her Claim Under ERISA § 502(a)(1)(B)**

Plaintiff argues that the Plan does not require beneficiaries to file a written claim, as the relevant Plan provision states that claimants who believe they are "entitled to any Plan benefit … *may* file a claim with the Administrator." (Pl. Opp. 7 (emphasis added)). Plaintiff suggests that because "may" is permissive rather than mandatory, filing a claim with the Administrator was merely one way in which a claimant could employ the Plan's administrative review procedure; Plaintiff's informal oral request to Mr. Green, the argument goes, was an equally valid means of initiating the Plan's claim review process. This is not a plausible reading of the Plan. The Plan section in question is labeled "Initial Claim," and clearly sets forth the initiating procedure for a "participant or beneficiary … who believes he or she is entitled to any Plan benefit"; specifically, that party may "file a claim with the

7

Administrator." To the extent that "may" is permissive, the action "permitted" is initiating a claim; certainly an individual is not required to initiate a claim — the obvious consequence of failing to do so, however, is that the claims process will not begin; no administrative consideration of the claim will occur; and the claimant's hypothetical claim will not be acted upon. Nothing in the text of the Plan supports a reading of "may" as permitting alternative means of pursuing a claim beyond that expressly provided for in the Plan itself, *viz.*, the filing of a claim. A party may choose to pursue her benefits claim or not, but if she wishes to do so, the sole means provided under the Plan is through filing a claim.

To the extent Plaintiff is suggesting that the word "may" renders exhaustion *itself* optional, the Second Circuit's analysis in *Kennedy* v. *Empire Blue Cross & Blue Shield*, 989 F.2d 588 (2d Cir. 1993), is instructive. There, the Court considered the regulation promulgated under the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8913, providing that "[i]f [a benefits plan] denies a claim, the enrollee *may* ask the plan to reconsider the denial. If the plan affirms its denial or fails to respond as required by paragraph (b) of this section, the enrollee *may* ask OPM to review the claim." *Kennedy*, 989 F.2d at 593 (quoting 5 C.F.R. § 890.105(a)) (emphasis in *Kennedy*). The question before the Court was whether the use of "may" in the regulatory language meant that a claimant could choose whether to exhaust administrative remedies by seeking reconsideration of a denied claim prior to bringing a civil action. *Id.* The Second Circuit found that exhaustion was

mandatory, the permissive implication of "may" notwithstanding. In so holding, the Court explained that Congress had delegated authority to OPM to administer the federal benefits program, and that "[w]ere OPM review optional, the usefulness of this right of OPM to bind carriers would be diminished as a tool for carrying out Congress' intent to protect and benefit FEHBP participants and their beneficiaries." *Id.* at 594.

To be sure, the Plan language at issue in the present case presents a different circumstance than that in *Kennedy*: Here, the Court is being asked to interpret the terms of a benefits Plan, not a federal regulation, and the policy interests are not identical — whereas OPM review serves to protect beneficiaries while avoiding costly litigation, requiring initial claim consideration by an ERISA plan administrator does not necessarily provide special protection for claimants. Nevertheless, benefits plans are required to contain procedures for administrative review of claims, and the *Kennedy* Court identified similarly important purposes of the ERISA exhaustion requirement: "[i] uphold[ing] Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; [ii] provid[ing] a sufficiently clear record of administrative action if litigation should ensue; and [iii] assur[ing] that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Kennedy*, 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir.)), *reh'g denied*, 772 F.2d 904 (5th Cir. 1985)) (alterations added). In light of these clearly identified interests in having claims reviewed by plan administrators in

the first instance, the Court finds that, as in *Kennedy*, public policy weighs against obviating the Second Circuit's exhaustion requirement solely on the basis of the Plan's use of the word "may" rather than "must."  Moreover, as the Court has already discussed, the most logical reading of the Plan's plain terms indicates that "may" refers to a claimant's choice to pursue a claim *vel non*; once a claimant has chosen to do so the Plan provides for a set means of proceeding.

In a second attempt to reinterpret the Plan's exhaustion requirement, Plaintiff argues that the Plan lacks a "formal claim procedure," or, alternatively, that the Plan does not require that claims be made in writing.  (Pl. Opp. 7-9).  These contentions similarly fall flat.

The Plan plainly does contain a "formal claim procedure," explicitly set forth under the Plan heading "Claims Procedure."  (Prame Decl. Ex. A-2 at 9).  The U.S. Department of Labor regulation requires that "[e]very employee benefit plan ... establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse determinations."  29 C.F.R. § 2560.503-1(h)(1).  The Plan does this: It directs claimants to "file a claim with the Administrator" for "review" by either the Administrator itself or another designated entity, going on to specify the claimant's rights in the event of a denial, and the steps necessary for administrative review of a denied claim.  (*Id.* at 10-11).  The Plan further details a claimant's rights in the event that the Plan fails to follow the claims procedure set forth.  (*Id.* at 13).  The Plan therefore satisfies the requirement

that it contain "reasonable procedures" for the filing and review of benefits claims.

Plaintiff suggests that the Plan is ambiguous regarding the need to submit claims in writing, as opposed to orally, and that consequently her oral request for benefits to Mr. Green sufficed to initiate the claims process. (Pl. Opp. 8). However, courts review ERISA plans within the context of the entire agreement, "giving terms their plain meanings." *Fay* v. *Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire … agreement." *O'Neil* v. *Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citation omitted); *see also U.S. Fire Ins. Co.* v. *Gen. Reinsurance Corp.*, 949 F.2d 569, 571-72 (2d Cir. 1991). Accordingly, a court may not create an ambiguity by straining a plan's language "beyond its reasonable and ordinary meaning." *Loughman* v. *Unum Provident Corp.*, 536 F. Supp. 2d 371, 375 (S.D.N.Y. 2008) (quoting *Swensen* v. *Colonial Life Ins. Co. of Am.*, Nos. 04 Civ. 5494, 04 Civ. 6510, 05 Civ. 2338 (WCC), 1993 WL 378470, at *2 (S.D.N.Y. Sept. 22, 1993)).

Here, the Plan clearly provides for claimants to "file a claim" for subsequent "review" by one of multiple possible individuals or entities. The plain meaning of "filing" something for later review requires that the "filed" item be in a format *capable* of later review — in this case, a written document. The Court acknowledges that the word "file" may, under certain circumstances,

apply to oral as well as to written filings.  *See Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) (collecting statutes and regulations in which "filings" may be oral or written).  The Supreme Court has observed, however, that filing "more often" contemplates a written document.  *Id.* at 9-10.[5]  In some instances context may indicate that a broader reading of "file" is appropriate; here, the context provides the opposite inference, in that the claim to be filed will then be subject to review by one of multiple possible reviewers, and is subject to further administrative review upon a denial.  *Cf. Ritter* v. *United States*, 28 F.2d 265, 267 (3d Cir. 1928) (stating that requirement for claimant to "file a claim" in context of tax code "means a written claim, and not an oral one, because it is difficult to know just how to file an oral claim.  It could not be done, unless it was reduced to writing, either by the plaintiff or some one for him.  The oral claim, therefore, was in law insufficient."), *cited with approval in Kasten*, 563 U.S. at 9.

Plaintiff highlights the Plan's explicit requirement that an Administrator's denial of a claim must be given in writing as indicating that if claimants were similarly required to provide a written document, the Plan would have stated as much.  (Pl. Opp. 7-8).  But considering the Plan text in its entirety, the Court

---

[5]  In *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011), the Supreme Court stated that the phrase "file any complaint," contained within the anti-retaliation provision of the Fair Labor Standards Act, encompassed oral as well as written complaints.  *Id.* at 9.  In reaching this holding, it explained that, while the word "file" might typically refer to written submission, the qualifier "any" in the phrase "file *any* complaint" suggested "a broad interpretation that would include an oral complaint."  *Id.* at 10.  Accordingly, the *Kasten* Court was unable to resolve the interpretive question on the text of the statute alone, and therefore considered its legislative history and purpose, both of which counseled in favor of permitting oral complaints.  *Id.* at 11-17.  As discussed in the text of this Opinion, the present case presents a different scenario.

finds that the only reasonable interpretation of its requirement that a claimant "file a claim" for later review encompasses a writing requirement; that the Plan does not use the same wording as in the section setting forth requirements for the ensuing decision does not negate the meaning of the terms it did employ. Notably, the phrase "file a claim" suffices to indicate the need for a Plaintiff to submit a written claim to the Plan Administrator, but the same language could not be logically employed to indicate the Plan's reciprocal need to return a written decision to Plaintiff — while using the word "file" in the context of submitting a claim for administrative review captures the need for a documented record, it would make little grammatical sense for the Plan to direct the Administrator to "file a denial with Plaintiff."  Hence, in referring to the need for documentation on the part of the Administrator, the Plan specifies that its denial of a claim must be "in writing"; the use of different terms for the documentation requirement is appropriate in light of the differing actions being specified (*filing* a claim for administrative review as opposed to *communicating* a decision).

Taking the Plan's requirements as a whole, and in light of its clear contemplation that the steps taken in the claims process be documented to permit subsequent review, no "reasonably intelligent person who has examined the context of the entire ... agreement" could interpret the filing of a claim as permitting an informal oral request to trigger the claims process.[6]

---

6   The Court notes the distinction between the instant case and that presented in *Kirkendall* v. *Halliburton, Inc.*, 707 F.3d 173 (2d Cir. 2013), which held that "where a plaintiff reasonably interprets the plan terms not to require exhaustion and, as a result,

Consequently, Plaintiff's oral request to Mr. Green that she be given benefits under the Plan does not suffice to satisfy the exhaustion requirement for ERISA claimants. *Cf. Shamoun* v. *Bd. of Trs.*, 357 F. Supp. 2d 598, 604 (E.D.N.Y. 2005) (claimant's oral demands for benefits failed to constitute exhaustion where the benefits plan contemplated written claims); *Cappiello* v. *NYNEX Pension Plan*, No. 92 Civ. 3896 (MBM), 1994 WL 30429, at *3 (S.D.N.Y. Feb. 2, 1994) (evidence of "informal[] review" of a claimant's benefits claim insufficient to constitute administrative exhaustion); *Barnett* v. *Int'l Bus. Machines Corp.*, 885 F. Supp. 581, 588 (S.D.N.Y. 1995).[7]

---

    does not exhaust her administrative remedies, the case may proceed in federal court." *Id.* at 180. As the Court has already discussed, the Plan is not susceptible to any such "reasonable interpretation." Moreover, even were the Court to find the Plan ambiguous in regard to its writing requirement, *Kirkendall* does not foreclose this Court's staying of the case to allow for proper exhaustion. In *Kirkendall*, it was unclear whether the plaintiff's claim was encompassed by the plan's claims review process; the plaintiff accordingly requested, in writing, additional information regarding how to pursue her request. The Court there observed that "such a step is exactly what one ERISA treatise recommends that litigants do when it seems that no administrative remedy exists," and consequently found that the plaintiff "thought that she had pursued the avenues available to her and reasonably concluded that the only means of vindicating her claim was through a lawsuit. *Under these circumstances*, [the Court] conclude[d] that [the plaintiff] was not required to exhaust her administrative remedies." *Id.* at 181 (emphasis added).

    Here, by contrast, Plaintiff's pleading states that she made a single oral request for benefits; at no point did Plaintiff seek clarification of the appropriate process, whether orally or in writing. Plaintiff having failed to reasonably explore her administrative options, it is appropriate for the Court to stay Plaintiff's action to allow her to do so now, and to thereby effectuate the important policy aims of the exhaustion requirement.

[7] Plaintiff attempts to distinguish the instant case from *Shamoun* by highlighting the requirement in that case that a claimant file an "application form" for benefits, whereas here, Plaintiff argues, no written claim was required under the Plan. (Pl. Opp. 9). As this Court has explained, however, Plaintiff's contention that the Plan did not require a written claim fails. *See supra*, Discussion Sec. B.1. Plaintiff further tries to distinguish her case by contrasting the different individuals making oral statements in each case (*id.*) — a union representative orally denied Shamoun's claim whereas Joel Levy orally represented that Plaintiff was entitled to Plan benefits and Eliot Green then stated that she was not — but oral representations made to the plaintiff were not determinative of the *Shamoun* court's decision; rather, it was the plaintiff's failure to initiate a formal claim in accordance with the plan's procedures. *See Shamoun*, 357 F. Supp. 2d at 604. The same is true here.

Finally, Plaintiff asserts that under the Second Circuit's recent decision in *Halo* v. *Yale Health Plan*, the Plan's failure to abide by the terms of its own claims procedure excused her from the exhaustion requirement. (Pl. Opp. 10 (citing *Halo*, 819 F.3d at 57-58)). The holding that a claimant need not exhaust when a plan violates its own claims procedure necessarily requires, however, that a claimant actually initiate the procedure in question. *See Shamoun*, 357 F. Supp. 2d at 604; *Barnett*, 885 F. Supp. at 588. Absent an initial claim filed by Plaintiff, the Plan had no basis upon which to issue a written decision on her claim.

For all of these reasons, Plaintiff fails to allege exhaustion of her administrative remedies for her benefits claim under the Plan. Accordingly, absent an applicable exception to the exhaustion requirement, Plaintiff may not now bring court action under § 502(a)(1)(B).

### 2. Plaintiff Has Not Pleaded That Recourse to Administrative Remedies Would be Futile

Plaintiff asserts that, should the Court find that she did not plead exhaustion, this omission should not bar her benefits claim because pursuing relief through administrative channels would have been futile. (Pl. Opp. 11-12). Once again, Plaintiff's argument fails.

In general, when assessing whether a plaintiff has pleaded the futility of exhaustion, courts look for "an unambiguous application for benefits and a formal or informal administrative decision denying benefits such that it is clear that seeking further administrative review of the decision would be futile." *Davenport*, 249 F.3d at 133 (internal quotation marks and alteration omitted).

Importantly, a claimant may not premise her assertion of futility on an informally lodged benefits claim, nor on a defendant's litigation position. *Id.*; *see also Barnett*, 885 F. Supp. at 588 ("[I]f an informal or unsubstantiated denial of a 'claim' that was never filed or formally presented is reviewable in the federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits."); *Commc'ns Workers of Am.* v. *AT&T*, 40 F.3d 426, 433 n.1 (D.C. Cir. 1994) (actions taken to defend lack of entitlement to benefits cannot establish futility because otherwise the exhaustion doctrine would be "entirely undermine[d]," as plaintiffs could "bypass administrative remedies, file suit, and then hope for subsequent events to justify futility claims"). As such, Plaintiff's argument that Defendants' representations in the present action demonstrate the futility of any further attempt to exhaust is unavailing. (*See* Pl. Opp. 11). In short, because Plaintiff never filed a formal claim as required under the Plan and has not otherwise demonstrated that pursuing her claim through administrative channels would have been futile, the Court will not excuse Plaintiff's failure to exhaust.

### 3. The Action Is Stayed Pending Plaintiff's Exhaustion of Administrative Remedies

The Court finds that permitting Plaintiff's § 502(a)(1)(B) claim to proceed in court absent prior recourse to the Plan's reasonable claims-assessment procedures would frustrate the exhaustion requirement's aims of holding "ERISA trustees [] responsible for their actions," establishing "a sufficiently clear record of administrative action" for the litigation of benefits claims, and "assur[ing] that any judicial review of fiduciary action (or inaction) is made

under the arbitrary and capricious standard, not *de novo*." *Kennedy*, 989 F.2d at 594.  The Court will therefore stay the instant action for a period of four months to permit Plaintiff to avail herself of the administrative process available under the Plan.  *See, e.g., Prince* v. *Am. Airlines*, No. 10 Civ. 8792 (RWS), 2011 WL 2534965, at *1-2 (S.D.N.Y. June 24, 2011) (staying to permit administrative exhaustion of a benefits claim subject to ERISA); *La Ley Recovery Sys.-OB, Inc.* v. *Blue Cross & Blue Shield of Florida, Inc.*, No. 14 Civ. 23546 (DPG), 2014 WL 5524171, at *4 (S.D. Fla. Oct. 31, 2014) (same); *Selby* v. *Nw. Mut. Life Ins. Co.*, No. 3-12-0560, 2013 WL 2285557, at *2 (M.D. Tenn. May 23, 2013) (same); *Leaven* v. *Philip Morris USA Inc.*, No. 04 Civ. 907, 2006 WL 1666741, at *4 (M.D.N.C. June 6, 2006) (same); *Jones* v. *State Wide Aluminum, Inc.*, 246 F. Supp. 2d 1018, 1026 (N.D. Ind. 2003) (same).

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss or stay is GRANTED insofar as it seeks a stay of the instant action pending exhaustion of Plaintiff's administrative remedies, and DENIED insofar as it seeks to dismiss Count IV of the Amended Complaint.  The parties are directed to submit a joint letter informing the Court of the status of administrative proceedings at the earlier of either (i) a completion of administrative review of

Plaintiff's benefits claim, or (ii) **December 1, 2016**.  The Clerk of Court is directed to terminate the motion at docket entry 36 and stay this case.

    SO ORDERED.

Dated:    August 5, 2016
             New York, New York

                                            KATHERINE POLK FAILLA
                                            United States District Judge