UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

KAREN WEGMANN,

                  Plaintiff,

-against-                              Case No.: 15-CV-03815 (KPF)

YOUNG ADULT INSTITUTE, INC. and TRUSTEES
OF THE SUPPLEMENTAL PENSION PLAN FOR
CERTAIN MANAGEMENT EMPLOYEES OF
YOUNG ADULT INSTITUTE,

                  Defendants.

--------------------------------------------------------------------X


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(a)

**ZABEL & ASSOCIATES, P.C.**
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel (631) 589-7242
Fax (631) 563-7475

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

I. PRELIMINARY STATEMENT ...................................................................... 1

II. STATEMENT OF FACTS ............................................................................. 1

   A. PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS ......................... 1

   B. THE SUPPLEMENTAL PENSION PLAN FOR CERTAIN MANAGEMENT
      EMPLOYEES OF YOUNG ADULT INSTITUTE TRUST ......................... 3

   C. THE DENIAL OF PLAINTIFF'S SERP PARTICIPATION ..................... 4

III. STANDARD OF REVIEW ........................................................................... 6

IV. ARGUMENT ................................................................................................. 7

   A. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER
      ERISA CLAIM ............................................................................................ 7

     1. THE STANDARD OF REVIEW APPLIED TO CLAIMS UNDER
       ERISA § 1132(a)(1)(B) ......................................................................... 7

     2. PLAINTIFF WAS WRONGFULLY DENIED HER VESTED PARTICIPATION
       IN THE SERP ......................................................................................... 10

       a. Plaintiff's Serp Participation Vested ............................................... 10

         i. Plaintiff was a Management-Level Employee ............................. 12

         ii. Plaintiff Completed Fifteen Years of Service with YAI .............. 14

         iii. Plaintiff's Compensation was not Fully Considered in the Calculation
          of Social Security Benefits .................................................................... 15

       b. Plaintiff was Wrongfully Denied her Vested Benefits under the SERP .......... 15

       c. The Denial of Plaintiff's Claim for Benefits was Arbitrary and Capricious ... 19

   B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER CLAIMS
      BROUGHT PURSUANT TO TITLE VII, NYSHRL, NYCHRL ..................... 26

     1. THE STANDARD OF REVIEW FOR CLAIMS UNDER TITLE VII,
       NYSHRL, and NYCHRL ......................................................................... 26

**a. Plaintiff was Qualified and Competent in Her Positions at YAI**...................... 27

**b. Plaintiff Suffered an Adverse Employment Action** ........................................... 27

**c. Inference of Discriminatory Intent**........................................................................ 28

**V. CONCLUSION** ....................................................................................................................... 31

## CASES

**United States Supreme Court**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................. 7

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989) ........................................................... 7-8

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ..................................................... 26-28, 30

**United States Court of Appeals**

*Abdu-Brisson v. Delta Air Lines, Inc.,*
    239 F.3d 456 (2d Cir. 2001) ................................................. 26

*Austin v. Ford Models, Inc.,*
    149 F.3d 148 (2d Cir. 1998) ................................................. 26

*Bickerstaff v. Vassar Coll.,*
    196 F.3d 435 (2d Cir. 1999) .................................................. 7

*Comrie v. IPSCO, Inc.,*
    636 F.3d. 839 (7th Cir. 2011) ................................................ 8

*Craig v. The Pillsbury Non–Qualified Pension Plan,*
    458 F.3d 748 (8th Cir. 2006) ................................................. 8

*Fay v. Oxford Health Plan,*
    287 F.3d 96 (2d Cir. 2001) ................................................ 10-11

*Galabya v. N.Y.C. Bd. of Educ.,*
    202 F.3d 636 (2d Cir. 2000) ................................................. 27

*Graham v. Long Island R.R.,*
    230 F.3d 34 (2d Cir. 2000) .................................................. 28

*Guerrero v. FJC Sec. Servs.,*
    423 Fed.Appx. 14 (2d Cir. 2011) ............................................ 10

*Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.,*
    819 F.3d 42 (2d Cir. 2016) ................................................... 7

*Kemmerer v. ICI Ams. Inc.,*
    70 F.3d 281 (3d Cir. 1995) ............................................... 11, 15

*Konikoff v. Prudential Ins. Co. of Am.*,
    234 F.3d 92 (2d Cir. 2000) ........................................................................... 7

*Mandell v. Cnty. of Suffolk*,
    316 F.3d 368 (2d Cir. 2003) ...................................................................... 28

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ...................................................................... 26

*Miller v. United Welfare Fund*,
    72 F.3d 1066 (2d Cir. 1995) ...................................................................... 19

*Moore v. Metro. Life Ins. Co.*,
    856 F.2d 488 (2d Cir.1988) ....................................................................... 10

*Murphy v. Int'l Bus. Machines Corp.*,
    23 F.3d 719 (2d Cir. 1994) .......................................................................... 8

*Norville v. Staten Island Univ. Hosp.*,
    196 F.3d 89 (2d Cir. 1999) ........................................................................ 26

*Pagan v. NYNEX Pension Plan*,
    52 F.3d 438 (2d Cir. 1995) .......................................................................... 8

*Pane v. RCA Corp.*,
    868 F.2d 631 (3d Cir.1989) ......................................................................... 7

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014) .................................................................... 27-28

*Reichelt v. Emhart Corp.*,
    921 F.2d 425 (2d Cir. 1990) ........................................................................ 8

*Roganti v. Metropolitan Life Ins. Co.*,
    786 F.3d 201 (2d Cir. 2015) ........................................................................ 8

*Ruiz v. Cnty. of Rockland*,
    609 F.3d 486 (2d Cir. 2010) ...................................................................... 28

*Sandoval v. Aetna Lie and Cas. Ins. Co.*,
    967 F.2d 377 (10th Cir. 1992) ................................................................... 19

*Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan*,
    298 F.3d 191 (3d Cir. 2002) ........................................................................ 9

*St. Pierre v. Dyer,*
    208 F.3d 394 (2d Cir. 2000)............................................................................. 7

*Terry v. Ashcroft,*
    336 F.3d 128 (2d Cir. 2003)........................................................................... 26

*U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.,*
    949 F.2d 569 (2d Cir. 1991)........................................................................... 11

*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000)............................................................................. 26

*White v. Provident Life & Accident Ins. Co.,*
    114 F.3d 26 (4th Cir.1997)............................................................................. 10

**United States District Court**

*Aramony v. United Way of Am.,*
    No. 96 CIV. 3962 (SAS), 1998 WL 205331 (S.D.N.Y. Apr. 27, 1998) ................................... 11

*Black v. Bresee's Oneonta Dep't Store, Inc., Sec. Plan,*
    919 F.Supp. 597 (N.D.N.Y. 199) .................................................................. 7, 11

*Dillon v. Metropolitan Life Ins. Co.,*
    832 F.Supp.2d 355 (S.D.N.Y. 2011)................................................................. 10

*Eastman Kodak Co. v. Bayer Corp.,*
    369 F. Supp. 2d 473 (S.D.N.Y. 2005)............................................................ 11, 18

*Germano v. Cornell Univ.,*
    No. 03–CV–9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)........................................... 28

*Levy v. Young Adult Inst., Inc.,*
    No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705 (S.D.N.Y. Oct. 18, 2016) .............. 8-9, 11, 23

*Loughman v. Unum Provident Corp.,*
    536 F.Supp.2d 371 (S.D.N.Y. 2008)................................................................. 11

*Meyer v. William Floyd Union Free Sch. Dist.,*
    No. 07-CV-2524(JS)(ETB), 2009 WL 3327208 (E.D.N.Y. Sept. 30, 2009)........................... 27

*Schlosser v. Time Warner Cable Inc.,*
    No. 14-CV-9349, 2017 WL 2468975 (S.D.N.Y. June 7, 2017)......................................... 26

*Vuona v. Merrill Lynch & Co., Inc.,*
    919 F.Supp.2d 359 (S.D.N.Y. 2013)............................................................... 26

*Williams v. Regus Mgmt. Group, LLC,*
    836 F.Supp.2d 159 (S.D.N.Y. 2011) ........................................................ 26

**Statutes, Rules, and Regulations**

29 C.F.R. § 2520.104-23 ............................................................................ 8

29 U.S.C. § 1002 ........................................................................................ 7

29 U.S.C. § 1102 ...................................................................................... 10

29 U.S.C. § 1132 ................................................................................. 7, 10

Fed. R. Civ. P. 56 ................................................................................. 1, 6

# I.   **PRELIMINARY STATEMENT**

Plaintiff, Karen Wegmann (hereinafter "Plaintiff"), by and through her counsel, Zabell &

Associates, P.C., respectfully submits this Memorandum of Law in support of her motion, pursuant

to Fed. R. Civ. P. 56(a), seeking summary judgment on her claims against Defendants Young

Adult Institute, Inc. (hereinafter "YAI") and Trustees of the Supplemental Pension Plan for Certain

Management Employees of Young Adult Institute (hereinafter the "Board") (collectively

"Defendants").

For the reasons set forth below, there exists no triable issue of fact that Defendants violated

the Employee Retirement Income Security Act (hereinafter "ERISA"), Chapter 18, Title 29 of the

United States Code; Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as codified

Subchapter VI, Chapter 21, Title 42 of the United States Code; the New York State Human Rights

Law (hereinafter "NYSHRL"), Article 15 of the Executive Law, (Chapter 18) of the State of New

York; and Title 8 of the New York City Administrative Code Chapter 1 (hereinafter "NYCHRL").

Accordingly, judgment should be granted against Defendants on all claims.

# II.   **STATEMENT OF FACTS**

## A. **Plaintiff's Employment with Defendants**

Plaintiff began working for YAI in December 1986. *See* P 56 ¶ 10; Zabell Decl. at Ex. 5,

No. 4. When Plaintiff began her employment for YAI, the management team consisted of the

Executive Director, Associate Executive Director, Controller, and Assistant Controller. *See* P 56

¶ 11; Zabell Decl. at Ex. 1, 20:8-17. Plaintiff served as YAI's Assistant Controller from 1986

through July 1, 1992. *See* P 56 ¶ 14; Zabell Decl. at Ex. 7, p. 1.

Plaintiff was promoted to Controller at YAI on July 1, 1992. Plaintiff served as YAI's

Controller until June 30, 2002. *See* P 56 ¶ 18; Zabell Decl. at Ex. 5, No. 6; Zabell Decl. at Ex. 7,

p. 1. Prior to Plaintiff undertaking the role of Controller at YAI, Joseph Rut (hereinafter "Rut")

1

held that position. *See* P 56 ¶ 19; Zabell Decl. at Ex. 1, 145:9-10. As Controller, Plaintiff had the same responsibilities as those undertaken by Rut during his tenure as Controller. *See* P 56 ¶ 20; Zabell Decl. at Ex. 1, 145:6-10; Zabell Decl. at Ex. 4, 73:23-75:22. Two (2) of YAI's former Chief Executive Officers testified that Controller is a management-level position at YAI. *See* P 56 ¶ 21; Zabell Decl. at Ex. 3, 5:21-6:6; Zabell Decl. at Ex. 4, 77:12-15.

Plaintiff followed the same career trajectory as Rut. *See* P 56 ¶ 23; Zabell Decl. at Ex. 3, 9:15-22. Indeed, Plaintiff was promoted to Chief Financial Officer for YAI from July 1, 2006 and held that position until May 31, 2012. *See* P 56 ¶ 27; Zabell Decl. at Ex. 5, No. 8. Prior to Plaintiff undertaking the role of Chief Financial Officer, Rut held that title until his death in 2006. *See* P 56 ¶ 28; Zabell Decl. at Ex. 5, No. 10. As Chief Financial Officer, Plaintiff had the same responsibilities as Rut when he held that position. *See* P 56 ¶ 29; Zabell Decl. at Ex. 3, 10:16-20; Zabell Decl. at Ex. 4, 73:23-75:22.

Moreover, beginning, by the latest, in 2006, Plaintiff, along with the other members of YAI's management team, attended weekly executive meetings. *See* P 56 ¶ 30; Zabell Decl. at Ex. 1, 34:2-14; Zabell Decl. at Ex. 3, 49: 14-16. The other attendees at the meetings were the other management-level employees of YAI: Joel Levy (hereinafter "Levy"), Philip Levy, Stephen Freeman (hereinafter "Freeman"), and Tom Dern (hereinafter "Dern"). *See* P 56 ¶ 31; Zabell Decl. at Ex. 1, 157:18-20. Thereafter, Plaintiff held the title of Chief Business Officer at YAI from June 1, 2012 through June 30, 2014. *See* P 56 ¶ 33; Zabell Decl. at Ex. 5, No. 13. Plaintiff served as a management-level employee during her entire tenure of employment with YAI. *See* P 56 ¶ 17; Zabell Decl. at Ex. 3, 7:17-20.

Plaintiff attained fifteen (15) years of service with YAI on or around September 19, 2001, and from at least 2001 her salary was above the maximum Social Security taxable wage. *See* P 56

¶ 22; Zabell Decl. at Ex. 5, No. 10; Ex. 10; Ex. 28, p. 2 n. 2. Plaintiff resigned from YAI on or about June 14, 2014. *See* P 56 ¶ 37; Zabell Decl. at Ex. 5, No. 14. Plaintiff was the sole female on the management team at YAI throughout her twenty-seven and a half (27.5) year tenure. *See* P 56 ¶ 38; Zabell Decl. at Ex. 1, 18:18-22.

## B. The Supplemental Pension Plan for Certain Management Employees of Young Adult Institute Trust

The Supplemental Pension Plan for Certain Management Employees of Young Adult Institute (hereinafter the "SERP"), was established on July 1, 1985. *See* P 56 ¶ 39; Zabell Decl. at Ex. 5, No. 1; Zabell Decl. at Ex. 11, preamble. Article 10.1.2 of the original 1985 SERP defines eligibility as follows:

> Eligibility. Each Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the [SERP]. Entry into the [SERP] as a Plan Participant shall be on the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements.

P 56 ¶ 46; Zabell Decl. at Ex. 11, Article 10.1.2. Article 10.1.3 of the original 1985 SERP defines "participant" as an employee who satisfied the eligibility requirements of Subsection 10.1.2. P 56 ¶ 41; Zabell Decl. at Ex. 11, Article 10.1.2. Article 7.1 of the original 1985 SERP allows amendments to be made to the plan documents, provided, however, that no amendment can divest a vested participant of the plan. *See* P 56 ¶ 45; Zabell Decl. at Ex. 11, Article 7.1.

Despite having no requirement for the Board to do so, on April 1, 1993, it approved the addition of Rut, Freeman, Dern, and Enid Barbell as participants to the SERP. *See* P 56 ¶ 50; Zabell Decl. at Ex. 12, p. 2. Indeed, the minutes for the April 1, 1993 meeting of the Board state, "[t]he Committee approved that the participants in the [SERP] are the entire management team including Joel Levy, Philip Levy, Joseph Rut, Enid Barbell, Stephen Freemen and Thomas Dern. Plan

participation for Messrs. Dern and Rut will become effective upon their completion of the required 15 years of employment." P 56 ¶ 51; Zabell Decl. at Ex. 12, p. 2.

On November 24, 2008, a meeting of the Executive Compensation Committee was held. *See* P 56 ¶ 59; Zabell Decl. at Ex. 17. The agenda for the November 24, 2008 meeting of the Executive Compensation Committee contains an item stating, "Karen: Retirement." *See* Zabell Decl. at Ex. 17, p. 3. A handwritten note on the minutes for this meeting state, "Wants Plan = Supplemental Plan → Tabled." *See* P 56 ¶ 63; Zabell Decl. at Ex. 5, No. 8. Less than one (1) month later, on December 18, 2008, Article 10.1.2 of the SERP was amended modified to provide:

> Eligibility. Effective July 1, 2008, the [SERP]'s sole Participants shall be Joel M. Levy, Philip H. Levy, Stephen Freeman and Thomas Dern. The benefit being provided in respect to Joseph Rut shall be governed by the version of the [SERP] in existence on his date of death.

P 56 ¶ 64; Zabell Decl. at Ex. 18, Article 10.1.2. This amendment to the SERP was executed twenty-four (24) days after the Executive Compensation Committee acknowledged, through its agenda for the November 24, 2008 meeting, Plaintiff's request for SERP benefits. *See* P 56 ¶ 65; Zabell Decl. at Ex. 17 *with* Ex. 18.

Further, Plaintiff testified that she first saw the original 1985 SERP at some point in the 1990's; nor was a copy of any amendment ever provided to her by Defendants. *See* P 56 ¶¶ 67-69; Zabell Decl. at Ex. 1, 162:12-16; Ex. 4, 65: 17-23, 120:3-6. Similarly, Freeman testified that he was only provided a copy of the plan in approximately 2000, and that he was not required to submit a claim to begin receiving SERP benefits. *See* P 56 ¶¶ 70-72; Zabell Decl. at Ex. 3, 17:20-18:11.

## C. The Denial of Plaintiff's SERP Participation

A subdivision of YAI's Board of Trustees, the Executive Compensation Committee, reviewed the compensation requests, compensation increases, and the bonuses of YAI's executive management *See* P 56 ¶ 73; Zabell Decl. at Ex. 3, 65:12-23. Eliot Green (hereinafter "Green") has

served on the Board 1996 and is a member of the Executive Compensation Committee. *See* P 56 ¶¶ 74-75; Zabell Decl. at Ex. 20, ¶ 2. Eliot Green. *See* Zabell Decl. at Ex. 20, ¶ 2.

Green stated that Joel and Philip Levy "always made it clear to me that they never intended to have [Plaintiff] participate in the SERP because they felt that she was not a team player." P 56 ¶ 76; Zabell Decl. at Ex. 20, ¶ 5. Levy, however, testified that he never made statements to Green, and that he did intend Plaintiff to participate in the SERP. *See* P 56 ¶ 78; Zabell Decl. at Ex. 4, 102:18-22. However, Levy did testify that his brother, Philip Levy advocated for the exclusion of Plaintiff from the SERP. *See* P 56 ¶ 83; Zabell Decl. at Ex. 4, 114:8-13. Indeed, Philip Levy had multiple recorded conversation with Green in which he confessed to advocating Plaintiff's exclusion from the SERP. *See* P 56 ¶¶ 84-86; Zabell Decl. at Ex. 21, 64:3-65:10; Ex. 22, 15:20-17:4, 28:22; 31:2-5.

On March 27, 2014, Plaintiff inquired to Green as to her SERP participation *See* P 56 ¶ 87; Zabel Decl. at Ex. 1, 205:10-207:22. Thereafter, multiple emails were sent between Green and Matthew Sturiale (hereinafter "Sturiale"), that discussed Plaintiff's SERP eligibility and participation. *See* P 56 ¶¶ 87-94. Despite Plaintiff's acknowledged participation in the SERP within those emails, on July 1, 2014, at 8:40 in the morning, Green called her and denied her SERP benefits. *See* ¶ 95; Zabell Decl. at Ex. 1, 225:6-14.

On or about August 12, 2016, Plaintiff submitted a formal claim for benefits under the SERP. *See* P 56 ¶ 96; Zabell Decl. at Ex. 6. Plaintiff's claim for benefits under the SERP was denied on November 10, 2016. *See* P 56 ¶ 97; Zabell Decl. at Ex. 7. The November 10, 2016 denial came via a letter addressed to Plaintiff's counsel, and was signed by Green and justified the denial due to: 1) Plaintiff was not a management employee prior to 2006; and 2) Plaintiff was not a participant in the SERP in 2006 or anytime thereafter. *See* P 56 ¶¶ 98, 100; Zabell Decl. at Ex. 7,

p. 5, 7. Green admitted that he never reviewed the documents provided by Plaintiff in her claim for SERP benefits prior to denying the claim; that he was not familiar with the eligibility requirements of the SERP; that he did not know if Plaintiff met the SERP eligibility requirements; and that he never inquired as to whether Plaintiff met the eligibility requirements of the SERP; that Plaintiff was a member of a "team" that included Joel Levy, Philip Levy, Dern, and Freeman; and that pursuant to his reading of the original 1985 SERP, he could see no reason why Plaintiff should not be an included participant. *See* P 56 ¶¶ 102-107; Zabell Decl. at Ex. 2, 61:11-13, 62:10-14, 92:17-22, 119:6-12, 149-152.

On January 16, 2017, Plaintiff appealed the denial of her SERP benefits. *See* P 56 ¶ 110; Zabell Decl. at Ex. 8. Plaintiff's appeal of the November 16, 2016 denial of her claim for SERP benefits was itself denied on April 17, 2017. *See* P 56 ¶ 111; Zabell Decl. at Ex. 9. The reasons given for the denial of Plaintiff's appeal were that: 1) Participation in the SERP is not automatic; 2) the SERP was frozen before Plaintiff became a management employee; and 3) no prior Board or committee had put Plaintiff in the SERP. *See* P 56 ¶ 113; Zabell Decl. at Ex. 9, pp. 7-8.

Additional facts may be referenced as required throughout this Memorandum, and the Court is respectfully referred to "Plaintiff's Local Rule 56.1 Statement of Material Facts as to which there is no Genuine Issue to be Tried" (hereinafter "Pl. 56"), filed herewith, for a recitation of the material facts of this matter.[1]

## III.    <u>STANDARD OF REVIEW</u>

Fed. R. Civ. P. 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no

---

[1] Reference to the exhibits annexed to the Declaration of Saul D. Zabell (hereinafter "Zabel Decl.") (filed herewith), shall be designated as "Zabell Decl. Ex." followed by the appropriate exhibit number and, where necessary, page. Reference to Pl. 56 shall be designated as "P 56 ¶", followed by the appropriate paragraph number.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (*quoting Anderson*, 477 U.S. at 256). The non-moving party may not "rest upon ... mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000).

## IV.    ARGUMENT

### A. Plaintiff is Entitled to Summary Judgment on her ERISA Claim

#### 1. The Standard of Review Applied to Claims Under ERISA § 1132(a)(1)(B)

"Although it is a comprehensive and reticulated statute, ERISA[2] does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–09 (1989) (citation and quotation marks omitted); *see also Halo v. Yale Health Plan, Dir. of Benefits & Records Yale*

---

[2] It is undisputed that the SERP falls within ERISA's definition of an employee pension plan. *See* 29 U.S.C. § 1002(2)(A) ("any plan ... maintained by an employer ... that ... (I) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond...."); *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir.1989); *Black v. Bresee's Oneonta Dep't Store, Inc., Sec. Plan*, 919 F.Supp. 597, 602 (N.D.N.Y. 1996).

7

*Univ.*, 819 F.3d 42, 51 (2d Cir. 2016). In *Firestone*, the Supreme Court held that a general denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone*, 489 U.S. at 115; *see also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). Where a written plan document does confer upon the administrator or fiduciary the discretionary authority to determine participant eligibility, the decision of the authority will not be disturbed unless it is arbitrary and capricious. *See Murphy v. Int'l Bus. Machines Corp.*, 23 F.3d 719, 721 (2d Cir. 1994); *Reichelt v. Emhart Corp.*, 921 F.2d 425, 432 (2d Cir. 1990). In this context, arbitrary and capricious means "without reason, unsupported by substantial evidence of erroneous as a matter of law." *Roganti v. Metropolitan Life Ins. Co.*, 786 F.3d 201, *211 (2d Cir. 2015) (*citing Pagan*, 52 F.3d at 442). However, *Firestone* noted that if a benefit plans confers discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Firestone* at 115. The federal courts of appeals are divided as to the appropriate standard for reviewing a denial of benefits under so-called "top-hat" plans.[3] *See Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705, at *8 (S.D.N.Y. Oct. 18, 2016). Several circuits have concluded that, notwithstanding the discretion afforded to a plan's administrators, the *de novo* standard applies to top-hat plan reviews. *See Goldstein v. Johnson & Johnson*, 251 F.3d 433, 442–443 (3d Cir. 2001); *Craig v. The Pillsbury Non–Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006); *but see Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th

---

[3] Under ERISA, a top hat plan is characterized as one "maintained by an employer for a select group of management or highly compensated employees." 29 C.F.R. § 2520.104-23(a)(1). There is no dispute that the ERISA plan at issue herein, the SERP, is a "top-hat" plan. *See* E.C.F Dkt. No. at p. 5-6.

Cir. 2011) (rejecting *de novo* because "it is easier, not harder, to honor discretion-conferring clauses in contracts that govern the actions of non-fiduciaries").

The Second Circuit has not yet directly addressed the applicable standard of review. *See Am. Int'l Grp., Inc. Amended & Restated Exec. Severance Plan v. Guterman*, 496 Fed.Appx. 149, 151 (2d Cir. 2012) (itself noting the circuit split, but declining to decide the appropriate standard of review). In a sister-case to the one at bar, this Court directly addressed the benefit plan at issue herein: The SERP. *See Levy v. Young Adult Inst., Inc., supra.* The *Levy* Court declined to address the appropriate standard for reviewing a denial of benefits claim under a top-hat plan, but did note that it need not "decide which standard should apply because the SERP contains explicit provisions protecting vested benefits, thereby limiting the administrator's discretion ... [g]iven these provisions, YAI's denial of benefits must withstand both standards of review."[4] *Id.* at *8.

With deference to the *Levy* Court, we respectfully submit that, this Court should review Plaintiff's claim *de novo*, given the restrictions within the SERP on divesting participants of benefits. *See* P 56 ¶ 45; Zabell Decl. at Ex. 11, Article 7.1. Moreover, the 2013 SERP Amendment that grants Defendants discretionary authority to interpret the plan, nor any other version or amendment thereto, <u>do not</u> grant similar authority to determine participant eligibility. *See generally* Zabell Decl. at Ex. 11. Alternatively, should an arbitrary and capricious standard be applied, we ask the Court to weigh as a factor the inherent conflict of Defendants – who fund the SERP[5] – and who benefit by the denial of Plaintiff's claim. *See Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 199 (3d Cir. 2002) (holding

---

[4] The provision referred to in *Levy*, Article 7.1 of the original 1985 SERP (*see* P 56 ¶ 45; Zabell Decl. at Ex. 11, Article 7.1), was acknowledged in this action through prior motion practice, wherein this Court stated: "The [p]lan expressly provides that, once a participant has vested under the [p]lan, no subsequent amendment may divest the participant of benefits to which he move have been entitled had she ceased employment immediately prior to the adoption of the amendment." *See* ECF Dkt. No. 27 at p. 8 n. 2.

[5] Article 2.1 of the original 1985 SERP provides: "[YAI] shall deliver all contributions made under the [SERP] to the [Board]…"

heightened scrutiny appropriate due to the conflict that arose when employer directly funded a plan and was therefore benefitted by denying the claims.)

## 2. Plaintiff was Wrongfully Denied her Vested Participation in the SERP

ERISA § 1132(a)(1)(B) provides an avenue through which a pension plan participant or beneficiary may enforce her rights provided by a plan's terms. *See* 29 U.S.C. § 1132. Indeed, § 1132(a)(1)(B) permits a plan participant to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." *Id.* To prevail on a claim brought under § 1132(a)(1)(B), a plaintiff must show: 1) the plan is covered by ERISA; 2) the plaintiff is a participant or beneficiary of the plan; and 3) the plaintiff was wrongfully denied a benefit owed under the plan. *See Dillon v. Metropolitan Life Ins. Co.*, 832 F.Supp.2d 355, 362-63 (S.D.N.Y. 2011) (*quoting Guerrero v. FJC Sec. Servs.*, 423 Fed.Appx. 14, 16 (2d Cir. 2011). As stated above, it is undisputed that the SERP is a top-hat plan and subject to ERISA. As discussed below, the record is clear that Plaintiff was a vested participant of the SERP who has been wrongfully denied the benefits.

### a. Plaintiff's SERP Participation Vested

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1); *see also Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988) ("Congress intended that plan documents exclusively govern an employer's obligations under ERISA plans."); *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 28 (4th Cir.1997) ("ERISA demands adherence to the clear language of th[e] employee benefit plan."). To this end, "ERISA plans are construed according to federal common law." *Dillon v. Metro. Life Ins. Co.*, 832 F. Supp. 2d 355, 365 (S.D.N.Y. 2011) (*citing Fay v. Oxford Health*

*Plan*, 287 F.3d 96, 104 (2d Cir. 2001). The federal common law governing ERISA "embodies common-sense canons of contract interpretation." *Loughman v. Unum Provident Corp.*, 536 F.Supp.2d 371, 375 (S.D.N.Y. 2008). Thus, courts review ERISA plans within the context of the entire agreement, "giving terms their plain meanings." *Fay*, 287 F.3d at 104; *see also U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 571–72 (2d Cir. 1991).

Under this interpretation, top-hat plans, such as this SERP, are viewed by courts as unilateral contracts. *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705, at *8 (S.D.N.Y. Oct. 18, 2016). In other words, a top-hat plan is "a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.... [O]nce the employee performs, the offer becomes <u>irrevocable</u>, the contract is completed, and the employer is required to comply with its side of the bargain." *Eastman Kodak Co. v. Bayer Corp.*, 369 F. Supp. 2d 473, 478 (S.D.N.Y. 2005) (emphasis added), *vacated and remanded on other grounds by Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215 (2d Cir. 2006); *see also Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) (holding that employees' compliance with all prerequisites to a top-hat plan established their acceptance of its terms through performance. Thus vested, the unilateral contract became irrevocable for the employer.); *Aramony v. United Way of Am.*, No. 96 CIV. 3962 (SAS), 1998 WL 205331, at *10 (S.D.N.Y. Apr. 27, 1998) ("[A] top hat plan is a unilateral contract that an employee accepts in return for her services and is therefore breached by an employer's subsequent revocation.). Thus, where a top-hat plan contains unambiguous vesting provisions, courts will strictly enforce those provisions under principles of unilateral contract law. *See Black*, 919 F.Supp. at 602 n. 5 (enforcing vesting provision of top-at plan); *Pratt v. Petroleum Prod. Mgmt. Inc.*

*Employee Sav. Plan & Tr.*, 920 F.2d 651, 661 (10th Cir. 1990) (holding that the plaintiff's vested rights altered by retroactive amendment, without the plaintiff's consent, was ineffective.).

Here, the terms of participation in the SERP are clear and unambiguous. Article 10.1.2 of the original 1985 SERP provides, relevant part: Eligibility. Each Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the [SERP].... *See* P 56 ¶ 46; Zabell Decl. at Ex. 11, Article 10.1.2. Article 10.1.3 of the original 1985 SERP defines "Participant" as "an employee who satisfied the eligibility requirements of Subsection 10.1.2. *See* P 56 ¶ 47; Zabell Decl. at Ex. 11, Article 10.1.3. Thus, giving the terms their plain meaning, vested participation in the SERP, as it was originally contemplated, entails three (3) prerequisites: 1) a management-level position with YAI; 2) fifteen (15) years of service with YAI; and 3) having compensation not fully considered in the calculation of Social Security benefits. It is important to note that the requirement of fifteen (15) years of service is inclusive of an employee's total time with the organization. *See* P 56 ¶ 48; Zabell Decl. at Ex. 4, 121:21-122:1.

### i. Plaintiff was a Management-Level Employee

Nowhere in the 1985 version of the SERP, nor in any subsequent amended version, is the term "Management Employee" defined. In denying Plaintiff's claim for benefits, Defendants contend that Plaintiff did not become a management-level employee until 2006, when she was promoted to Chief Financial Officer.[6] *See* P 56 ¶ 100; Zabell Decl. at Ex. 7, 5. This argument is pretext. The record is clear. Plaintiff was a management-level employee throughout her entire career at YAI.

---

[6] The 2013 SERP Amendment amended Article 1.3 of the original 1985 plan, giving the Executive Compensation Committee the authority to interpret "Management Employee." *See* P 56 ¶ 66; Zabell Decl. at Ex. 19, Article 1.3. As discussed below, Defendants' definition is disingenuous, as it attempts to diminish Plaintiff's role by improperly applying the 2008 SERP Amendment – which excluded Plaintiff from eligibility – retroactively.

Plaintiff testified that upon her 1986 hire as Assistant Controller, the positions identified to be within the management team at YAI were Executive Director, Associate Executive Director, Controller, and Assistant Controller. *See* P 56 ¶¶ 10-11; Zabell Decl. at Ex. 1, 20:8-17; Ex. 5 at No. 4. Plaintiff's colleague at YAI, Freeman – who was also a management-level employee, participant in the SERP, and CEO of YAI from July 2011 to February 2012 – testified that Plaintiff had been a management-level employee at YAI since her hire. *See* P 56 ¶ 15; Zabell Decl. at Ex. 3, 34:2-11. Freeman, whose time at YAI also predates Plaintiff's, further testified that he was unaware of Plaintiff holding a position at YAI that was not management level. *See* P 56 ¶ 17; Zabell Decl. at Ex. 3, 7:17-20.

In July 1992, Plaintiff was promoted to Controller. *See* P 56 ¶ 18; Zabell Decl. at Ex. 5, No. 6; Ex. 7, 1. Two (2) former Chief Executive Officers of YAI, Freeman and Levy, confirmed that Controller is a management-level position at YAI. *See* P 56 ¶ 21; Zabell Decl. at Ex. 3, 5:21-6:6; Zabell Decl. at Ex. 4, 77:12-15. Prior to Plaintiff's ascension to this role, it was held by Joseph Rut. *See* P 56 ¶ 19; Zabell Decl. at Ex. 1, 145:9-10. As Controller, Plaintiff had the same responsibilities as those undertaken by Rut. *See* P 56 ¶ 20; Zabell Decl. at Ex. 1, 145:6-10; Ex. 4, 73:23-75:22. Plaintiff continued to follow the identical career trajectory of Rut when, in July 2006, she was promoted to YAI's Chief Financial Officer. *See* P 56 ¶ 23; Zabell Decl. at Ex. 3, 9:15-22. As with Controller, Plaintiff undertook the same responsibilities as Chief Financial Officer as those undertaken by Rut. *See* P 56 ¶¶ 28-29; Zabell Decl. at Ex. 3, 10:16-20; Ex. 4, 73:23-75:22.

Both prior to assuming the role of Chief Financial Officer and subsequent to that promotion, Plaintiff attended weekly meetings held by Levy. These meetings included the other management-level employees of YAI: Freeman, Rut, Philip Levy, and Dern. *See* P 56 ¶¶ 30-31; Zabell Decl. at Ex. 1, 34:2-14; Ex. 3, 49: 14-16. Each of these individuals were management-level

and are participants in the SERP. *See* P 56 ¶ 32; Zabell Decl. at Ex. 4, 105:22-106:5. Moreover, Levy testified that while he was Chief Executive Officer, he made it clear to YAI's Board of Trustees and other directors at YAI that Plaintiff was a member of the management team. *See* P 56 ¶ 16; Zabell Decl. at Ex. 4, 77:16-78:4. As such, Plaintiff held a management-level position at YAI from her hire until her resignation in June 2014. Even Green – who began serving on the Board in 1996, becoming Chairman of the Board in 2009, and was one of the Co-Chairs of the Executive Compensation Committee who denied Plaintiff's claim for SERP benefits – confirmed Plaintiff was a member of a "team" that included Levy, Dern, Freeman, and Philip Levy. *See* P 56 ¶ 106; Zabell Decl. at Ex. 2, 92:17-22.

Thus, Defendants' continued insistence to the contrary is disingenuous and, as discussed below, is evidence of the disparity in the treatment Defendants afforded to Plaintiff as compared to her male counterparts. Accordingly, we respectfully submit that the record documents that Plaintiff was a "Management Employee" as that term is used in Article 10.1.2 of the SERP beginning in 1986 through her resignation in 2014.[7]

## ii.    Plaintiff Completed Fifteen Years of Service with YAI

As of 2001, Plaintiff completed fifteen (15) years of service with YAI. On September 19, 2001, Plaintiff received a letter from YAI congratulating her on a dedicated fifteen (15) years of service to the organization. *See* P 56 ¶ 22; Zabell Decl. at Ex. 5, No. 10; Ex. 10. Plaintiff continued her employment with YAI for an additional thirteen (13) years after she met the threshold eligibility for the SERP. *See* P 56 ¶ 38; Zabell Decl. at Ex. 1, 18:18-22. Moreover, Levy testified that Rut's time as Assistant Controller <u>was</u> included in the calculation of time at YAI as regarded

---

[7] Article 10.2.1 of the original 1985 SERP provide, in relevant part: "Entry into the [SERP] as a Plan Participant shall be on the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements." *See* Zabell Decl. at Ex. 11, Article 10.2.1.

his eligibility for SERP participation. *See* P 56 ¶ 24; Zabell Decl. at Ex. 4, 12-122:19. Notably, in

the minutes to a Board meeting held on April 1, 1993, Rut and Dern's SERP participation was

confirmed even prior to completing the required fifteen (15) years of service. *See* P 56 ¶ 51; Zabell

Decl. at Ex. 12, p. 2. Accordingly, we respectfully submit that Plaintiff satisfied this prong of

SERP eligibility on September 19, 2001.

### iii. Plaintiff's Compensation was not Fully Considered in the Calculation of Social Security Benefits

Similarly, there can be no serious dispute that Plaintiff's compensation was excluded from

computation of Federal Social Security benefits. *See* P 56 ¶ 22; Zabell Decl. at Ex. 28, 2 n. 2.

Accordingly, Plaintiff accepted the SERP's unilateral offer by meeting all requisite terms – i.e.,

employment as a management-level employee of YAI, fifteen (15) years of service – making her

rights to benefits under the SERP vested and were irrevocable.

### b. Plaintiff was Wrongfully Denied her Vested Benefits under the SERP

Plaintiff satisfied the perquisites necessary for SERP participation upon completion of

fifteen (15) years of service with YAI on September 19, 2001. Green admitted that pursuant to his

reading of the original 1985 SERP, he could see no reason why Plaintiff should not be an included

as a plan participant. *See* P 56 ¶ 107; Zabell Decl. at Ex. 2, 119:6-12. Having met all participation

criteria by that date, her rights to SERP participation vested, with Plaintiff's entry into the plan

occurring, by the latest, July 1, 2002. *See Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d

Cir. 1995) ("Under unilateral contract principles, once the employee performs, the offer becomes

irrevocable, the contract is completed, and the employer is required to comply with its side of the

bargain.").

Article 7.1 of the original 1985 SERP provides, in relevant part:

> [N]o amendment shall have the effect of: (i) directly or indirectly divesting the interest of any [SERP] participant in any amount that he or she would have removed had he terminated his employment with [YAI] immediately prior to the effective date of such amendment ...

P 56 ¶ 45; Zabell Decl. at Ex. 11, Article 7.1. This provision bars Defendants from depriving Plaintiff of her vested SERP benefits. Despite Defendants' actual knowledge that Plaintiff satisfied the SERP eligibility requirements, her claims were repeatedly denied.

To begin, nowhere in the original 1985 SERP plan document are claim procedures delineated or outlined. *See generally* Zabell Decl. at Ex. 11. Not until the 2008 SERP Amendment is a claims procedure set forth; and only then with a vague direction that "[a] Participant ... may file claim with Administrator *See* Zabell Decl. at Ex. 19, Article 5(4)(a). Moreover, nowhere in the original 1985 SERP is participation conditioned on approval of the Board. *See generally* Zabell Decl. at Ex. 11. As noted above, it was not until August 6, 2013, that Article 1.3 of the SERP was amended, giving the Executive Compensation Committee[8] "the power and the duty to take all actions and to make all decisions necessary or proper to carry out the [SERP]." P 56 ¶ 66; Zabell Decl. at Ex. 19, Article 1.3. Nonetheless, Levy testified that once Plaintiff met the eligibility requirements for inclusion into the SERP in or around 2001, he began advocating on her behalf, which he confirmed was done at least three (3) times and done in the manner consistent with which he advocated for the SERP inclusion of Freeman, Dern, Rut, and Philip Levy. *See* P 56 ¶ 82; Zabell Decl. at Ex. 4, 27:1-11, 110:7-14.

The record also shows that Plaintiff made direct inquiries as to her vested SERP participation with the Executive Compensation Committee began as early as November 2008. *See* P 56 ¶ 63; Zabell Decl. at Ex. 17, p. 3. The agenda for the November 24, 2008 meeting of the

---

[8] The Executive Compensation Committee a subdivision of YAI's Board of Trustees that reviews compensation requests, compensation increases, and the bonuses of YAI's executive management. *See* P 56 ¶ 73; Zabell Decl. at Ex. 3, 65:12-23.

Executive Compensation Committee contains an item stating, "Karen: Retirement", next to which appears a handwritten note that states, "Wants Plan = Supplemental Plan → Tabled." *Id.* Rather that resume the discussion on Plaintiff's SERP participation, on December 18, 2008 – less than one (1) month after Plaintiff's inquiry to the Executive Compensation Committee – Defendants amended the SERP, the net effect of which stripped Plaintiff of her vested participation in the plan, thereby limiting benefits to only five (5) men. *See* P 56 ¶¶ 64-65; Zabell Decl. at Ex. 17 *with* Ex. 18. Defendants concealed this amendment, and Plaintiff was not informed of or provided with this or any other version of the SERP apart from the original 1985 document.[9] Tellingly, this is not a situation unique to Plaintiff: Freeman, YAI's former Chief Executive Officer, testified that he was only provided a copy of the 1985 SERP in or around 2000, and that he was not provided documentation regarding SERP amendments. *See* P 56 ¶ 71; Zabell Decl. at Ex. 3, 20:11-13.

When the time came for Plaintiff to arrange for her retirement from YAI,[10] she began to inquire of Green about her SERP benefits. *See* P 56 ¶ 87; Zabel Decl. at Ex. 1, 205:10-207:22. Not surprisingly, Green denies having such conversations. *See* Zabell Decl at Ex. 20, ¶ 4. His denials are irrelevant. The factual record is clear that in the Spring of 2014, Green told Plaintiff he would set the claims process in motion. *See* P 56 ¶¶ 87-88; Zabel Decl. at Ex. 1, 205:10-207:22. Indeed, on March 27, 2014, Plaintiff emailed Green regarding her retirement income calculation. *See* P 56 ¶ 89; Zabell Decl. at Ex. 23. Attached to the March 27, 2014 email was a calculation showing that Plaintiff's benefits under the SERP was 30.7% of her 2012-13 compensation. *Id.* On April 14, 2014, Green forwarded the March 27, 2014 email from Plaintiff to Sturiale, who was, at the time,

---

[9] Plaintiff confirmed that she first saw the original 1985 SERP at some point in the 1990's. *See* P 56 ¶ 67; Zabell Decl. at Ex. 1, 162:12-16. Levy admitted that the original 1985 SERP documents were never provided to Plaintiff, and that the amendments to the plan were not discussed with or provided to Plaintiff. *See* P 56 ¶¶ 68-69; Zabell Decl. at Ex. 4, 65:17-23, 120:3-6.
[10] Plaintiff parted from YAI on or around June 14, 2014, after twenty-seven and a half (27.5) years with the organization. *See* P 56 ¶ 37; Zabell Decl. at Ex. 5, No. 14.

YAI's interim Chief Executive Officer. *See* P 56 ¶ 91; *See* Zabell Decl. at Ex. 24. On May 1, 2014, Sturiale responded to Green's April 14, 2014 email, and stated: "As discussed, [Plaintiff] is looking for a level of contribution to her pension to get her to that 50%. This will require another level of analysis based upon her thinking that she is entitled to the SERP as an executive." *Id.* On May 6, 2014, Sturiale sent another email to Eliot Green and stated, "BEING TREATED LIKE OTHER EXECS: She reviewed with me on 4/25 what she is looking for in terms of an additional pension contribution ... Do you want to research this with Mercer or should I engage Mike Connors to look at what would have been reasonable contribution to the SERP for the period of either 2006-2011 (her perspective) or 2009-2011 to see where it would fall?" *See* P 56 ¶ 93; Zabell Decl at Ex. 25, p. 2. On May 7, 2014, Sturiale sent yet another email to Green, and stated: "[D]id a little research, Karen was promoted to the position of CFO on 7/1/2006 as her paperwork reflects. Therefore, we'll be looking at what type of contribution would have been made for her for the period 7/1/2006 – 6/30/2011, Am I correct – a five year contribution?" *See* P 56 ¶ 94; Zabell Decl at Ex. 25, p. 1.

However, on July 1, 2014, at 8:40 in the morning, Green called Plaintiff and denied her SERP benefits. *See* P 56 ¶ 95; Zabell Decl. at Ex. 1, 225:6-14. This initial denial was improper. As discussed above, having met all eligibility requirements as of September 19, 2001, Plaintiff had a vested right to participate in SERP benefits. By that date, Plaintiff's entitlement to participate in the plan had become irrevocable and could not be denied by Defendants. *See Eastman Kodak Co.*, 369 F. Supp. at 478 ("[O]nce the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain."). The denial of Plaintiff's claim was wrong. As set forth below, the circumstances of this initial and subsequent denials more than satisfies the arbitrary and capricious standard.

### c. The Denial of Plaintiff's Claim for Benefits was Arbitrary and Capricious

A denial of a claim is arbitrary and capricious if "there has been a clear error of judgment," ... that is, if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal citation omitted). Substantial evidence, in turn, "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] ... requires more than a scintilla but less than a preponderance." *Id. (citing Sandoval v. Aetna Lie and Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992)).*

Here, there is no evidence suggesting that the denial of Plaintiff's claim for vested benefits was reasonable. Rather, the record is replete with evidence of Defendants' improper attempts to deny Plaintiff what is due and owed. To begin, the circumstances under which the SERP was amended, and the content of those amendments, is damning. As discussed above, an agenda from a meeting of the Executive Compensation Committee held on November 24, 2008, proves Plaintiff inquired about her SERP benefits. *See* P 56 ¶ 95; Zabell Decl. at Ex. 5, No. 8. At that time, Plaintiff's request was tabled. *Id*. However, on December 18, 2008, just twenty-four (24) days later, the SERP was amended to retroactively limit plan eligibility to Levy, Freeman, Dern, Rut, and Philip Levy. *See* P 56 ¶¶ 64-65; Zabell Decl. at Ex. 18, Article 10.1.2. This amendment was added to the SERP to divest Plaintiff from the benefits enjoyed by the management-level employees of YAI.

Moreover, Green's involvement in the multiple denials cannot be overlooked. Prior to Plaintiff requesting her SERP benefits be calculated, the decision to deny her benefits was seemingly predetermined by Green and Defendants. For example, Green stated:

> In 2008 and 2009 Joel Levy and Phil Levy represented to me that [Plaintiff] had asked them about participating in the SERP. Messrs. Levy and Levy told [Plaintiff]

that YAI would compensate her in a reasonable way through salary, bonus, and other benefits, but she was never going to be a part of the SERP, which was designed for employees who had founded YAI, had been with the organization for many years, and were committed to ensuring that people with disabilities were treated fairly and integrated into society. Messrs. Levy and Levy told [Plaintiff] that she did not exhibit this kind of commitment, and therefore that she would never be a participant in the SERP.[11]

See P 56 ¶ 77; Zabell Decl. at Ex. 20, ¶ 6. Levy denied that he never made those statements to

Green. See P 56 ¶ 78; Zabell Decl. at Ex. 4, 102:18-22. Indeed, in a recorded and transcribed

meeting between Green and Philip Levy that occurred on March 10, 2009 it was stated, as follows:

> Philip Levy: The supplemental plan rightly so, I guess it was the finance committee, I'm not sure who, but the exec comp committee, one of those committees rightfully so decided that we should not put anyone else into this plan because it's too much of a potential liability, you know, especially for now until we have a better sense.
> Joel had promised Karen she was going to be in that plan. I told Karen did he confirm that with you? What I said to her was [UNINTEL PHRASE]. This was when he was already -- he was trying to buy her off and he did buy her off because she believed him.
>
> Eliot Green: Is she pissed off?
>
> Philip Levy: Now she's pissed at him, yeah. She's pissed at him. Anyone who was close to him is pissed at him because he lied, you know...
> So what happened was I told Karen that she was not going to be in that plan. I said to her, if you want, I'll bring it to the committee but no. She said she's like me to. I brought it to the committee. Off the record between you and me they asked for my recommendation. I said my recommendation is not to.

See P 56 ¶ 84; Zabell Decl. at Ex. 21, 64:3-65:10. In another transcribed meeting between Green

and Phil Levy, it was stated:

> Philip Levy: [There are] a number of people, as you know, who have been in the SERP; Joel, myself, Steve, Tom, and Joe [Rut], and Enid Barbel (phonetic), Joel's assistant. (Inaudible).
> Anyway, Enid is gone. Alive, but gone for the plan. Joe is deceased...
> So really you have four people who are left ... The general feeling is that the SERP should be used in a very, very careful way, and only

---

[11] Nothing in the SERP identifies these criteria. See generally Zabell Decl. Ex. 11.

<div style="margin-left: 2em;">

for, you know, one or two people. And, you know, and so they made a determination a while back that they weren't going to put Karen in.

Eliot Green: Okay. Now when you say "they," meaning?

Philip Levy: The – the leadership of the board, the finance committee. This was discussed in a lot of places ... Joel had promised Karen, without the authority, that he was...

And, you know, she came to me and she said, you know – I said, look, he wants – you know, I can't – I can't do it. I said the board doesn't want anyone else. You know, the exposure on something like that for you would be a fortune....

</div>

*See* P 56 ¶ 85; Zabell Decl. at Ex. 22, 15:20- 17:4 This was the backdrop to the July 1, 2014 denial of benefits. We note that Freeman testified that he was not required to apply in order to participate in or receive his SERP benefits. *See* P 56 ¶ 72; Zabell Decl. at Ex. 3, 38:24-39:2.

Thereafter, and coincident with the filing of the Amended Complaint, on April 14, 2016, an oral argument was held before this Court to discuss, *inter alia*, whether Plaintiff had exhausted her available administrative remedies. *See generally* Zabel Decl. Ex. 26. During this argument, the Court asked defense counsel that, if Plaintiff filed a claim for benefits, "[i]s there a chance that [Plaintiff] is going to be put into the plan?", to which defense counsel replied, "[n]o." *See* P 56 ¶ 6; Zabell Decl. at Ex. 26:16-18. In that same argument, defense counsel also stated that Green did not have authority to speak for the SERP. *See* P 56 ¶ 99; Zabell Decl. at Ex. 26, 20:5-6. Thereafter, as part of this Court's April 5, 2016 Order [E.C.F. Dkt. No. 43], Plaintiff submitted a formal, written claim for benefits under the SERP on August 12, 2016. *See* P 56 ¶ 96; Zabell Decl. at Ex. 6.

Not surprisingly, on November 10, 2016, Plaintiff's claim for benefits under the SERP was again denied. *See* P 56 ¶ 97; Zabell Decl. at Ex. 7. What is surprising, however, is that contrary to the earlier, in-court statement of defense counsel, the November 10, 2016 denial was signed by Green and Lewis Lindenberg, each in their capacity as Co-Chairs of the Board and Executive

Compensation Committee. *See* P 56 ¶ 98; Zabell Decl. at Ex. 7. Green admitted that he did not review the twenty (20) documents upon which the decision to deny Plaintiff's claim for benefits was based. *See* P 56 ¶ 102; Zabell Decl. at Ex. 2, 149-152. Green further admitted that he was not familiar with the eligibility requirements of the SERP, that he did not know if Plaintiff met those requirements, and that he made no inquiry as to whether Plaintiff was eligible before issuing the denial. *See* P 56 ¶ 103; Zabell Decl. at Ex. 2, 61:11-13.

The November 10 letter purports to justify the denial of Plaintiff's claim on the following grounds: 1) Defendants' contention that Plaintiff was not a management employee prior to 2006; and 2) Defendants' contention that Plaintiff was not a Participant in the SERP in 2006 or any time thereafter. *See* P 56 ¶ 100; Zabell Decl. at Ex. 7, p. 5. Neither reason is substantiated in fact, but rather a biased interpretation of fact. As for the first reason, Defendants obscure the management-level work Plaintiff had undertaken at YAI for the two (2) decades prior to her becoming Chief Executive Officer. This was accomplished by redefining YAI's organizational application of "Management Employee" to apply only to "C-Suite" employees and YAI's Executive Directors. *See* Zabell Decl. at Ex. 7, p. 5. The definition is at odds with the indisputable fact – addressed above – that both the management and Board at YAI knew that Plaintiff was management-level since her hire in 1986. Even if, *arguendo*, Plaintiff did not reach a management-level position until attaining Chief Financial Officer on July 1, 2006, her benefits still would have been vested for more than two (2) years prior to Defendants' attempt to divest Plaintiff from plan participation with the 2008 SERP Amendment.[12] Accordingly, Defendants' first reason in denying Plaintiff's claim lacks legitimacy and is unsupported by admissible evidence.

---

[12] The 2008 SERP Amendment revised Article 10.1.2 of the original 1985 SERP by limiting plan eligibility to Joel Levy, Philip Levy, Stephen Freeman, Thomas Dern, and Joseph Rut. *See* P 56 ¶ 64; Zabell Decl. at Ex. 18, Article 10.1.2.

The second reason in the November 10, 2016 denial is itself four (4) self-serving points none of which are supported by reason or evidence. First, Defendants state that the Board "had not approved the addition of any participant to the SERP after 1993." *See* Zabell Decl. at Ex. 7, p. 5. Nowhere within the SERP is participation contingent of Board approval. Second, Defendants reasoned that Plaintiff would not have been eligible to defer tax liability on benefits accrued under the SERP, nor would she have been "grandfathered from the intermediate sanctions rules" of the IRS. *See* Zabell Decl. at Ex. 7, p. 6. Whether benefits accrued under the SERP were taxable is immaterial to the Plaintiff's actual participation in the SERP. Moreover, the non-eligibility of tax deferments was contemplated as a possibility in the original 1985 plan documents and cannot be used as a vehicle of denial. Indeed, Article 1.2 of the SERP states, in relevant part, that: "Notwithstanding anything to the contrary contained in this agreement ... no assurance or guarantee is intended (or may be inferred from the establishment of the [SERP]) that participants will not be subject to income tax on benefits until they are received...." *See* Zabell Decl. at Ex. 11, Article 1.2. Further, the bully-tactic of citing intermediate sanctions was raised in *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705 (S.D.N.Y. Oct. 18, 2016). The *Levy* court, incorporating Judge Netburn's "Report and Recommendation", held Defendants could not rely on the Internal Revenue Code as a defense in not honoring its obligations to Levy under the SERP. *See* Zabell Decl. at Ex. 27, 10-13. Third, Defendants cite a 2005 Board resolution limiting benefit accruals as a reason for why she was not a SERP participant. *See* P 56 ¶¶ 52-55; Zabell Decl. at Ex. 13. It is uncertain how this Board resolution is *ipso facto* consideration for the denial of benefits, or even if and how it evidences the same. We respectfully submit that it does not. Rather, it is Defendants' attempt to paper-over their decision in an effort to give it some

semblance of legitimacy. Moreover, the Board resolution presented by Defendants did not "freeze" the SERP, but reduced and capped the SERP benefits. *Id.*

Finally, Defendants considered that a 2008 unrealized, hypothetical "different supplement plan for [Plaintiff], separate from the SERP" as confirmation that Plaintiff was not a SERP participant. *See* Zabell Decl. at Ex. 7. Defendants cannot – even in the realm of the imaginary – have denied Plaintiff benefits that were properly and fully vested by 2008 on the basis of a potential plan discussed but never implemented. Further, the rationale outlined above was not the sole criteria used by Green to deny Plaintiff's claim. Green later testified that he "determined that while [Plaintiff] may be qualified to be in the SERP, for a variety of reasons, she should not be in the SERP [because] she was not a team player, that she was focused on herself, that she was not necessarily an individual who looked out for the interests of the folks who the agency served, and she was not someone who exhibited the same concern for the agency as other participants." *See* P 56 ¶ 108; Zabell Decl. at Ex. 2, 196:2-11. These are not valid reasons for a denial.

On January 16, 2017, Plaintiff appealed the denial of her SERP benefits. *See* P 56 ¶ 110; Zabell Decl. at Ex. 8. Plaintiff's appeal was denied on April 17, 2017. *See* P 56 ¶ 111; Zabell Decl. at Ex. 9. The April 17 denial letter cited three (3) reasons why Plaintiff's claims were again reflected. The first reasoned that participation in the SERP is not automatic. *See* P 56 ¶ 113; Zabell Decl. at Ex. 9, 7-8. As stated above, nowhere in the SERP does plan language make approval by any authority a condition to the receipt of benefits. Rather, the <u>only</u> requirements for participation are the three (3) prerequisites outlined and discussed *supra*. Thus, this reason for denial is not supported by evidence and must be viewed as a red-herring.

The second reason simply restates Defendants' earlier position that the SERP was somehow "frozen" before Plaintiff became a management employee. Zabell Decl. at Ex. 9, 7. As

stated above, this is a disingenuous interpretation of a 2005 Board resolution that, amongst other items, agreed to adopt a reduction and cap on the benefit calculation for the SERP. *See* P 56 ¶¶ 52-55; 113; Zabell Decl. at Exs. 13 and 14. Thus, this reason is inconsistent with the factual record.

Third, the January 16 letter states the Board's failure to take affirmative action by putting Plaintiff in the SERP in the past – which, again, is not required for participation – is no basis to question that failure now. Zabell Decl. at Ex. 9, 8. In reaching this misplaced conclusion, Defendants then list several pieces of evidence that they rejected (all of which favorable to Plaintiff) as support for the circuitous logic. *Id.* Rather, it would seem from the recorded conversations between Green and Phil Levy, Defendants took affirmative action to restrict Plaintiff from the SERP because she was an "angry woman." *See* P 56 ¶ 86; Zabell Decl. at Ex. 22, 28:22; 31:2-5.

Accordingly, Plaintiff was improperly denied her vested participation in the SERP, a top-hat plan subject to the provisions of ERISA. The denial of said participation – and, accordingly, the benefits arising thereunder – was not only wrong as a matter of law; Defendants' rational in justifying the continued denial is unsupported by substantial evidence and is inconsistent with established unilateral contract theory. The denial was also made by Green, a biased plan administrator. There exists an inherent conflict in denying Plaintiff her entitlement. If anything, Defendants' proffered reasoning is a continuation of their behavior referenced by the *Levy* court: that "YAI's hindsight regret about the reasonableness of its compensation does not justify reneging on its contract." *Levy, supra* at *8.

## B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER CLAIMS BROUGHT PURSUANT TO TITLE VII, NYSHRL, NYCHRL

### 1. The Standard of Review for Claims Under Title VII, NYSHRL, and NYCHRL

Discrimination claims under Title VII, NYSHRL, and NYCHRL are analyzed under the same analytical rubric.[13] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998). Under this familiar framework, a plaintiff asserting a claim of employment discrimination must first establish a *prima facie* case by establishing that: 1) she belonged to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See McDonnell Douglas*, 411 U.S. at 802; *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013). If the plaintiff satisfies these requirements, the burden then shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. *McDonnell Douglas* at 802. Once the defendant demonstrates a non-discriminatory reason for its decision, the burden again shifts to the plaintiff, who must show that the defendant's proffered reason is a mere pretext for discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811 (2003); *Schlosser v. Time Warner Cable Inc.*, No. 14-CV-9349, 2017 WL 2468975, at *3 (S.D.N.Y. June 7, 2017). There is no dispute that Plaintiff is a woman and, therefore, in a protected class and thus satisfies the first element of *McDonnell Douglas*. As set

---

[13] Although claims under the NYCHRL must be analyzed and construed more liberally than claims under its federal and state counterparts, *see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), courts continue to apply the three-step burden-shifting framework articulated in *McDonnell* Douglass. *See Williams v. Regus Mgmt. Group, LLC*, 836 F.Supp.2d 159, 171 (S.D.N.Y. 2011).

forth below, Plaintiff satisfies the remaining burden and establishes a *prima facie* case of gender discrimination that cannot be rebutted by any justification by Defendants.

### a. Plaintiff was Qualified and Competent in Her Positions at YAI

Plaintiff was qualified and competent in the entirety of her career at YAI. In her nearly three (3) decade career at YAI, Plaintiff held a five (5) management-level positions of increasing responsibility. *See* P 56 ¶¶ 11-34. Although Green appears to have a disagreeable view of Plaintiff, (*see* P 56 ¶ 108; Zabell Decl. at Ex. 2, 196:2-11), he was never Plaintiff's supervisor. Levy and Freeman - two (2) of Plaintiff's former supervisors – testified that Plaintiff was excellent throughout her career with YAI. *See* P 56 ¶¶ 35-36; Zabell Decl. at Ex. 3, 15:5-7; Ex. 4, 22:11-13.

Accordingly, we respectfully submit that there can be no serious dispute that Plaintiff was qualified and competent for her position.

### b. Plaintiff Suffered an Adverse Employment Action

Generally, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Raspardo v. Carlone*, 770 F.3d 97, 125–26 (2d Cir. 2014) (*quoting Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Examples of actionable adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less important title, <u>a material loss of benefits</u>, or significantly reduced responsibilities. *See id.*; *see also Meyer v. William Floyd Union Free Sch. Dist.*, No. 07-CV-2524(JS)(ETB), 2009 WL 3327208, at *5 (E.D.N.Y. Sept. 30, 2009) ("[T]he denial of benefits can constitute adverse employment actions"); *Germano v. Cornell Univ.*, No. 03–CV–9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) (noting that denial of benefits can be an adverse employment action).

Here, there can be no dispute that the repeated denial of Plaintiff's vested SERP benefits is an adverse action. Accordingly, we respectfully submit that Plaintiff satisfies the third *McDonnell Douglass* element.

### c. Inference of Discriminatory Intent

A showing of disparate treatment is "a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (*citing Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)). Raising such an inference requires a plaintiff to show that the employer treated her "less favorably than a similarly situated employee" outside of the protected group. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." (internal quotation marks omitted)).

Here, the record establishes that Plaintiff was treated differently than her male counterparts; i.e., the male management-level employees of YAI. To begin, the similarity – and disparity – is best evidenced in comparing Plaintiff to Rut. Plaintiff followed the identical career trajectory of Rut for more than two (2) decades. *See* P 56 ¶ 23; Zabell Decl. at Ex. 3, 9:15-22. She held the same positions and responsibilities as Rut. She attended the same management-level meetings as Rut. *See* P 56 ¶¶ 19, 28-29. However, the treatment of Plaintiff by Defendants regarding SERP participation was substantially different than that afforded Rut. Although their careers at YAI were similar in all material respects, Rut received benefits under the SERP; Plaintiff did not. *See* P 56 ¶¶ 51, 64; Zabell Decl. at Ex. 12, 2; Ex. 18, Article 10.1.2. In fact, Rut's SERP participation was acknowledged prior to his attaining fifteen (15) years of service at YAI. *Id.* Rut's premature SERP

eligibility was also granted to Dern, another male employee who, although having different positions than Plaintiff or Rut, was nonetheless another management-level employee. *Id.* And, as stated above, Freeman was not required to file a claim for benefits to receive them; Plaintiff orally claimed SERP benefits with Green, who denied her claim, and was then put through a claims procedure to which none of her male colleague had to submit. *See* P 56 ¶ 72; Zabell Decl. at Ex. 3, 38:24-39:2.

The very amendment to the SERP that attempts to unlawfully divest Plaintiff of benefits – i.e., the 2008 revision to Article 10.1.2 – is discriminatory: The amendment grants SERP benefits to the five (5) male management-employees at YAI, Levy, Freeman, Dern, Rut, and Philip Levy, while simultaneously shutting out the sole female management-level employee at the organization.[14] *See* P 56 ¶ 64; Zabell Decl. at Ex. 18, Article 10.1.2. Even the circumstances surrounding the 2008 amendment give rise to an inference of discrimination. As stated above, the amendment came less than one (1) month after Plaintiff inquired of the Executive Compensation Committee regarding SERP benefits. *See* P 56 ¶ 65. Levy testified that his brother, Phil Levy, was advocating that she not be included in the SERP. *See* P 56 ¶ 83; Zabell Decl. at Ex. 4, 114:8-13. Indeed, in a recorded meeting between Green and Phil Levy, it was stated:

> Philip Levy: The general feeling is that the SERP should be used in a very, very careful way, and only for, you know, one or two people. And, you know, and so they made a determination a while back that they weren't going to put Karen in.
>
> Eliot Green: Okay. Now when you say "they," meaning?
> Philip Levy: The – the leadership of the board, the finance committee. This was discussed in a lot of places ....

---

[14] We note that the only other woman participating in the SERP, Enid Barbell, was also completely removed from participation in the 2008 Amendment. *See* P 56 ¶ 64; Zabell Decl. at Ex. 18, Article 10.1.2. Defendants now claim that Ms. Barbell was incorrectly included into the SERP. *See* Zabell Decl. at Ex. 7, 6.

> She's an angry woman ... And the only reason I shared this with you is because it's important you understand why I make certain decisions, why I would never put someone like her in a SERP.

*See* P 56 ¶¶ 85-86; Zabell Decl. at Ex. 22, 15:20- 17:4, 28:22; 31:2-5 (emphasis added). We respectfully submit that this is not an isolated statement. Rather, the above conversation is evidence of Defendants' intention to subject Plaintiff to treatment different from that for male management-level employees. Green admitted that Plaintiff did not receive the same treatment as the other executives at YAI with respect to her retirement *See* P 56 ¶ 109; Zabell Decl. at Ex. 2, 161:18-22.

Moreover, Defendants cannot substantiate their reasons to exclude Plaintiff from the SERP. As discussed above, there is no validity to the justifications used by Defendant in either the November 10, 2017 denial letter or January 1, 2017 rejection of Plaintiff's appeal. Similarly, there can be justification in requiring Plaintiff file a claim for her benefits while ignoring this procedure for male management employees; indeed, the mere act may have even allowed Defendants time to paper-over their discriminatory conduct. There was no justification in amending the SERP in 2008 to exclude its sole female participant from benefits. There is no justification now in belittling Plaintiff's contribution and rank at YAI to withhold what her similarly situated colleagues have received.

The record is clear: by attempting to divest an "angry woman" from enjoying in the same earned benefits that were held for the exclusive use of her male colleagues and contemporaries, Defendants discriminated Plaintiff because of her gender. Accordingly, Plaintiff meets her *McDonnell Douglas* burden.

## V. **CONCLUSION**

Plaintiff has vested participation rights in the SERP. Defendants have wrongfully denied Plaintiff from those rights for reasons that are wholly unsupported by fact or reason. Rather,

Defendants intentionally withheld SERP participation, from Plaintiff to the exclusion of her similarly situated male counterparts. Based on the foregoing, we respectfully request that Plaintiff's motion for summary judgment be granted in its entirety, together with such other and further relief as this Court deems just, proper, and equitable.

Dated: December 18, 2017
      Bohemia, New York           Respectfully submitted,

**ZABELL & ASSOCIATES, P.C.**
*Attorneys for Plaintiff Karen Wegmann*

By: _____
      Saul D. Zabell
      1 Corporate Drive, Suite 103
      Bohemia, New York 11716
      T: (631) 589-7242
      F: (631) 563-7475
      SZabell@laborlawsny.com