UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KAREN WEGMANN,

                                  Plaintiff,

        -against-                                    Case No.: 15-CV-03815 (KPF)

YOUNG ADULT INSTITUTE, INC. and TRUSTEES
OF THE SUPPLEMENTAL PENSION PLAN FOR
CERTAIN MANAGEMENT EMPLOYEES OF
YOUNG ADULT INSTITUTE,

                                  Defendants.
-------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


**ZABELL & ASSOCIATES, P.C.**
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel (631) 589-7242
Fax (631) 563-7475

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.   PRELIMINARY STATEMENT .................................................................. 1

II.  STATEMENT OF FACTS ........................................................................... 1

    A. Plaintiff's Employment at YAI ...................................................... 1

    B. The SERP ........................................................................................ 2

    C. The Denial of Plaintiff's SERP Participation ............................. 4

III. STANDARD OF REVIEW ......................................................................... 6

IV.  ARGUMENT ............................................................................................... 7

    A. Plaintiff's Claims are Timely ......................................................... 7

        1. Plaintiff's Discrimination Claims are Timely ......................... 7

        2. Plaintiff's ERISA Claim is Timely ........................................... 9

    B. Plaintiff is Entitled to Summary Judgment on her ERISA Claim .......................... 10

        1. The Standard of Review Applied to Claims under ERISA § 1132(a)(1)(B) ...... 10

        2. The Wrongful Denial of Plaintiff's Benefits Claim was Arbitrary and Capricious .................................. 12

            i. Plaintiff was a "Management Employee" ......................... 14

            ii. SERP Participation is Automatic upon Meeting Vesting Requirements ..... 15

            iii. Defendants' Remaining Argument is Without Merit ................... 17

    C. Plaintiff is Entitled to Summary Judgment on her Discrimination Claims ............ 20

        1. Plaintiff Suffered an Adverse Employment Action ................................. 21

        2. An Inference of Discriminatory Intent Exists ...................................... 21

        3. Defendants' Proffered Non-Discriminatory Reasons Fail .................... 24

V.   CONCLUSION ........................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

**United States Supreme Court**

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989)......................................................................................................... 10

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)......................................................................................................... 20

**United States Court of Appeals**

*Abdu-Brisson v. Delta Air Lines, Inc.,*
    239 F.3d 456 (2d Cir. 2001)............................................................................................ 20

*Austin v. Ford Models, Inc.,*
    149 F.3d 148 (2d Cir. 1998)............................................................................................ 20

*Denton v. First Nat'l Bank of Waco, Texas,*
    765 F2d 1295 (5th Cir. 1985) ......................................................................................... 11

*Fay v. Oxford Health Plan,*
    287 F.3d 96 (2d Cir. 2001)...................................................................................... 12, 16

*Galabya v. N.Y.C. Bd. of Educ.,*
    202 F.3d 636 (2d Cir. 2000)............................................................................................ 21

*Graham v. Long Island R.R.,*
    230 F.3d 34 (2d Cir. 2000).............................................................................................. 22

*Guerrero v. FJC Sec. Servs.,*
    423 Fed.Appx. 14 (2d Cir. 2011).................................................................................... 12

*Kemmerer v. ICI Ams. Inc.,*
    70 F.3d 281 (3d Cir. 1995).............................................................................................. 13

*Kennedy v. Empire Blue Cross & Blue Shield,*
    989 F.2d 588 (2d Cir. 1993)............................................................................................ 11

*Mandell v. Cnty. of Suffolk,*
    316 F.3d 368 (2d Cir. 2003)............................................................................................ 22

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
    715 F.3d 102 (2d Cir. 2013)............................................................................................ 20

*Moore v. Metro. Life Ins. Co.,*
856 F.2d 488 (2d Cir.1988)................................................................. 12

*Murphy v. Int'l Bus. Machines Corp.,*
23 F.3d 719 (2d Cir. 1994)................................................................. 10

*Norville v. Staten Island Univ. Hosp.,*
196 F.3d 89 (2d Cir. 1999)................................................................. 20

*Pagan v. NYNEX Pension Plan,*
52 F.3d 438 (2d Cir. 1995)................................................................. 10

*Raspardo v. Carlone,*
770 F.3d 97 (2d Cir. 2014)............................................................ 21, 22

*Reichelt v. Emhart Corp.,*
921 F.2d 425 (2d Cir. 1990)............................................................... 10

*Roganti v. Metropolitan Life Ins. Co.,*
786 F.3d 201 (2d Cir. 2015)............................................................... 10

*Ruiz v. Cnty. of Rockland,*
609 F.3d 486 (2d Cir. 2010)............................................................... 22

*Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan,*
298 F.3d 191 (3d Cir. 2002)............................................................... 11

*Terry v. Ashcroft,*
336 F.3d 128 (2d Cir. 2003)............................................................... 20

*U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.,*
949 F.2d 569 (2d Cir. 1991).......................................................... 12, 16

*Weinstock v. Columbia Univ.,*
224 F.3d 33 (2d Cir. 2000)................................................................. 21

*White v. Provident Life & Accident Ins. Co.,*
114 F.3d 26 (4th Cir.1997) ................................................................ 12

**United States District Court**

*Aramony v. United Way of Am.,*
No. 96-CV-3962 (SAS), 1998 WL 205331 (S.D.N.Y. Apr. 27, 1998) ................... 13

*Black v. Bresee's Oneonta Dep't Store, Inc. Sec. Plan,*
919 F. Supp. 597 (N.D.N.Y. 1996) ..................................................... 13

iii

*Dillon v. Metropolitan Life Ins. Co.*,
    832 F.Supp.2d 355 (S.D.N.Y. 2011)...................................................................................... 12

*Eastman Kodak Co. v. Bayer Corp.*,
    369 F. Supp. 2d 473 (S.D.N.Y. 2005)................................................................................... 13

*Germano v. Cornell Univ.*,
    No. 03–CV–9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) .......................................... 21

*Johnson v. DCM Erectors, Inc.*,
    No. 15-CV-5415 (PKC), 2016 WL 407293 (S.D.N.Y. Feb. 2, 2016) ........................................ 7

*Levy v. Young Adult Inst., Inc.*,
    No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705 (S.D.N.Y. Oct. 18, 2016).......... 10, 11, 12, 24

*Loughman v. Unum Provident Corp.*,
    536 F.Supp.2d 371 (S.D.N.Y. 2008)...................................................................................... 12

*Meyer v. William Floyd Union Free Sch. Dist.*,
    No. 07-CV-2524(JS)(ETB), 2009 WL 3327208 (E.D.N.Y. Sept. 30, 2009)............................ 21

*Percy v. New York (Hudson Valley DDSO)*,
    264 F. Supp. 3d 574 (S.D.N.Y. 2017)..................................................................................... 7

*Schlosser v. Time Warner Cable Inc.*,
    No. 14-CV-9349, 2017 WL 2468975 (S.D.N.Y. June 7, 2017) ............................................... 21

*Vuona v. Merrill Lynch & Co., Inc.*,
    919 F.Supp.2d 359 (S.D.N.Y. 2013)...................................................................................... 20

*Williams v. Regus Mgmt. Group, LLC*,
    836 F.Supp.2d 159 (S.D.N.Y. 2011)...................................................................................... 20

## STATUTES, RULES, AND REGULATIONS

29 U.S.C. § 1102.......................................................................................................................... 12

42 U.S.C. § 2000e................................................................................................................... 7, 8

Federal Rule of Civil Procedure 56(a) ............................................................................................ 7

# I.   **PRELIMINARY STATEMENT**

Plaintiff, Karen Wegmann ("Plaintiff"), by and through her counsel, Zabell & Associates, P.C., respectfully submits this Memorandum of Law in opposition to the motion for summary judgment filed by Defendants, Young Adult Institute, Inc. ("YAI") and Trustees of the Supplemental Pension Plan for Certain Management Employees of Young Adult Institute (the "Board) (collectively "Defendants").

Defendants ignore certain portions of the record that undermine their argument. The Supplemental Pension Plan and Trust for Certain Management Employees of Young Adult Institute (the "SERP") is a binding contract between Plaintiff and Defendants. This contract became irrevocable in 2001. Defendants breached under circumstances of impermissible gender discrimination. Defendants do not discuss the fact that the SERP language does not contemplate a vote of the Board as a prerequisite to plan participation. Nothing in the plan language, or any amendment thereto, empowers Defendants to deprive Plaintiff of her contractually vested rights. Importantly, Defendants do not address the multiple admissions of Eliot Green, the Board member involved in every denial of Plaintiff's claim for benefits. Instead, Defendants disingenuously parse the language of the SERP to justify a procedural obstacle that has no legal relevance to the matters herein.

For the reasons discussed more fully below, Defendants' motion must be denied.

# II.   **STATEMENT OF FACTS**

## A. **Plaintiff's Employment at YAI**

Plaintiff began working as YAI's Assistant Controller on December 15, 1986. *See* "Plaintiff's Counter-Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment" ("SOF") ¶ 118. Upon Plaintiff's hire in 1986, Assistant Controller was

1

identified to be within the management-team at YAI. SOF ¶ 248, 250. Throughout the entirety of her nearly three (3) decades with YAI, Plaintiff was part of a "management-team" that included the other executives at the organization: Joel Levy, Philip Levy, Stephen Freeman, Thomas Dern, and Joseph Rut (collectively the "management-team"). SOF ¶¶ 178, 247-48, 261, 298. With the management-team, Plaintiff attended weekly executive meetings. SOF ¶ 259. Moreover, Joel Levy confirmed that while he was Chief Executive Officer ("CEO"), he made it clear to the Board and management of YAI that Plaintiff was a member of the management-team. SOF ¶ 249.

Plaintiff then followed the identical career trajectory – with the same job responsibilities – as Joseph Rut. SOF ¶ 254. Plaintiff was first promoted and replaced Mr. Rut as Controller on July 1, 1992. SOF ¶¶ 120, 251. Two (2) of YAI's former CEO's testified that Controller is a management-level position at YAI. SOF ¶ 253. Beginning July 1, 2003 – and while maintaining her duties as Controller – Plaintiff held the additional role of Director of Finance. SOF ¶ 122. On July 1, 2006, Plaintiff was promoted to Chief Financial Officer ("CFO"), again replacing Mr. Rut. SOF ¶¶ 257-58. Prior to assuming the role of CFO, the Board placed five (5) to seven (7) requirements for Plaintiff to meet in order to acquire the promotion. SOF ¶ 126. Joel Levy testified that when Plaintiff met those criteria, he did not need further Board approval to promote her. *Id.* Thereafter, Plaintiff held the title of Chief Business Officer at YAI from June 1, 2012 through her resignation on June 30, 2014. SOF ¶¶ 128, 130.

## B. The SERP

The SERP was adopted on July 1, 1985 (the "1985 SERP"). SOF ¶ 145. Article 10.1.2 of the 1985 SERP defines eligibility as follows:

> Each Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the [SERP]. Entry into the [SERP] as a Plan Participant shall be on the July 1 coincident with or next

following the employee's compliance with the Eligibility Requirements.

SOF ¶ 147. Article 10.1.3 of the 1985 SERP defines "participant" as an employee who satisfied the eligibility requirements of Subsection 10.1.2. SOF ¶ 149. Article 7.1 of the 1985 SERP allows amendments to be made to the plan documents, provided, however, that no amendment can divest a vested participant of plan benefits. SOF ¶ 266. Nowhere in the 1985 SERP is participation conditioned on approval or a vote of the Board. SOF ¶ 154.

Although the 1985 SERP does not authorize or require a Board vote for plan participation, on April 1, 1993 the Board added Messrs. Rut, Freeman, Dern, and Enid Barbell as participants to the plan. SOF ¶¶ 154, 158-160. Importantly, participation for Messrs. Dern and Rut was allowed prior to their completion of the required fifteen (15) years of employment, and Ms. Barbell was Joel Levy's personal secretary, not a management employee. SOF ¶¶ 160-61.

On November 24, 2008, a meeting was held of the Executive Compensation Committee ("ECC"), a subdivision of the Board. SOF ¶¶ 174, 245. The agenda for this meeting contains an item stating, "Karen: Retirement." *Id.* A handwritten note on the minutes for this meeting state, "Wants Plan = Supplemental Plan → Tabled." *Id.* Twenty-four (24) days after the Board acknowledged Plaintiff's inquiry for her SERP benefits, on December 18, 2008, Article 10.1.2 of the SERP was amended to provide eligibility as follows: "Effective July 1, 2008, the [SERP]'s sole Participants shall be Joel M. Levy, Philip H. Levy, Stephen Freeman and Thomas Dern. The benefit being provided in respect to Joseph Rut shall be governed by the version of the [SERP] in existence on his date of death." SOF ¶¶ 174, 176.

Plaintiff did not become aware of the 2008 amendment to the SERP (the "2008 SERP") until, at the earliest, July 9, 2010, when she received both it and the 1985 SERP in an e-mail attachment. SOF ¶ 204. Plaintiff did not hold SERP documents in the regular course of her job

duties; rather Joel Levy held them as CEO. SOF ¶ 205. In fact, Plaintiff, as well as Mr. Freeman testified that they were unaware that the SERP had been amended and that they could not recall being provided with a copy of the same. SOF ¶¶ 269-72.

Despite the impact of the 2008 SERP, Plaintiff was assured on several occasions by, *inter alia*, Joel Levy (CEO), Eliot Green (a member of the Board and ECC), and Michael Connors (YAI's outside-counsel) that the processing of her SERP benefit calculations was forthcoming. SOF ¶ 184. In fact, Plaintiff was assured of the pending calculation to her benefits until the Spring of 2014, when Eliot Green told Plaintiff that he would begin to have Mr. Connors begin the calculation process, and that Plaintiff needed to be in the SERP "to get equality." SOF ¶ 282. Based on these assurances, Plaintiff did not question the instances where the benefit estimates calculated by YAI's actuaries, which contained no sum for herself: Indeed, Plaintiff was again and again told, "Yours is coming." SOF ¶¶ 184, 202, 206.

## C. The Denial of Plaintiff's SERP Participation

Eliot Green stated that Joel and Philip Levy, each former YAI CEO's "always made it clear to me that they never intended to have [Plaintiff] participate in the SERP because they felt that she was not a team player." SOF ¶¶ 274-75. Joel Levy testified that he never made such statements; rather he advocated for Plaintiff's SERP benefits several times. SOF ¶ 276. Mr. Levy did confirm that his brother, Philip Levy, advocated for the exclusion of Plaintiff from the SERP. SOF ¶ 278. Indeed, Philip Levy had multiple conversations with Mr. Green in which he is recorded discussing Plaintiff's exclusion from the SERP, and during which he stated: Joel Levy promised Plaintiff that she was included in the SERP; that Plaintiff asked him, Philip Levy, to inquire about her own SERP participation to the Board; that he recommended to the Board that Plaintiff should not be included in the SERP; that the Board had determined "a while back" not to allow Plaintiff to

participate; that the SERP should only be used in a "careful way" and only for himself and Messrs. Joel Levy, Rut, Freeman, and Dern; and that Plaintiff is "an angry woman", a viewpoint shared with Mr. Green "because it's important you understand why I make certain decisions, why I would never put someone like her in a SERP." SOF ¶¶ 279-81.

When the time came for Plaintiff to arrange for her retirement from YAI, she began to inquire of Mr. Green about her SERP benefits. SOF ¶ 282-84. Mr. Green denies having such conversations. However, the factual record is clear that on March 27, 2014, Plaintiff e-mailed Mr. Green regarding her retirement income calculations. SOF ¶ 284. On April 14, 2014, Mr. Green forwarded Plaintiff's e-mail to Matthew Sturiale, who was, at the time, YAI's interim CEO. SOF ¶ 286. On May 1, 2014, Mr. Sturiale responded to Green's April 14, 2014 e-mail, and stated: "As discussed, [Plaintiff] is looking for a level of contribution to her pension to get her to that 50%. This will require another level of analysis based upon her thinking that she is entitled to the SERP as an executive." SOF ¶ 287. On May 6, 2014, Mr. Sturiale sent another e-mail to Eliot Green and stated, "BEING TREATED LIKE OTHER EXECS: She reviewed with me on 4/25 what she is looking for in terms of an additional pension contribution … Do you want to research this with Mercer or should I engage Mike Connors to look at what would have been reasonable contribution to the SERP for the period of either 2006-2011 (her perspective) or 2009-2011 to see where it would fall?" SOF ¶ 288. On May 7, 2014, Mr. Sturiale sent yet another e-mail to Eliot Green, and stated: "[D]id a little research … we'll be looking at what type of contribution would have been made for her for the period 7/1/2006 – 6/30/2011…" SOF ¶ 289. On July 1, 2014, at 8:40 in the morning, Mr. Green called Plaintiff and denied her SERP benefits. SOF ¶ 290.

On August 12, 2016, Plaintiff submitted a formal, written claim for benefits under the SERP.[1] SOF ¶ 234. Plaintiff's claim was denied on November 10, 2016. SOF ¶ 237. This denial was cosigned by Mr. Green, and justifies the denial due to: 1) Plaintiff not being a management employee prior to 2006; and 2) Plaintiff not being a participant in the SERP in 2006 or anytime thereafter. SOF ¶¶ 291. Mr. Green made the following concessions relevant to this denial: that he never reviewed the documents provided by Plaintiff in her claim for SERP benefits prior to denying the claim; that he was not familiar with the eligibility requirements of the SERP; that he did not know if Plaintiff met the SERP eligibility requirements; that he never inquired as to whether Plaintiff met the eligibility requirements; that Plaintiff was a member of a "team" that included Joel Levy, Philip Levy, Dern, and Freeman; and that <u>pursuant to his reading of the 1985 SERP, he could see no reason why Plaintiff should not be an included participant</u>. SOF ¶¶ 293-301.

On January 16, 2017, Plaintiff appealed the denial of her SERP benefits. SOF ¶ 238. Plaintiff's appeal of the November 16, 2016 denial was itself denied on April 17, 2017. SOF ¶¶ 241-42. The reasons given for the denial of Plaintiff's appeal were: 1) Participation in the SERP is not automatic; 2) the SERP was frozen before Plaintiff became a management employee; and 3) no prior Board or committee had put Plaintiff in the SERP.

Neither the November 10, 2016 claim denial or the subsequent appeal denial were supported by evidence sufficient to justify the exclusion of Plaintiff from her vested SERP benefits.

### III.  STANDARD OF REVIEW

As to not burden the Court with the well-settled standard of a motion made pursuant to

---

[1] On April 14, 2016, oral argument was held before this Court to discuss, *inter alia*, whether Plaintiff had exhausted her available administrative remedies. *See generally* Zabell Decl. at Exhibit 1. During this argument, Your Honor asked defense counsel, if Plaintiff filed a claim for benefits, "[i]s there a chance that [Plaintiff] is going to be put into the plan?", to which defense counsel replied, "[n]o." *Id.* at 27:16-18. In that same argument, defense counsel also stated that Mr. Green did not have authority to speak for the SERP. *Id.* at 20:5-6.

Federal Rule of Civil Procedure 56(a), Plaintiff respectfully refers Your Honor to principles governing summary judgment set forth in Plaintiff's Amended Memorandum of Law submitted in support of her motion for summary judgment [ECF Dkt. 116]. Plaintiff has, however, included the substantive standards for her remaining arguments.

Notwithstanding the above, we respectfully submit that the proceeding argument establishes Defendants' failure to meet their burden. Indeed, based on the within analysis and her own motion for summary judgment [ECF Dkt. 112-113, 116], it is Plaintiff who is entitled to the relief sought herein. Accordingly, Defendants' instant motion must be denied in its entirety.

## IV.   <u>ARGUMENT</u>

### A. Plaintiff's Claims are Timely

#### 1.   Plaintiff's Discrimination Claims are Timely

Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency. *See* 42 U.S.C. § 2000e–5(e)(1); *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 581 (S.D.N.Y. 2017). The statute of limitations for NYSHRL and NYCHRL claims is three years and accrues "on the date that an adverse employment determination is made and communicated to the plaintiff." March 2, 2016 Opinion & Order, at 27 [ECF Dkt. 27]; *see also Johnson v. DCM Erectors, Inc.*, No. 15-CV-5415 (PKC), 2016 WL 407293, at *2 (S.D.N.Y. Feb. 2, 2016).

Moreover, 42 U.S.C. § 2000e-5(e)(3)(A) (the "Ledbetter Act") provides:

[A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Thus, the Ledbetter Act encompasses "discrimination in compensation," described as "discriminatory compensation decision[s] or other practice[s]." *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 270 (2d Cir. 2015) (*citing* 42 U.S.C. § 2000e–5(e)(3)(A)). The Ledbetter Act applies to all claims of discrimination in compensation, and tolls the statute of limitations by making each discriminatory compensation decision an independent actionable act. *See Robinson v. Brooklyn Coll.*, No. 09-CV-2174 (DLI) (LB), 2010 WL 3924012, at *4 (E.D.N.Y. Sept. 29, 2010).

Here, Plaintiff filed her charge of discrimination with the EEOC on October 13, 2014. SOF ¶ 232. Based on this filing, events giving rise to Plaintiff's Title VII claim prior to December 17, 2013 are time-barred. Although Plaintiff received the 2008 SERP as an attachment to a July 9, 2010 e-mail with the 1985 SERP (SOF ¶ 204), she <u>was not</u> continuously told that she would not be included in the SERP as Defendants insist. Rather, Plaintiff received assurances from, *inter alia*, CEO Joel Levy, YAI's outside counsel Michael Connors, and Board member Eliot Green that her SERP plan calculations would be forthcoming. SOF ¶ 184.

In fact, Plaintiff was assured that the calculation of her SERP benefits would be processed as recently as the Spring of 2014, when Mr. Green told Plaintiff that he would instruct Mike Connors, YAI's outside counsel, work on her SERP benefits, and that Plaintiff needed to be in the SERP "to get equality."[2] SOF ¶ 282-83. We know that Mr. Green followed through on this, as on April 14, 2014, he initiated a series of emails with YAI's then CEO, Matthew Sturiale, regarding the calculation of Plaintiff's SERP benefits. *See* SOF ¶¶ 286-89. Plaintiff was first notified of the

---

[2] We note Plaintiff testified that she and Mr. Connors discussed the processing of her SERP information in or around the Spring of 2014 as per the request of Eliot Green. However, shortly thereafter Mr. Connors informed Plaintiff that he had been asked not to communicate directly with Plaintiff. SOF ¶ 184.

denial of benefits by Mr. Green on July 1, 2014, at 8:40 in the morning. SOF ¶ 290. And, as discussed at length below, the plain-language of the SERP mandates Plaintiff's inclusion in the plan. *See* SOF ¶¶ 147, 149.

Accordingly, Plaintiff became aware, and by extension her discrimination claims began to accrue, upon Mr. Green's communication of the denial of benefits on July 1, 2014, one hundred four (104) days prior to Plaintiff filing her charge with the EEOC. Each of Plaintiff's discrimination claims is timely.

### 2. Plaintiff's ERISA Claim is Timely

As the Court previously observed, the six (6) year statute of limitations on Plaintiff's ERISA claim began to accrue "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." March 2, 2016 Opinion & Order, at 6-7 [ECF Dkt.27] (citations omitted).

The record is clear. Plaintiff was unaware of Defendants' motivations regarding her SERP participation. As discussed above, Plaintiff received repeated assurances that her SERP benefits would be processed at a date closer to her retirement with YAI. SOF ¶ 184. For this reason, the handful of actuarial estimates and e-mails regarding the SERP benefits of Messrs. Levy, Levy, Dern, Freeman, and Rut were not "questionable" to Plaintiff. Indeed, Plaintiff was again and again told, "Yours is coming." SOF ¶¶ 192, 202, 206. Given Plaintiff was receiving these assurances from, *inter alia*, YAI's CEO, its outside counsel, and a member of the Board and EEC, her reliance upon such representations was entirely reasonable. *See* SOF ¶ 184.

Accordingly, the six (6) year statute of limitations began to accrue on July 1, 2014, when Eliot Green denied her first request for SERP benefits. SOF ¶ 290. Plaintiff filed this action on May 18, 2015. [ECF Dkt. 1]. Thus, Plaintiff's ERISA claim is timely.

## B. Plaintiff is Entitled to Summary Judgment on the ERISA Claim

### 1. The Standard of Review Applied to Claims under ERISA § 1132(a)(1)(B)

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that a general denial of benefits challenged under ERISA § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone*, 489 U.S. at 115; *see also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). Where a plan document does confer upon the administrator the discretionary authority to determine participant eligibility, the decision will not be disturbed unless it is arbitrary and capricious. *See Murphy v. Int'l Bus. Machines Corp.*, 23 F.3d 719, 721 (2d Cir. 1994); *Reichelt v. Emhart Corp.*, 921 F.2d 425, 432 (2d Cir. 1990). In this context, arbitrary and capricious means "without reason, unsupported by substantial evidence of erroneous as a matter of law." *Roganti v. Metropolitan Life Ins. Co.*, 786 F.3d 201, *211 (2d Cir. 2015) (*citing Pagan*, 52 F.3d at 442). *Firestone* also noted that if a benefit plans confers discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Firestone* at 115.

The federal courts of appeals are divided as to the appropriate standard for reviewing a denial of benefits under so-called "top-hat" plans. *See Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705, at *8 (S.D.N.Y. Oct. 18, 2016). The Second Circuit has not yet directly addressed the applicable standard of review. *See Am. Int'l Grp., Inc. Amended & Restated Exec. Severance Plan v. Guterman*, 496 Fed.Appx. 149, 151 (2d Cir. 2012) (itself noting the circuit split, but declining to decide the appropriate standard of review). In a sister-case to the one at bar, this Court directly addressed the same benefit plan at issue herein: The YAI SERP. *See*

*Levy v. Young Adult Inst., Inc., supra.* The *Levy* Court declined to address the appropriate standard for reviewing a denial of benefits claim under a top-hat plan, but did note that it need not "decide which standard should apply because the SERP contains explicit provisions protecting vested benefits, thereby limiting the administrator's discretion … [g]iven these provisions, YAI's denial of benefits must withstand both standards of review." *Id.* at *8.

Here, despite Defendants' contention, this Court did not already recognize that the arbitrary and capricious standard would be applied to Plaintiff's claim. Rather, Your Honor's citation to *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993) – *see* Op. & Order at 16-17, Aug. 5, 2016 [ECF Dkt. 43, at 16-17] – was made in the of context of exhausting administrative remedies to allow the Court "a sufficiently clear record of administrative action." *Kennedy,* 989 F2d at 594 (*citing Denton v. First Nat'l Bank of Waco, Texas,* 765 F2d 1295 (5th Cir. 1985)). Accordingly, and with all appropriate deference to the *Levy* Court, we respectfully submit that this Court should review Plaintiff's claim *de novo,* given the restrictions inherent within the SERP on divesting participants of benefits.[3]

It is entirely disingenuous for Defendants to insist that there exist no evidence of a conflict. In fact, Defendants' argument is predicated upon legitimations of their unlawful conduct; i.e., "freezing benefit accruals" and avoiding the "payment of excessive compensation". [ECF Dkt. 106, at 15, 22]; *see also Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan,* 298 F.3d 191, 199 (3d Cir. 2002) (holding heightened scrutiny appropriate due to the conflict that arose when employer directly funded a plan and was therefore benefitted by denying the claims.). Thus, should an arbitrary and capricious standard ultimately be applied, we

---

[3] Article 7.1 of the 1985 SERP provides that, once a participant has vested under the SERP, no subsequent amendment may divest the participant of the benefits to which she would have been entitled had she ceased employment immediately prior to the adoption of the amendment. *See* SOF ¶ 266; *see also* ECF Dkt. 27, at p. 8 n. 2.

ask the Court to weigh as a factor the inherent conflict of Defendants – who fund the SERP – and who benefit by the continued denial of Plaintiff's claim.

## 2. The Wrongful Denial of Plaintiff's Benefits Claim was Arbitrary and Capricious

To prevail on a claim brought under § 1132(a)(1)(B), a plaintiff must show: 1) the plan is covered by ERISA; 2) the plaintiff is a participant or beneficiary of the plan; and 3) the plaintiff was wrongfully denied a benefit owed under the plan. *See Dillon v. Metropolitan Life Ins. Co.*, 832 F.Supp.2d 355, 362-63 (S.D.N.Y. 2011) (*quoting Guerrero v. FJC Sec. Servs.*, 423 Fed.Appx. 14, 16 (2d Cir. 2011).

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1); *see also Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988) ("Congress intended that plan documents exclusively govern an employer's obligations under ERISA plans."); *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 28 (4th Cir.1997) ("ERISA demands adherence to the clear language of th[e] employee benefit plan."). To this end, "ERISA plans are construed according to federal common law." *Dillon v. Metro. Life Ins. Co.*, 832 F. Supp. 2d 355, 365 (S.D.N.Y. 2011) (*citing Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2001). The federal common law governing ERISA "embodies common-sense canons of contract interpretation." *Loughman v. Unum Provident Corp.*, 536 F.Supp.2d 371, 375 (S.D.N.Y. 2008). Thus, courts review ERISA plans within the context of the entire agreement, "giving terms their plain meanings." *Fay*, 287 F.3d at 104; *see also U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 571–72 (2d Cir. 1991).

Accordingly, courts view ERISA-covered, top-hat plans such as the SERP as unilateral contracts. *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705, at *8 (S.D.N.Y. Oct. 18, 2016). In other words, a top-hat plan is "a unilateral contract which creates a

vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.... [O]nce the employee performs, the offer becomes <u>irrevocable</u>, the contract is completed, and the employer is required to comply with its side of the bargain." *Eastman Kodak Co. v. Bayer Corp.*, 369 F. Supp. 2d 473, 478 (S.D.N.Y. 2005) (emphasis added), *vacated and remanded on other grounds by Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215 (2d Cir. 2006); *see also Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) (holding that employees' compliance with all prerequisites to a top-hat plan established their acceptance of its terms through performance. Thus vested, the unilateral contract became irrevocable for the employer.); *Aramony v. United Way of Am.*, No. 96 CIV. 3962 (SAS), 1998 WL 205331, at *10 (S.D.N.Y. Apr. 27, 1998) ("[A] top hat plan is a unilateral contract that an employee accepts in return for her services and is therefore breached by an employer's subsequent revocation.). Accordingly, where, like here, a top-hat plan contains unambiguous vesting provisions, courts will strictly enforce those provisions under principles of unilateral contract law. *Black v. Bresee's Oneonta Dep't Store, Inc., Sec. Plan*, 919 F.Supp. 597, n. 5 (N.D.N.Y. 1996) (enforcing vesting provision of top-at plan); *Pratt v. Petroleum Prod. Mgmt. Inc. Employee Sav. Plan & Tr.*, 920 F.2d 651, 661 (10th Cir. 1990) (holding that the plaintiff's vested rights altered by retroactive amendment, without the plaintiff's consent, was ineffective.).

Here, the bulk of Defendants' argument is designed to muddy the language of the SERP by relying on parsed and disingenuous interpretations of two (2) terms of the 1985 SERP: "Management Employee" and "shall be eligible". Neither of Defendants' interpretations lends itself to thoughtful analysis.

Essentially, the SERP is a contract that became irrevocable when Plaintiff satisfied all of the requirements for participation. There exists no legitimate argument to the contrary.

### i. Plaintiff was a "Management Employee" as that Term is Applied in the SERP

The terms of participation in the SERP are clear and unambiguous. Article 10.1.2 of the 1985 SERP provides:

> Eligibility. Each Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the [SERP]. Entry into the [SERP] as a Plan Participant shall be on the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements.

SOF ¶ 147. Immediately thereafter, Article 10.1.3 of the 1985 SERP defines "Participant" as "an employee who satisfied the eligibility requirements of Subsection 10.1.2. SOF ¶ 149.

Defendants' interpretation and application of "Management Employee" is unreasonable and inconsistent with the record.[4] In denying Plaintiff's claim for benefits, Defendants contend that Plaintiff did not become a management-level employee until 2006, when she was promoted to CFO. This argument is not only pretext; it ignores that fact that even if Plaintiff did not obtain vested participation rights earlier in her career, she certainly did in 2006, two (2) years before Defendants attempt to divest her of those rights by the 2008 SERP amendment.[5] Despite this glaring flaw in Defendants' logic, the record is nevertheless clear: Plaintiff was a management-level employee throughout her entire career at YAI. SOF ¶¶ 178, 247-48, 261, 298.

Plaintiff was a "Management Employee" from the time of her hire as Assistant Controller in 1986. SOF ¶¶ 248, 250. Plaintiff followed the identical career trajectory – with the same job responsibilities – as Mr. Rut, from her promotion to Controller in 1992 to her promotion to CFO in 2006. SOF ¶¶ 251-54, 257-58. Plaintiff also attended weekly management meetings with

---

[4] Defendants do not contest that Plaintiff satisfies the other two (2) requirements for SERP participation: Fifteen (15) years of service with YAI and compensation not fully considered in the computation of Federal Social Security benefits.

[5] We note Joel Levy testified that the requirement of fifteen (15) years of service at YAI for SERP eligibility is inclusive of an employee's total time with the organization, and not restricted to an employee's time as a "Management Employee". SOF ¶ 274.

Messrs. Levy, Levy, Freeman, Dern, and Rut. SOF ¶¶ 259-264. Thus, throughout her nearly three (3) decades with YAI, Plaintiff was part of the management-team that included the other executives at the organization. Even Eliot Green confirmed Plaintiff was a member of a "team" that included the aforementioned male colleagues of Plaintiff, each of whom is a SERP participant. SOF ¶ 298.

Moreover, Defendants' conclusion – that "the Government/ECC considered that another person whom YAI recently hired as Controller is not considered a 'Management Employee' and is not a SERP participant" – is unpersuasive. Even assuming, *arguendo*, that this sole, newly-hired Controller is not presently considered management-level does not diminish that, according to the above-cited testimony, Controller <u>was</u> a management-level position during Plaintiff's tenure in the role. SOF ¶¶ 253. Indeed, this is consistent with the fact that the titles of positions at YAI have adjusted over the decades as the organization grew during Plaintiff's tenure. SOF ¶ 247.

Accordingly, Defendants' continued insistence that Plaintiff was not a "Management Employee" is disingenuous and, as discussed below, evidence of the disparity in the treatment Defendants afforded to Plaintiff as compared to her male counterparts. Accordingly, we respectfully submit that the record confirms that Plaintiff was a "Management Employee" as that term is used in Article 10.1.2 of the SERP beginning in 1986 through her resignation in 2014, becoming a participant after her fifteen (15) years of service at YAI in 2001.

### ii. SERP Participation is Automatic upon Meeting Vesting Requirements

Defendants next rely on a strained and otherwise unnecessary interpretation of the term "shall be eligible". However, rather than give meaning to this term, Defendants' employ a procedure that is not identified or established anywhere in the 1985 SERP.

Giving the terms of the SERP their plain meaning within the context of the entire agreement

– which is required, *see Fay, supra* at 104; *U.S. Fire Ins. Co., supra* at 571–72 – "shall be eligible" is more accurately understood in conjunction with the sentence that immediately follows, which sets a date for the commencement of participation as "the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements." SOF ¶ 147. This reading of "shall be eligible", found in Article 10.1.2 of the 1985 SERP, is bolstered by Article 10.1.3 of the same, which defines "Participant" as "an employee who satisfied the eligibility requirements of Subsection 10.1.2." SOF ¶ 149. Thus, Defendants' interpretation does not give meaning to the term; it distances it from the clarifying language that unambiguously makes vested SERP participation within a fixed timespan the logical consequence of satisfying the three (3) qualifying prerequisites.

There is no proverbial "next step" or further dependency on the Board for participation. Eliot Green even admitted entry in the SERP is not discretionary and does not require the approval of the Board. SOF ¶ 293. Perhaps a vote of the Board was prudent to address the premature matriculation into the SERP for Messrs. Rut and Dern and Ms. Barbell, none of whom satisfied the eligibility requirements when Defendants allowed their participation in 1993. SOF ¶ 161. Plaintiff, however, satisfied those requirements in 2001 without leniency and despite the apparent animosity of her colleagues. Said another way, Plaintiff's participation in the SERP vested in 2001 when she accepted the terms of the 1985 SERP through her performance. Once Plaintiff fully satisfied the requirements for participation, the unilateral contract that is the SERP became irrevocable.

Thus, Defendants' self-serving interpretations of "Management Employee" and "to be eligible" are implausible when the language of the SERP is understood and applied to Plaintiff's career at YAI.

### iii. Defendants' Remaining Argument is Without Merit

Defendants next argue that evidence both within and outside of the administrative record somehow lends itself to a reasonable denial of Plaintiff's SERP benefits. Their arguments are red herrings, meant to paper-over their unlawful actions with feigned legitimacy.

For example, the September 27, 2007 Board meeting minutes do not prove anything other than, as of that date, no affirmative action had been taken to honor Defendants' contractual obligations under the SERP as they applied to Plaintiff. Indeed, we know now that none was to come. However, Defendants' view that this is *ipso facto* proof that Defendants' written denial of benefits over nine (9) years later is arbitrary, as we also know that members of the Board were not even aware of the contractual requirements of the SERP. SOF ¶¶ 295-297.

Similarly, Defendants' citation to an agenda for the November 24, 2008 meeting of the ECC and the subsequent SERP amendment does not aid their argument. This agenda contains an item stating, "Karen: Retirement", next to which appears a handwritten note that states, "Wants Plan = Supplemental Plan → Tabled." SOF ¶ 174, 190, 245. Rather than resume a discussion on Plaintiff's inquiry into her SERP participation, Defendants amended the plan on December 18, 2008 – less than one (1) month after Plaintiff's request was tabled – which stripped Plaintiff of her vested rights. SOF ¶ 174. While these citations may confirm that Defendants did not want Plaintiff in the SERP, they do not support the conclusion that the denial of vested benefits was, in any way, reasonable. Rather, it shows that once Plaintiff put her vested rights on Defendants' radar, they acted quickly to exclude the only female management employee from the plan.

Defendants' citation to the March 10, 2010 conversation between Philip Levy and Eliot Green fares no better. For example, Defendants do not refer to the damning dialogue in the March 10, 2010 telephone conversation between Messrs. Green and Levy, wherein it was stated:

| Eliot Green: | Okay. Now when you say "they," meaning? |
| --- | --- |
| Philip Levy: | The – the leadership of the board, the finance committee. This was discussed in a lot of places .... <br> <u>She's an angry woman</u> ... And the only reason I shared this with you is because <u>it's important you understand why I make certain decisions, why I would never put someone like her in a SERP.</u> |

SOF ¶ 194. Thus, the dialogue between Messrs. Levy and Green confirm that Plaintiff was promised SERP participation; it also brings to light the underlying animus of the then-CEO of YAI and member of the EEC regarding Plaintiff and her inclusion in the SERP.

Moreover, the fact that the Board added participants to the SERP in 1993 with a recognition to "their level of devotion to the organization" does not validate Defendants' argument. As stated above, the 1985 SERP does not contemplate or require the Board's involvement to determine participation or vesting. Nor is an extra level of discretionary fealty considered by the plan language. The only requirements were those three (3) prerequisites to participation provided in Article 10.1.2 of the 1985 SERP. Further, as of the date of cited-to Board resolution, Messrs. Dern and Rut had yet to complete fifteen (15) years of service at YAI and Ms. Barbell was not a "Management Employee", but Joel Levy's assistant. SOF ¶¶ 161, 280.

Again, we note that Plaintiff was assured on several occasions by Joel Levy (CEO), Eliot Green (member of the Board and ECC), and Michael Connors (YAI's outside counsel) that the calculations to her plan benefits would be processed and was forthcoming. SOF ¶ 184. In fact, Plaintiff was assured of the pending calculation to her benefits as recently as the Spring of 2014, when Eliot Green told Plaintiff he would have Michael Connors begin to process the calculation, so Plaintiff could "get equality". SOF ¶ 283. Because of these representations, Plaintiff did not find it questionable that calculations returned by YAI's actuaries as hypothetical estimates did not contain sums for herself. SOF ¶ 202. Indeed, Plaintiff believed her calculation was coming. SOF

¶¶ 184, 206.

In fact, when the time came for Plaintiff to arrange for her retirement, she inquired of Mr. Green about her SERP benefits. Not surprisingly, Mr. Green denies having such conversations. However, the record is clear: On March 27, 2014, Plaintiff e-mailed Mr. Green regarding her retirement income calculation. SOF ¶ 284. On April 14, 2014, Mr. Green forwarded the March 27, 2014 e-mail from Plaintiff to Mr. Sturiale, YAI's then-interim CEO, who, in a series of follow-up emails, which acknowledged that for Plaintiff to be "TREATED LIKE OTHER EXECS", she required a contribution under the SERP. *See* SOF ¶¶ 286-289 (emphasis in original). Only after this correspondence did Mr. Green notify Plaintiff that her SERP benefits were denied. SOF ¶ 290.

Plaintiff submitted a formal written claim for benefits on August 12, 2016.[6] The November 10, 2016 denial was cosigned by Eliot Green in his capacity as Chair of the Board and ECC. SOF ¶ 291. Mr. Green made the following admissions, all of which are damning: that SERP participation does not require the Board's discretion; that he never reviewed the documents provided by Plaintiff in her claim for SERP benefits prior to denying the claim; that he was not familiar with the eligibility requirements of the SERP; that he did not know if Plaintiff met the SERP eligibility requirements; that he never inquired as to whether Plaintiff met the eligibility requirements; that Plaintiff was a member of a "team" that included Joel Levy, Philip Levy, Dern, and Freeman; and that pursuant to his reading of the original 1985 SERP, he could see no reason why Plaintiff should not be an included participant. *See* SOF ¶¶ 293-301.

The denial of Plaintiff's SERP participation was not reasonable or supported by relevant, admissible evidence. Defendants' denial of Plaintiff's vested rights was predetermined prior to her

---

[6] As noted above (n. 1), Plaintiff's August 12, 2016 claim for benefits followed the April 14, 2016 oral argument before this Court, during which counsel for Defendants confirmed that Plaintiff's claim would be denied before it was even submitted. *See* Zabell Decl. at Exhibit 1, 27:16-18.

claim was submitted. Plaintiff's SERP participation has, since at least 2008, been a proverbial "white elephant" with which Defendants knew they would have to reckon; instead of honoring the contractually binding language of the plan documents, however, they attempted to side-step their obligations due and owing to Plaintiff. For the reasons set forth above – and for the reasons set forth in Plaintiff's Memorandum of Law in Support of her own Motion for Summary Judgment [ECF Dkt. 112-113, 116] – Defendants' instant motion must be denied.

## C. Plaintiff is Entitled to Summary Judgment on her Discrimination Claims.

Discrimination claims under Title VII, NYSHRL, and NYCHRL are analyzed under the same analytical rubric.[7] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998). Under this framework, a plaintiff asserting a claim of employment discrimination must first establish a *prima facie* case by establishing that: 1) she belonged to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See McDonnell Douglas*, 411 U.S. at 802; *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013). If the plaintiff satisfies these requirements, the burden then shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. *McDonnell Douglas* at 802. Once the defendant demonstrates a non-discriminatory reason for its decision, the

---

[7] Although claims under the NYCHRL must be analyzed and construed more liberally than claims under its federal and state counterparts, *see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), courts continue to apply the three-step burden-shifting framework articulated in *McDonnell* Douglass. *See Williams v. Regus Mgmt. Group, LLC*, 836 F.Supp.2d 159, 171 (S.D.N.Y. 2011).

burden again shifts to the plaintiff, who must show that the defendant's proffered reason is a mere pretext for discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003); *Schlosser v. Time Warner Cable Inc.*, No. 14-CV-9349, 2017 WL 2468975, at *3 (S.D.N.Y. June 7, 2017).

Defendants submit no argument or evidence against the first two (2) prongs of the above-analysis. As set forth below, Plaintiff suffered an adverse employment action under circumstances clearly related to her gender, which Defendants cannot retroactively justify.

### 1. Plaintiff Suffered an Adverse Employment Action

Generally, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Raspardo v. Carlone*, 770 F.3d 97, 125–26 (2d Cir. 2014) (*quoting Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Examples of actionable adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less important title, <u>a material loss of benefits</u>, or significantly reduced responsibilities. *See id.*; *see also Meyer v. William Floyd Union Free Sch. Dist.*, No. 07-CV-2524(JS)(ETB), 2009 WL 3327208, at *5 (E.D.N.Y. Sept. 30, 2009) ("[T]he denial of benefits can consitite adverse employment actions"); *Germano v. Cornell Univ.*, No. 03–CV–9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) (noting that denial of benefits can be an adverse employment action).

Here, there can be no dispute that the repeated denial of Plaintiff's vested SERP benefits is an adverse action. Accordingly, we respectfully submit that Plaintiff satisfies the third *McDonnell Douglass* element.

### 2. An Inference of Discriminatory Intent Exists

A showing of disparate treatment is "a recognized method of raising an inference of

discrimination for the purposes of making out a *prima facie* case." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (*citing Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)). Raising such an inference requires a plaintiff to show that the employer treated her "less favorably than a similarly situated employee" outside of the protected group. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." (internal quotation marks omitted)).

Here, the record establishes that Plaintiff was treated differently than her male counterparts; i.e., the management-team of YAI. The similarity – and disparity – is best evidenced in comparing Plaintiff to Mr. Rut. Plaintiff followed the identical career trajectory of Mr. Rut for nearly (3) decades. SOF ¶ 254. She held the same positions and responsibilities as Mr. Rut. *See* SOF ¶¶ 251-52, 257-58. She attended the same management-team meetings as Mr. Rut. SOF ¶ 259. However, the treatment of Plaintiff by Defendants regarding SERP participation was substantially different than that afforded Mr. Rut. Although their careers at YAI were similar in all material respects, Mr. Rut received benefits under the SERP; Plaintiff did not. SOF ¶¶ 159-161. In fact, Mr. Rut's SERP participation was acknowledged prior to his attaining fifteen (15) years of service at YAI. SOF ¶ 161. Mr. Rut's premature SERP participation was also granted to Mr. Dern. *Id.*

The very amendment to the SERP upon which Defendants rely to unlawfully divest Plaintiff of benefits – i.e., the 2008 SERP amendment to Article 10.1.2 – is discriminatory: The amendment grants SERP benefits to Plaintiff's five (5) male management-team colleagues at YAI – Messrs. Levy, Levy, Freeman, Dern, Rut – while simultaneously shutting out the sole female

management-level employee at the organization.[8] SOF ¶ 176.

The circumstances surrounding the 2008 amendment give rise to an inference of impermissible discrimination. As stated above, the amendment was executed twenty-four (24) days after Plaintiff inquired of the Executive Compensation Committee regarding SERP benefits. SOF ¶174. Joel Levy testified that his brother, Philip Levy, insisted that Plaintiff be excluded from the SERP. SOF ¶ 278. Indeed, in a recorded meeting between Mr. Green and Phil Levy, it was stated:

> Philip Levy: The general feeling is that the SERP should be used in a very, very careful way, and only for, you know, one or two people. And, you know, and so they made a determination a while back that they weren't going to put Karen in.
>
> Eliot Green: Okay. Now when you say "they," meaning?
>
> Philip Levy: The – the leadership of the board, the finance committee. This was discussed in a lot of places .... She's an angry woman ... And the only reason I shared this with you is because it's important you understand why I make certain decisions, why I would never put someone like her in a SERP.

SOF ¶ 194. We submit that this is not an isolated statement. Rather, the above conversation is emblematic of Defendants' intention to subject Plaintiff to treatment different from that for male management-level employees. Mr. Green admitted that Plaintiff did not receive the same treatment as the other executives at YAI with respect to her retirement SOF ¶ 301.

Thus, Plaintiff establishes an inference of impermissible discrimination as concerns her material loss of SERP benefits as compared to her male colleagues on the management-team. Through the 2008 SERP amendment and the subsequent denials of Plaintiff's SERP participation, Defendants discriminated against Plaintiff because of her gender. Plaintiff has met her burden.

---

[8] We note that the only other woman participating in the SERP, Enid Barbell, was also completely removed from participation in the 2008 Amendment. *See* SOF ¶ 176.

Defendants have not done the same.

### 3. Defendants' Proffered Reasons of Legitimate Discrimination Fail

Defendants cannot justify their decision to exclude Plaintiff from the SERP. In support of their position, Defendants offer four (4) justifications for their actions.

Defendants first two (2) points center around the purported avoidance of tax liability. However, whether the benefits accrued under the SERP could garner potential tax liability is immaterial to the Plaintiff's participation in the plan. Indeed, the non-eligibility of tax deferments was contemplated as a possibility in the 1985 SERP in Article 1.2, wherein it states in relevant part: "Notwithstanding anything to the contrary contained in this agreement ... no assurance or guarantee is intended (or may be inferred from the establishment of the [SERP]) that participants will not be subject to income tax on benefits until they are received...." SOF ¶ 265. Moreover, Defendants attempted to raise a variant of their argument regarding intermediate sanctions as a justification to avoid the SERP obligations due to Joel Levy in *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861 (JPO)(SN), 2016 WL 6092705 (S.D.N.Y. Oct. 18, 2016). Incorporating Judge Netburn's "Report and Recommendation", the *Levy* court held that Defendants could not rely on the Internal Revenue Code as a defense in not honoring its obligations to Levy arising under the SERP. *See* Zabell Decl. at Exhibit 7, 10-13.

Defendants' second two (2) points of purported legitimacy are further citations to a nonexistence authority of the Board to withhold vested SERP participation. Moreover, in attempting to bolster their position, Defendants present indicia of gender-bias within the organization. It is uncertain how requiring Plaintiff, and only Plaintiff, to accomplish tasks prior to her becoming CFO is evidence of a non-discriminatory reason, or why Board members failed to consider her "on par with those other executives who were participants in the SERP." It is

equally uncertain why this would have any bearing on the instant discussion, as the 1985 SERP identifies the only three (3) criteria for plan participation. Nonetheless, the record is clear: Apart from the bigoted views shared by Philip Levy and Eliot Green, Plaintiff's colleagues considered her devoted to the cause of YAI and exhibited excellence throughout her nearly three (3) decades at YAI. SOF ¶¶ 262-63.

Accordingly, by attempting to divest an "angry woman" from enjoying in the same earned benefits that were held for the exclusive use of her male colleagues and contemporaries, Defendants discriminated Plaintiff because of her gender. Accordingly, Plaintiff meets her *McDonnell Douglas* burden, and Defendants' proffered reasons are little more than ex post facto excuses.

## V. <u>CONCLUSION</u>

Plaintiff has a vested right to participate in the SERP. This right was irrevocable. When contrasted with the preferential treatment afforded to her male counterparts, the record is clear that Plaintiff was denied participation in the SERP under circumstances implicating gender-specific discrimination. Accordingly, we respectfully request that Defendants' instant motion must be denied in its entirety, and Plaintiff's Motion for Summary Judgment [ECF Dkt. 112-113, 116] must be granted, together with such other and further relief as the Court deems just and proper.

Dated: January 19, 2018
      Bohemia, New York

Respectfully submitted,

**ZABELL & ASSOCIATES, P.C.**
*Attorneys for Plaintiff Karen Wegmann*

By:

Saul D. Zabell
1 Corporate Drive, Suite 103
Bohemia, New York 11716
T: (631) 589-7242
F: (631) 563-7475
SZabell@laborlawsny.com