UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                         :

KAREN WEGMANN,                   :
                                         :

                 Plaintiff,   :
                                         :

                  v.            :      15 Civ. 3815 (KPF)
                                       :

YOUNG ADULT INSTITUTE, INC., and   :     OPINION AND ORDER
TRUSTEES OF THE SUPPLEMENTAL   :
PENSION PLAN FOR CERTAIN       :
MANAGEMENT EMPLOYEES OF YOUNG  :
ADULT INSTITUTE,              :
                                       :

                Defendants. :
                                       :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 14, 2018

KATHERINE POLK FAILLA, District Judge:

In this litigation, Plaintiff Karen Wegmann brings a claim for benefits

under a retirement plan governed by the Employee Retirement Income Security

Act of 1974 ("ERISA"), codified in part at 29 U.S.C. ch. 18, as well as claims of

gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-17, the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297

("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code

§§ 8-101 to 8-131 ("NYCHRL").  In particular, Plaintiff challenges Defendants'

decision to exclude her from participating in, and receiving benefits under, the

Supplemental Pension Plan for Certain Management Employees (the "SERP")[1]

of Plaintiff's former employer, Defendant Young Adult Institute ("YAI").

---

[1]     The term "SERP" is an acronym for Supplemental Employee Retirement Plan, which, as
its name suggests, provides benefits to key employees additional to those covered in
other retirement plans.  The specifics of YAI's SERP are discussed later in the text.

In an Opinion and Order dated August 5, 2016, the Court stayed this action to give Plaintiff an opportunity to exhaust her administrative remedies at YAI. On August 12, 2016, Plaintiff made a formal claim for benefits under the SERP. Plaintiff's claim was denied on November 10, 2016; she appealed, and her appeal was denied on April 17, 2017. Thereafter, this litigation resumed, and the parties now move for summary judgment. For the reasons that follow, the motions are granted in part and denied in part: The parties' cross-motions for summary judgment as to Plaintiff's ERISA claims are denied; Plaintiff's motion for summary judgment as to her gender discrimination claim is denied; and Defendants' motion for summary judgment as to that claim is granted.

## BACKGROUND[2]

**A.  Factual Background**

**1.  Plaintiff's Employment History**

The parties do not dispute Plaintiff's employment history with YAI. YAI is a tax-exempt not-for-profit corporation that provides assistance to individuals

---

[2]    The facts contained in this Opinion are primarily drawn from the administrative record and the parties' statements submitted pursuant to Local Rule 56.1. The Administrative Record of the YAI Board's review of Plaintiff's claim is attached as Exhibit A to the Declaration of Jeffery A. Mordos (Dkt. #108–A1-15), and the Court will refer to the record as "A.R." The documents in the Administrative Record are contained in the Bates range YAI SERP-WEGMANN-00000001 to YAI SERP-WEGMANN-00000351. For ease of reference, the Court will refer to the page numbers of the Administrative Record by the numerical portion of the relevant Bates numbers (e.g., A.R. 1-351). The Court has also considered Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #103)), Defendants' responses thereto ("Def. 56.1 Opp." (Dkt. #121)), Defendants' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #107)), and Plaintiff's responses thereto ("Pl. 56.1 Opp." (Dkt. #117)). Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in either party's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly

with intellectual and developmental disabilities.  (Def. 56.1 ¶ 114).  Plaintiff

began working for YAI as its Assistant Controller on December 15, 1986.

(*Id.* at ¶ 118).  Plaintiff served as Controller from 1992 to 2003; in 2003, she

took on the additional role of Director of Finance.  (*Id.* at ¶¶ 120, 122).  On July

1, 2006, Plaintiff became the Chief Financial Officer ("CFO") after the prior

CFO, Joseph Rut, passed away.  (*Id.* at ¶¶ 124-25).  Plaintiff served as CFO

until she became the Chief Business Officer ("CBO") on July 1, 2012.  (*Id.* at

¶ 128).  Plaintiff resigned from YAI effective June 30, 2014.  (*Id.* at ¶ 130).

### 2.  The SERP's Provisions and Amendments

The parties are also in agreement about the language of the SERP and of

several amendments thereto, though they dispute their proper interpretation.

YAI adopted the SERP on July 1, 1985.  (Def. 56.1 ¶ 145).  The SERP

designated YAI, subject to the oversight of the Board of Trustees (the "Board"),

as the Plan Administrator.  (*Id.* at ¶ 150; A.R. 33).  The SERP says the Board is

"responsible for the general administration of the Plan."  (*See* A.R. 33).

---

numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

The parties have filed simultaneous cross-motions for summary judgment.  The Court refers to their memoranda of law as follows: to Plaintiff's amended moving brief as "Pl. Br." (Dkt. #116), to Defendants' moving brief as "Def. Br." (Dkt. #106), to Plaintiff's opposition to Defendants' motion as "Pl. Opp." (Dkt. #118), to Defendants' opposition to Plaintiff's motion as "Def. Opp." (Dkt. #120), to Plaintiff's reply in support of its motion as "Pl. Reply" (Dkt. #126), and to Defendant's reply in support of its motion as "Def. Reply" (Dkt. #123).  The Court, at times, cites to various declarations and depositions, to which it will refer using the conventions "[Name] Dep." or "[Name] Decl.," such as the Declaration of Saul Zabell ("Zabell Decl." (Dkt. #114)).

The original version of the SERP stated, in § 10.1.2 under the title

"Eligibility":

> Each Management Employee who shall complete 15
> years of service with [YAI] and whose compensation is
> not fully considered in the computation of Federal
> Social Security benefits, shall be eligible to participate
> in the Plan. Entry into the Plan as a Plan Participant
> shall be on the July 1 coincident with or next following
> the employee's compliance with the Eligibility
> Requirements.

(A.R. 57). Though the SERP did not define Management Employee or Eligibility

Requirements, it defined Participant as "an employee who satisfied the

eligibility requirements of Subsection 10.1.2." (*Id.*). The SERP granted the

Board the power to enact amendments through resolution of the Board or the

Board's Executive Compensation Committee ("ECC"),[3] but provided that no

amendment could have the effect of divesting a participant of a vested benefit.

(*Id.* at 49).

On April 1, 1993, the Board adopted a resolution approving Joel Levy,

Philip Levy, Joseph Rut, Enid Barbell, Stephen Freeman, and Thomas Dern as

participants in the SERP. (Def. 56.1 ¶ 160; A.R. 117-21). At that time, neither

Dern nor Rut had completed 15 years of service at YAI, and their respective

admissions into the SERP were conditioned on satisfaction of that requirement.

(A.R. 118). At the time, Joel Levy was the Chief Executive Officer ("CEO"),

Philip Levy was the Chief Operating Officer ("COO"), Freeman and Dern were

---

[3]     The ECC was known at the time as the Pension Retirement Committee. (A.R. 33).

executive directors, Rut was the CFO, and Barbell was Joel Levy's executive assistant. (*Id.* at 119, 292).

On March 22, 2005, the Board adopted three recommendations from the ECC to limit benefit accruals under the SERP for the "top 5 executives[,]" namely, the CEO, the COO, the two Associate Executive Directors, and the CFO. (Def. 56.1 ¶ 172; A.R. 143-56). The stated goal of this amendment was "[t]o better align annuity benefit with industry practice[.]" (A.R. 144). The ECC noted that, at the time, the SERP "provide[d] annuity benefit of 100% of highest total earnings (Salary + YAI Bonus) after 33-1/3 years of service." (*Id.*). The ECC recommended capping the benefit accruals as follows:

> (1) Retirement Plan annuity benefits to CEO and President/COO be equal to current dollar value of Salary + YAI Bonus, which presently represents an 89% replacement ratio of TCC for each executive.
>
> (2) Retirement Plan Replacement Ratios be capped for both Assoc. Executive Directors at current levels, i.e.[,] 81% of highest year's Salary + YAI Bonus.
>
> (3) Retirement Plan Replacement Ratio for the current CFO be capped at current levels, i.e.[,] 76.5% of the highest year's Salary + YAI Bonus.

(*Id.*). Prior to this change, the Board had engaged a firm called Towers Perrin to provide advice on executive compensation issues, and Towers Perrin found that the benefits conferred under the SERP were excessive relative to the industry standard. (Def. 56.1 ¶ 164). Towers Perrin recommended that YAI cap SERP accruals at current levels to avoid possible adverse tax consequences. (*Id.* at ¶ 165).

The 2005 limitations were formally incorporated into the language of the SERP in an amendment dated December 18, 2008 (the "2008 Amendment"). (*See* Def. 56.1 ¶ 174).[4] The 2008 Amendment also added a procedure for administrative claims for individuals claiming benefits under the SERP — something that was lacking in the original version — and changed the Eligibility section to state: "Effective July 1, 2008, the Plan's sole Participants shall be Joel M. Levy, Philip H. Levy, Stephen Freeman, and Thomas Dern." (A.R. 86-93). In a November 18, 2008 email attaching a redline version of the 2008 Amendment, Michael Connors, YAI's outside counsel on executive compensation matters, characterized the change to the Eligibility section as a "design change[]" that "[arose] from the changes made a few years ago, recent changes required by Phil's and Joel's respective employment agreements and the recent decision to limit accruals for Steve and Tom." (*Id.* at 162).

---

[4]    The parties appear to dispute whether the SERP was amended in 2007. Plaintiff submits as Exhibit 15 to the Zabell Declaration a copy of a SERP amendment that makes certain changes effective July 1, 2007, but which is unsigned, and Defendants contend that the absence of a signature raises a question of whether this document is a "formal amendment." (Zabell Decl., Ex. 15; Def. 56.1 Opp. ¶ 57). Defendants state that this purported amendment was presented to the Board at a meeting on September 27, 2007, and that the Board approved the recommendations, but that the amendment was never finalized or executed. (Def. 56.1 Opp. ¶ 58). The proposed amendment would have changed the language of SERP § 10.1.5 ("Basic Form of Benefit") to add language capping the benefits for Joel Levy, Philip Levy, Stephen Freeman, Thomas Dern, and Joseph Rut at a stated dollar amount or percentage of highest total annual earnings. (Zabell Decl., Ex. 15; A.R. 58). The September 27, 2007 Board meeting minutes reflect that the Board retained counsel to review the SERP for compliance with tax laws, and that counsel found the SERP to be compliant but recommended that the Board amend its language to account for "certain benefit reductions to which the CEO [Joel Levy] and President/COO [Philip Levy] agreed in 2005[.]" (A.R. 129). Notwithstanding the parties' dispute over whether and how these changes were amended, the Court observes that the purported amendment is contained in the Administrative Record and is referred to as "Amendment to the SERP, Effective September 27, 2007." (*Id.* at 139-41).

Finally, on August 6, 2013, the SERP was amended to grant the Board the powers, *inter alia*, to "interpret the Plan, … to resolve ambiguities, inconsistencies and omissions," and "to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan." (A.R. 80-81). As to the Board's interpretations of the Plan terms, the 2013 Amendment stated that such determinations "shall be binding, final and conclusive on all interested parties[.]" (*Id.* at 81).

### 3.  The Board's Denial of Plaintiff's Benefits Claim

On August 12, 2016, Plaintiff filed a claim with the SERP Plan Administrator. (A.R. 3-4). Plaintiff argued that she met the eligibility requirements for SERP participation in 2001 because she held a management position (Controller) and, by that time, had completed 15 years of service at YAI. (*Id.*). Appended to her claim were the Amended Complaint in this action and a copy of the 1985 SERP. (*Id.* at 10-63). Plaintiff argued that the version of the SERP in effect at the time she allegedly vested (i.e., 2001) controlled her entitlement to benefits. (*Id.* at 3).

On November 10, 2016, the ECC denied Plaintiff's claim. (A.R. 287-93). The members of the ECC at the time were Lewis Lindenberg, Eliot Green, David Stafford, and Jeffery Mordos. (Mordos Decl. ¶ 11 (Dkt. #108)). The ECC noted its power under the then-operative version of the SERP "to interpret the Plan, and to resolve ambiguities, inconsistences and omissions" and to "determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan." (A.R. 290). The ECC next cited to the original

version of the SERP in recounting the eligibility requirements as they were set forth in 1985.  (*Id.* at 57, 291).  The ECC found that Plaintiff was not entitled to benefits because she was not a Management Employee prior to 2006 and because she did not become a SERP Participant at any time thereafter.  (*Id.*).  The ECC "determined that 'Management Employee' means the 'C-Suite' employees and YAI's Executive Directors[,]" and that neither Controller nor Director of Finance was a management position.  (*Id.* at 291).  To reach this conclusion, the ECC considered the fact that "another person whom YAI recently hired as Controller is not considered a 'Management Employee' and is not a SERP participant."  (*Id.*).

Next, the ECC cited four reasons why Plaintiff did not qualify for SERP benefits after she became CFO in 2006: (i) the Board had not added anyone to the SERP after 1993 to protect the SERP's grandfathered tax status; (ii) had Plaintiff been added to the SERP in 2006, she would have faced tax liability on the benefits; (iii) in 2005, the Board voted to limit or freeze future SERP benefit accruals upon the recommendation of Towers Perrin and out of a desire to limit accruals under the SERP after 2004; (iv) records revealed that YAI considered establishing a separate retirement plan for Plaintiff, thus confirming that YAI did not consider her to be a SERP Participant.  (A.R. 292).  The ECC reviewed the 1993 decision to place Enid Barbell, Joel Levy's assistant, in the SERP, and "concluded that Ms. Barbell was not likely a 'Management Employee' in 1993, and her addition to the SERP could have been an error."  (*Id.* at 293).  Finally, the ECC noted that Plaintiff did not submit a claim for SERP benefits in 2001,

2002, or 2006. (*Id.*). The ECC's denial letter was signed by Eliot Green and Lewis Lindenberg, Co-Chairs of the ECC.

In support of its decision, the ECC reviewed 20 documents. (A.R. 289-90).[5] Of note, the ECC considered a sworn statement from its Co-Chair, Eliot Green, dated October 10, 2016, in which Green denied having conversations with Plaintiff about her entitlement to SERP benefits, including a conversation in which, according to Plaintiff, Green told her that she was not treated equally under the SERP and characterized her treatment as "discriminatory[.]" (*Id.* at 177 ¶¶ 3-4). Green stated that he did, however, recall conversations with Joel and Phil Levy in 2008 and 2009 where the Levys stated "that the SERP was designed to reward certain employees who were loyal to YAI, who had worked for the organization for a long time, who were easy to work with, and who were team players," and, further, that they "never intended to have [Plaintiff] participate in the SERP because they felt that she was not a team player" and that she "was looking out for her own benefit and was not focused on or concerned about YAI and its mission to serve individuals with disabilities."

---

[5] Those documents were: (i) the 1985 SERP; (ii) the August 11, 2016 letter from Defendants' counsel to Plaintiff's counsel requesting that Plaintiff submit a formal claim; (iii) the August 6, 2013 SERP Amendment; (iv) the December 18, 2008 SERP Amendment; (v) an excerpt of the November 24, 2009 Board meeting transcript; (vi) the 2005 Towers Perrin report; (vii) the April 1, 1993 Board minutes; (viii) David Samuel's notes from the February 11, 2005 meeting with Towers Perrin; (ix) the September 27, 2007 Board minutes; (x) the September 27, 2007 SERP Amendment; (xi) the March 22, 2005 ECC recommendations; (xii) the March 22, 2005 Board minutes; (xiii) Plaintiff's salary and bonus information; (xiv) Plaintiff's 2014 retirement compensation information; (xv) a November 18, 2008 email from M. Connors to C. Miller regarding SERP and Life Insurance Plans; (xvi) the Statement of Eliot P. Green; (xvii) an excerpt from the transcript of a March 10, 2009 audio recording; (xviii) a June 19, 2007 email from M. Connors to P. Levy re: Outline; (xix) the November 24, 2008 ECC agenda; and (xx) an October 11, 2016 memo from Defendants' counsel.

(*Id.* at 177-78 ¶ 5).  Green stated that the Levys told him in 2008 and 2009 that Plaintiff had asked them about the SERP and that they told her she would never be in it because the SERP was for employees who "founded YAI[.]"  (*Id.* at 178 ¶ 6).  Green added that his personal opinion of Plaintiff "was that she was out for herself," in that she would often make decisions on a "cost basis" and was more concerned with the financial cost to YAI than with the possible benefit to a disabled person.  (*Id.* at 178 ¶ 7).

Finally, Green discussed a 2009 *qui tam* action that had been brought against YAI by a former employee and in which the United States had intervened in 2011.  (A.R. 178 ¶ 8).  The *qui tam* suit alleged that YAI had engaged in Medicaid fraud and named Plaintiff as a defendant.  (*Id.*).  YAI settled the lawsuit for $18 million and, thereafter, ended its relationship with Philip Levy.  (*Id.* at 179 ¶¶ 8-9).  At that time, "the Board was in favor of firing" Plaintiff, but she was kept on as an accommodation to Freeman, who assumed the role of CEO and wanted to keep her.  (*Id.* at 179 ¶ 9).  Green stated that he told Plaintiff that "she was lucky to still be working at YAI" because he and Freeman had "go[ne] to bat for her."  (*Id.* at 179 ¶ 10).

The Board also considered an excerpt of a transcript of a March 10, 2009[6] recorded conversation between Green and Philip Levy in which Levy is transcribed as having said that "Joel [Levy] had promised [Plaintiff] that she was going to be in [the SERP]" because he was "trying to buy her off and he did

---

[6]     There is mixed information in the record as to the date of this conversation.  The cover sheet of the transcript indicates that it was in 2010 but the ECC Denial letter states that it was in 2009.  (*Compare* A.R. 182, *with* A.R. 290).

buy her off because she believed him." (A.R. 184-85). Philip Levy is also recorded as saying that Plaintiff asked him to recommend her to the Board for inclusion in the SERP, and that he raised it to the Board but recommended that they not include Plaintiff. (*Id.* at 185).

On January 16, 2017, Plaintiff appealed this decision. (A.R. 210). In support of her appeal, Plaintiff reasserted her position that she had become eligible for SERP participation in 2001 based on her management position and length of service at YAI. (*Id.* at 1-3). Plaintiff noted that she had been told by Joseph Rut at the time she was hired that the Assistant Controller was a management-level position, and argued that her career path at YAI had followed that of Rut, who was a SERP participant. (*Id.* at 4). Plaintiff argued that the ECC applied the term "Management Employee" in a "scattershot manner[,]" and failed to consider that "[p]ursuant to Plan language, participation is mandatory, not optional." (*Id.* at 4-5). Appended to Plaintiff's appeal were (i) the ECC's denial letter; (ii) the 2008 Amendment; (iii) the March 22, 2005 Board minutes; (iv) the March 22, 2005 ECC recommendations; (v) the November 24, 2008 ECC minutes; (vi) the November 24, 2008 ECC agenda; (vii) an excerpt of the transcript of a March 10, 2009 recorded conversation between Green and Philip Levy; and (viii) the October 10, 2016 Statement of Eliot P. Green. (*Id.* at 217-81).

Ultimately, on April 17, 2017 the full YAI Board issued its denial of Plaintiff's appeal. (A.R. 343). The members of the Board who considered Plaintiff's claim were Jeffery Mordos, Eliot Green, Richard Rosenbaum, John

Rufer, Jane Levine, Kevin Hogan, David Stafford, and Jeffrey Lieberman. (Mordos Decl. ¶ 17).  In its letter denying Plaintiff's appeal, the Board noted that the SERP did not define the terms "Management Employee" or "eligible to participate[,]" and that construction of those terms fell within the discretion of the Plan Administrator.  (A.R. 349).  The Board cited three reasons for its denial: (i) participation in the SERP was not automatic; (ii) SERP benefits were frozen before Plaintiff became a Management Employee; and (iii) Plaintiff had not been previously admitted into the SERP by the Board or the ECC.  (*Id.* at 349-51).

The Board found that Plaintiff did not attain a vested right under the SERP in 2001 — or at any other time — because "an affirmative decision by the Board was required for any employee to become a SERP participant[,]" and the "Board concluded that eligibility to participate and actual participation in the SERP are separate concepts, and, even if [Plaintiff] may have had 15 years of service and held certain titles within the organization, the Board never approved her addition to the SERP."  (A.R. 349).  The Board found it notable that no one had ever joined the SERP without Board approval, that the Board had not added any new participants since 1993, and that the Board had amended the SERP in 2008 to specify that its only participants were Joel Levy, Philip Levy, Stephen Freeman, Thomas Dern, and the late Joseph Rut.  (*Id.*).

In addition, the Board relied on its 2005 resolution to argue that the SERP had been "frozen" before Plaintiff became a Management Employee. (A.R. 349).  In this regard, the Board found that Plaintiff did not become a

Management Employee, "if she became one at all[,]" until "YAI's former CEO promoted her to CFO without the Board's approval[,]" and the Board considered and rejected Plaintiff's argument that she was a Management Employee before 2006 because organization charts from 2003 to 2009 showed that the Controller reported to the CFO. (*Id.*).

Finally, the Board emphasized that no prior Board had ever added Plaintiff to the SERP, and found that there was no basis on which to question that decision. (A.R. 350). The Board found unpersuasive the evidence put forth by Plaintiff: (i) minutes of a November 24, 2008 ECC meeting ostensibly reflecting that Plaintiff had been considered, at that time, part of the "executive management team," and (ii) Fava's handwritten notes from the meeting ostensibly reflecting that the ECC had considered adding Plaintiff to the SERP but "[t]abled" the discussion. (*Id.*). The Board also found unpersuasive the transcript of the March 10, 2009 recorded conversation between Green and Philip Levy in which Philip Levy states that Joel Levy promised Plaintiff she would be in the SERP. (*Id.* at 350). The Board appears to cite with approval Philip Levy's statement later in the transcript that a Board committee "rightfully … decided that we should not put anyone else into [the SERP] because it's too much of a potential liability." (*Id.* at 350 n.4). The Board found that this evidence showed that the Board had previously considered and decided against putting Plaintiff into the SERP. (*Id.* at 351).

In reviewing Plaintiff's appeal, the Board considered 11 documents in addition to the 20 considered with Plaintiff's initial claim. (A.R. 347-38).[7] Among the new documents considered on appeal was a June 28, 2012 letter from Board member George Contos, who was unable to attend the July 2, 2012 meeting. (*Id.* at 326-27). At that meeting, the Board discussed moving Plaintiff from the CFO position to CBO. (*Id.* at 321). Contos wrote to the Board to "urge … YAI [to] sever all ties" with Plaintiff and "vote for her immediate termination." (*Id.* at 326). Contos believed that Plaintiff "knowingly and actively engaged in financial fraud," and that YAI should "clean[] house" or "be forced to defend the indefensible position of why, as [YAI] was terminating the Levys, it rewarded [Plaintiff] by allowing her to continue at YAI and earn significant sums despite direct evidence of her financial impropriety." (*Id.*). He continued, "[b]y 2014, [YAI] will have to deal with fallout from the SERP settlement once it becomes public on the [tax forms], and I would rather not also have to deal with explaining why [Plaintiff] is still employed by YAI." (*Id.*).

Plaintiff's appeal was denied, and the Board informed Plaintiff that its April 17, 2017 letter was meant as a final decision subject to review under ERISA. (A.R. 351).

---

[7] Those 11 documents were: (i) Plaintiff's appeal; (ii) a December 9, 2016 letter from Plaintiff's counsel to Defendants' counsel asking for the documents considered during the ECC's review of Plaintiff's claim; (iii) the ECC's denial; (iv) a February 17, 2017 letter from Defendants' counsel an extension of the period of review; (v) charts showing Plaintiff's compensation from 2004 to 2013; (vi) a September 19, 2001 letter to Plaintiff regarding her completion of 15 years of service; (vii) YAI organization charts from 2003 to 2009; (viii) the YAI Termination and Supplementary Termination Memo regarding Plaintiff; (ix) the July 2, 2012 Board minutes; (x) a June 28, 2012 letter from YAI Trustee George Contos to the Board; and (xi) a March 15, 1993 Personnel Practices Committee Meeting agenda and report.

**B.    Procedural Background**

Following the resolution of Plaintiff's administrative claim on April 17,

2017, the Court lifted the stay of this litigation and commenced discovery on

May 8, 2017.  (Dkt. #53-54).  Following the close of fact discovery, the parties

submitted cross motions for summary judgment on December 18, 2017.

(Dkt. #103-16).  Oppositions were filed on January 19, 2018 (Dkt. #117-22),

and the parties filed replies in support of their respective motions on

February 2, 2018 (Dkt. #123-26).

**DISCUSSION**

**A.    Motions for Summary Judgment Under Federal Rule of Civil
Procedure 56**

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant

summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  A

fact is material if it "might affect the outcome of the suit under the governing

law," and is genuinely disputed "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986).  While the "movant bears the burden of

'demonstrat[ing] the absence of a genuine issue of material fact,'" *Nick's

Garage, Inc.* v. *Progressive Casualty Co.*, 875 F.3d 107, 114 (2d Cir. 2017)

(quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)), the party opposing

summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v.

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where parties file[] cross-

motions for summary judgment[,] … each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).

## B. The Parties' Cross-Motions for Summary Judgment on Plaintiff's ERISA Claims Are Both Denied

### 1. Applicable Law[8]

#### a. The Standard of Review Under ERISA

It is well-settled that "[t]he default standard of review for a plan administrator's underlying benefits determination is de novo." *Elizabeth W.* v. *Empire HealthChoice Assurance, Inc.*, 709 F. App'x 724, 726 (2d Cir. 2017) (summary order) (citing *Firestone Tire & Rubber Co.* v. *Bruch*, 589 U.S. 101, 111-12 (1989)). The burden rests with the administrator — here, YAI — to establish that it is entitled to the more deferential arbitrary and capricious standard. *Halo* v. *Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2d Cir. 2016) (citing *Sharkey* v. *Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995)). In the usual case, an administrator is entitled to arbitrary and capricious review so long as the administrator shows that it has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Sigal* v. *Metro. Life Ins. Co.*, No. 16 Civ. 3397 (JPO), 2018

---

[8]    Defendants argue that Plaintiff's ERISA claim is time-barred "if there was a clear repudiation of her right to participate in the SERP prior to May 2009." (Def. Br. 24). Because the Court does not believe there to have been such a clear repudiation before 2014, the Court holds that Plaintiff's ERISA claim was timely filed.

WL 1229845, at *5 (S.D.N.Y. Mar. 5, 2018) (citing *Krauss* v. *Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008)). Any ambiguities in the administrator's authority are construed in favor of the claimant seeking benefits. *Id.*

Per the 2013 SERP Amendment, the ECC is granted the power "to interpret the Plan, and to resolve ambiguities, inconsistencies and omissions" and to "determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan[.]" (A.R. 81). Such language is sufficient to entitle Defendants to the deferential arbitrary and capricious standard of review. *Elizabeth W.*, 709 F. App'x at 726 (finding sufficient that the plan granted the administrator the power to construe the plan's terms and decide all questions arising under the plan); *see also id.* (acknowledging that "magic words such as 'discretion' and 'deference' are not necessary to confer discretionary authority" (citing *Kinstler* v. *First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999))).[9]

The scope of arbitrary and capricious review is narrow, and a denial of benefits may be overturned only if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Roganti* v. *Metro. Life*

---

[9]    The Court has considered Plaintiff's argument that *de novo* is the proper standard because Plaintiff could have vested into the SERP under a version of the plan that pre-dated the amendment that gave the Board the power to construe terms, resolve ambiguities, and decide the amount of benefits. (*See* Pl. Reply 2). This argument is well-meant but because the Court finds that the Board's decision in this case does not withstand arbitrary and capricious review, the Court need not address it further. Plaintiff also argues that the standard of review must revert to *de novo* where the Board acted with a conflict of interest, but the authority Plaintiff cites for this proposition (*see* Pl. Reply 3 (citing *Sullivan* v. *LTV Aerospace & Defense Co.*, 82 F.3d 1251 (2d Cir. 1996))), has been superseded by the Second Circuit's decision in *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 128 (2d Cir. 2008).

*Ins. Co.*, 786 F.3d 201, 211 (2d Cir. 2015) (quoting *Pagan* v. *NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).  Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached" and "requires more than a scintilla but less than a preponderance." *Celardo* v. *GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003).  Given the narrow scope of review, the Court may not substitute its own judgment for that of the administrator.  *Id.*  The Court's review is generally confined to the administrative record; it "may expand its review beyond the administrative record, but only for good cause shown."  *Knopick* v. *Metro. Life Ins. Co.*, 457 F. App'x 25, 28 (2d Cir. 2012) (summary order) (internal citations omitted).

The Court pauses to note that this case deviates from a typical benefits denial review because, as the parties agree, the SERP is a "top hat" plan.  (*See* Pl. Br. 9; Def. Opp. 8).  This is to say, it is an unfunded plan that applies to highly-compensated executives and is, thus, exempt from many of ERISA's provisions, including its fiduciary requirements.  *Am. Int'l Grp., Inc. Amended & Restated Executive Severance Plan* v. *Guterman*, 496 F. App'x 149, 150-51 (2d Cir. 2012) (summary order).  The parties are likewise in agreement that the Second Circuit has not directly addressed the appropriate standard of review for denials of benefits in top hat plans, and there is disagreement among the Courts of Appeals on this question.  *See Guterman*, 496 F. App'x at 151 (acknowledging circuit split).  (*See* Pl. Br. 9; Def. Opp. 8).  Defendants argue that arbitrary and capricious review applies; Plaintiff argues for *de novo* review.

(Pl. Br. 8-10; Def. Opp. 8). Because the Court finds that the Board's review of Plaintiff's claim was deficient even under the more generous arbitrary and capricious standard, the Court need not resolve this dispute.

### b. Evaluation of Conflicts of Interest

On the related issue of conflict of interest, Plaintiff argues that the Court should consider that the ECC acted with an "inherent" conflict of interest, insofar as they "fund the SERP and benefit by the denial of Plaintiff's claim." (Pl. Br. 9). Plaintiff also argues that Eliot Green's role in the review of Plaintiff's claim "cannot be overlooked" because Green, along with the Levys, had "seemingly predetermined" "the decision to deny her benefits[.]" (*Id.* at 17).

The Second Circuit instructs that when a plan administrator operates with a conflict of interest, "courts should not apply a more exacting standard of review, but should instead weigh the conflict as a factor in determining whether there is an abuse of discretion." *Roganti*, 786 F.3d at 217 (internal citations and quotation marks omitted). A plan administrator has a "categorical conflict of interest" where, as here, it "both evaluates and pays claims." *Id.* at 218 (internal citations and quotation marks omitted). An administrator may also operate under a "case specific" conflict of interest where it engages in "deceptive or unreasonable conduct[.]" *Durakovic* v. *Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010).

"Evidence that a conflict affected a decision … may have bearing … on whether a particular decision is arbitrary and capricious." *Durakovic*, 609 F.3d at 140; *S.M.* v. *Oxford Health Plans (N.Y.)*, 644 F. App'x 81, 83 (2d Cir. 2016)

19

(summary order) ("Courts decline to assign any weight to a conflict of interest in the absence of any evidence that the conflict actually affected the administrator's decision." (internal quotation marks and citations omitted)). The weight a court should give the conflict is assessed under the totality of the circumstances; the conflict should be afforded more weight "where circumstances suggest a higher likelihood that it affected the benefits decision," and should be given less weight where the administrator "has taken active steps to reduce potential bias and to promote accuracy[.]" *Metropolitan Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 117 (2008). Such steps can include, for example, separating those who make benefits decisions from those involved in firm finances, hiring independent experts, and staffing the appeals panel with different individuals than those who rendered the initial denial. *See S.M.*, 644 F. App'x at 83-84; *Durakovic*, 609 F.3d at 140. Ultimately, "the weight a court properly affords to such a conflict is in direct proportion to the likelihood that the conflict affected the benefits decision." *McCarthy-O'Keefe* v. *Local 298/851 IBT Emp. Grp. Pension Tr. Fund*, No. 13 Civ. 4785 (JMF), 2015 WL 783352, at *7 (S.D.N.Y. Feb. 24, 2015) (internal quotation marks and citation omitted).

Here, there is strong evidence of both categorical and case-specific conflicts of interest. *First*, YAI both evaluated and would pay Plaintiff's claim. (A.R. 287-93). *Second*, the evidence that Green told Plaintiff she was not treated equally under the SERP, and the evidence that Levy promised Plaintiff she would be in the SERP in an attempt to "buy her off," suggests that YAI may have engaged in deceptive or unreasonable conduct. (*Id.* at 177 ¶¶ 2-3, 184-

85). *Third*, Defendants have not shown that YAI took sufficient steps to limit bias from infecting the administrative review process. For example, the Administrative Record shows that, on appeal, the Board considered a 2012 letter to the Board written by Trustee George Contos arguing that YAI should terminate Plaintiff instead of "rewarding [her] by allowing her to continue at YAI and earn significant sums despite direct evidence of her financial impropriety." (*Id.* at 326).[10] Eliot Green and Lewis Lindenberg sat on the ECC at the time that letter was submitted to the Board, and they were both involved in the initial review of Plaintiff's administrative claim. (A.R. 323; Mordos Decl. ¶ 10). In short, the Board's discussion of Plaintiff's prior employment issues and a Board member's negative view of her, coupled with the involvement of two Board members in Plaintiff's administrative claim who had also considered her possible termination, suggest a bias against paying Plaintiff a substantial retirement benefit.

The Board's consideration of Green's sworn statement is additional evidence of bias. Both the ECC and the Board considered Green's statement in which he denied telling Plaintiff in 2014 that he felt she had been treated unfairly by being denied entry into the SERP; by contrast, Green stated that Plaintiff "was out for herself[,]" had a poor work ethic, and "did not go the extra mile for individuals with disabilities from either a work effort or a financial

---

[10]     In its letter denying Plaintiff's appeal, the Board specifically cited the Contos letter: the Board noted that Plaintiff had been demoted — not promoted, as she believed — from CFO to CBO in 2012, and that the Board had been in favor of firing Plaintiff at that time. (A.R. 347).

standpoint." (A.R. 279 ¶ 7). The Board's denial of Plaintiff's appeal cited to Green's statement for two purposes: (i) to rebut Plaintiff's recollection of her conversations with Green and (ii) as evidence that Green had discussed Plaintiff's possible participation in the SERP with Joel and Philip Levy in 2008 and 2009, and that the Levys had told Green that it was never their intention to permit Plaintiff into the SERP because she "was not a team player … and was not focused on or concerned about YAI and its mission to serve individuals with disabilities." (*Id.* at 347).

Notably, Green was involved in both Plaintiff's initial denial and her appeal. Plaintiff is correct that "Green's involvement in the multiple denials cannot be overlooked." (Pl. Br. 17). Defendants argue that any conflict of interest should be disregarded because Defendants included additional Board members in the review of Plaintiff's appeal (Def. Opp. 7), but this is unavailing where Defendants failed to remove the Board member who submitted a sworn statement rejecting critical components of Plaintiff's evidence and making quite plain his disdain for her. *Cf. Wedge* v. *Shawmut Design & Const. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 336 (S.D.N.Y. 2014) (finding persuasive that the plaintiff's appeal was reviewed by "different individuals than those who made the initial determination to deny Plaintiff's benefits"). In light of Plaintiff's evidence that Defendants operated under a conflict of interest that actually affected their denial of benefits, the Court gives substantial weight to the conflict in assessing the reasonableness of the Board's denial.

## 2. The Board's Decision Was Arbitrary and Capricious

Taking into consideration both the Administrative Record and the evidence of Defendants' conflict of interest, the Court finds that Defendants' denial of Plaintiff's benefits claim was arbitrary and capricious, principally because it rested on a misreading of the SERP. Defendants contend that the parties' dispute centers on their competing definitions of what it means to be a "Management Employee" and what it means to "be eligible" to participate in the SERP. (Def. Opp. 4). The Court agrees that these are the primary areas of dispute, and will address each in turn. While the Court finds that the Board's definition of "Management Employee" is entitled to deference, the same is not true for its assessment of the eligibility requirements for SERP participation.

### a. The Board's Determination That Plaintiff Was Not a "Management Employee" Prior to 2006 Was Reasonable

The ECC rejected Plaintiff's argument that her SERP right vested in 2001, i.e., when she was the Controller of YAI and reached 15 years of service with YAI, and the Board upheld this finding on appeal.[11] The ECC "determined that 'Management Employee' means the 'C-Suite' employees and YAI's Executive Directors." (A.R. 29). The ECC went on to explain that the management role within the YAI Finance Department was the CFO, not the Controller or Director of Finance. (*Id.*). In support of this finding, the ECC observed that an individual recently hired to be YAI Controller was not considered to be a "Management Employee." (*Id.*). On appeal, the Board

---

[11] There is no dispute that Plaintiff met the salary requirement for SERP participation at least as of December 2001. (Def. 56.1 Opp. ¶ 22).

upheld this finding, pointing to organization charts from 2003 to 2009 that showed the Controller position reported to the CFO, and thus could not be considered a management role. (*Id.* at 349).

For her part, Plaintiff argued to the Board that she was told when she was hired that she occupied a management position; that she was identified "verbally and in written organizational charts" as a management employee; and that the inclusion of Enid Barbell, Joel Levy's assistant, in the SERP suggested that the Board had a broader view of the term "Management Employee" that would encompass Plaintiff. (A.R. 212-13). However, Plaintiff did not submit any organizational charts that show her as having a management role, and the charts in the Administrative Record do not indicate the difference between management and non-management employees. (*Id.* at 302-14). The record shows evidence in support of both sides, but "the mere fact of conflicting evidence does not render the administrator's conclusion arbitrary and capricious." *Roganti*, 786 F.3d at 212. That the Board construed the term "Management Employee" within the Financial Department to be the highest-ranking employee in that Department is not unreasonable. Accordingly, the Court will not disturb the Board's conclusion that Plaintiff was not a Management Employee in 2001.

### b. The Board's Interpretation of "Eligible To" Is Not Entitled to Deference

Instead, the problem with Defendants' review of Plaintiff's administrative claim lies in its fundamental misreading of the SERP's eligibility provision. It is well-settled that courts "still apply familiar rules of contract interpretation in

reading an ERISA plan" and that the plan should be read "as a whole, giving terms their plain meanings." *Montefiore Med. Ctr.* v. *Local 272 Welfare Fund*, 712 F. App'x 104, 106 (2d Cir. 2018) (summary order) (internal quotation marks omitted) (quoting *Lifson* v. *INA Life Ins. Co.*, 333 F.3d 349, 352 (2d Cir. 2003) (per curiam), and *Fay* v. *Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). Whether ERISA plan language is ambiguous is determined under traditional contract principles and, thus, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation" or "strain[] the contract language beyond its reasonable and ordinary meaning." *Id.* (citations omitted). Where an ERISA plan administrator "imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008).

The ECC's initial denial and the Board's subsequent denial of Plaintiff's appeal both rest in substantial measure on the belief that entry into the SERP was contingent on Board approval, and, further, that such approval was contingent on factors other than the employee's position, salary, and length of service at YAI. In denying Plaintiff's claim, the ECC noted that the Board had not added anyone to the SERP since 1993 to protect the SERP's grandfathered tax status. (A.R. 292). In the full Board's denial of Plaintiff's appeal, the Board doubled down on this point. It said:

> Based on the terms of the SERP and a review of available Company and Plan records, the Board

> concluded that [Plaintiff] did not become a participant in the SERP when she completed fifteen years of service with YAI on or about October 2001 — or at any other time — because participating in the SERP is not automatic. ... The Board determined that an affirmative decision by the Board was required for any employee to become a SERP participant. The Board concluded that eligibility to participate and actual participation in the SERP are separate concepts, and, even if [Plaintiff] may have had 15 years of service and held certain titles within the organization, the Board never approved her addition to the SERP.

(*Id.* at 349).

Plaintiff argues, and the Court agrees, that the Board's position in this regard is based on an unreasonable construction of the SERP's plain text, which does not provide anywhere that participation in the SERP is subject to Board approval based on factors not enumerated in the plan document. (*See* Pl. Br. 15; Pl. Opp. 15-16). To review, the SERP's eligibility section provides:

> Each Management Employee who shall complete 15 years of service with [YAI] and whose compensation is not fully considered in the computation of Federal Social Security benefits, shall be eligible to participate in the Plan. Entry shall be on the July 1 coincident with or next following the employee's compliance with the Eligibility Requirements.

(A.R. 57). The SERP did not define "Management Employee" or "Eligibility Requirements." As of 2013, the Board has the power to construe these terms and resolve any ambiguities. (*Id.* at 81). Of particular significance here, the Board's discretion to construe terms is limited by the SERP's provision against amendments that would divest a vested interest. (*See id.* at 49 ("The Institute shall have the right to amend the Trust ... provided, however, that no amendment shall have the effect of ... directly or indirectly divesting the

26

interest of any Plan participant in any amount that he or she would have removed had he terminated his employment with [YAI] immediately prior to the effective date of such amendment[.]")).

Defendants argue that the critical words in the SERP's eligibility section are "eligible to." They contend that employees who held management positions and had the requisite salary and length of service at YAI were simply "eligible to" participate in the SERP and that the Board would then determine whether the employee would, in fact, be admitted into the SERP. (Def. Br. 14-15). Defendants further argue that participation in the SERP could not be automatic upon satisfying the three enumerated requirements because such a reading would render the words "eligible to" surplusage. (*Id.*). The Court does not find these arguments persuasive. The original eligibility provision at § 10.1.2 set forth three requirements to be eligible to participate in the SERP and, notably, did not carve out any role for the Board in determining eligibility based on additional, unspecified requirements of its choosing. If the words "eligible to" do, as Defendants posit, confer some authority on the Board, that role would be simply a ministerial one to assess that the employee does, in fact, meet the SERP's requirements set forth in § 10.1.2 and, if so, to add them to the SERP.

It was not reasonable to construe this term to grant the Board power to make eligibility determinations based on a host of factors not set forth in the SERP itself — to do so would undo the clear language in § 10.1.2 that "[e]ntry into the Plan as a Plan Participant *shall* be on the July 1 coincident with or

next following the employee's compliance with the Eligibility Requirements."
(A.R. 57 (emphasis added)). If YAI wanted the Board to have the discretion to
select participants based on their "level of devotion to the organization" (Def.
Br. 16), it could have written that into the SERP instead of the much more
definitive language that it chose to include. Defendants' suggestion that this
reading of "eligible to" is reasonable because YAI had a "longstanding practice
of selecting and voting to approve participants in the SERP" is circular. (*See id.*
at 15). If anything, this indicates that the Board has misread the SERP since
its adoption.

Because the Court finds that the Board's construction of "eligible to" was
based on a fundamental misunderstanding of the SERP's plain text and of the
Board's role in determining SERP eligibility, its interpretation of "eligible to" is
not entitled to deference. To be sure, the Board has the authority to interpret
the SERP, but it cannot construe the Eligibility Requirements term to involve
additional hurdles that would divest Plaintiff of an interest that could have
otherwise vested. (*See* A.R. 49). Insofar as the Board used its misreading of
the SERP to discredit Plaintiff's evidence that her rights, if any, under the SERP
could have vested after she was promoted to CFO, the Board's denial was, in
this regard, arbitrary and capricious.

In light of the Board's misunderstanding of its ability to preclude
participation in the SERP and the Board's conflict of interest, the Court is
skeptical of the Board's argument that the SERP was frozen in 2005 such that
Plaintiff could never be a SERP participant. The Board pointed to the Towers

Perrin report that "revealed that the SERP's benefit formula could result in the accrual of excessive or unreasonable compensation[,]" which report caused the Board to "limit or 'freeze' future accruals under the SERP." (A.R. 346). But while the 2005 ECC recommendations froze benefit accruals, those changes did not expressly state that the SERP could not admit new participants. The Board's denial letter explains that the 2005 recommendations were implemented to avoid the possibility of paying out excessive compensation and that, partly for this reason, the Board had not added anyone to the SERP thereafter to avoid such adverse tax consequences. (*Id.*).[12] Notably, however, the denial letter does not state that the 2005 changes to the SERP expressly prevented the inclusion of new participants; rather, it explains that the changes were the basis for the exercise of a discretionary power that the Court has now found the Board did not have before 2013. (*Id.* at 343-51).[13]

---

[12] A sister court in this District has previously held — in a decision reviewing YAI's SERP — that YAI could not avoid paying out vested benefits under the SERP because of possible tax consequences or under the Board's inherent power as administrator. *Levy* v. *Young Adult Inst., Inc.*, No 13 Civ. 2861 (JPO) (SN), 2015 WL 7820497, at *2-4 (S.D.N.Y. Dec. 2, 2015) (rejecting YAI's argument that its role as administrator included the power to retroactively reduce benefits under the SERP to avoid tax consequences), *aff'd*, — F. App'x —, Nos. 17-1797 and 17-2022, 2018 WL 3773654 (2d Cir. Aug. 9, 2018) (summary order).

[13] The Court understands that the 2013 SERP Amendment gave the Board broader discretionary powers to construe the SERP's terms and determine the amount of benefits for any participant. (A.R. 81). It further understands that it was not until 2009 that the SERP imposed a requirement that a putative beneficiary file a formal claim for benefits. (*Id.* at 163-68). Plaintiff alleges she could have vested into the SERP prior to 2013 and, indeed, prior to 2008; the Court does not believe it would be a proper exercise of the Board's presently-held authority to deny Plaintiff benefits she could have attached long ago. Put differently, because Plaintiff asserts that she vested before the Board had the discretionary power it now has, the Board should not use that power to deny her benefits retroactively. To do so would be in derogation of SERP § 7.1. (*Id.* at 49).

Because the Board considered Plaintiff's claim under a misperception of its discretionary power, it appears that the Board did not consider the possibility that the 2005 ECC recommendations might not, in fact, preclude Plaintiff's participation in the SERP. Moreover, the Court is mindful of the Board's consideration of its members' negative views of Plaintiff's employment at YAI and their strong desire to avoid rewarding Plaintiff financially. To be clear, the Court does not take a position on the wisdom, or not, of the SERP benefits, but it cannot defer to an unreasonable construction of the SERP's terms. *See Levy* v. *Young Adult Inst., Inc.*, No. 13 Civ. 2861 (JPO), 2016 WL 6092705, at *1 (S.D.N.Y. Oct. 18, 2016) (holding that YAI's "belated regret about the reasonableness of [Joel] Levy's compensation does not justify reneging on its contract"), *aff'd*, — F. App'x —, Nos. 17-1797 and 17-2022, 2018 WL 3773654 (2d Cir. Aug. 9, 2018) (summary order).

Accordingly, Defendants' motion for summary judgment is denied. That said, even where a court holds that a plan administrator's decision was arbitrary and capricious, the court may not substitute its own judgment for that of the administrator. *Miller* v. *United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995). And even if it could, the Court believes that genuine disputes over the effect of the 2005 changes to SERP benefit accruals, and when and how, if at all, Plaintiff attained a vested right under the SERP, preclude the entry of judgment in Plaintiff's favor. Plaintiff's cross-motion for summary judgment is also denied.

**C.    Defendants' Motion for Summary Judgment on Plaintiff's Discrimination Claims Is Granted, and Plaintiff's Motion Is Denied**

### 1.    Applicable Law

Plaintiff also brings gender discrimination claims under Title VII, the NYSHRL, and the NYCHRL.  Plaintiff's Title VII and NYSHRL claims are reviewed under the familiar *McDonnell Douglas* burden-shifting test:  To prevail on a motion for summary judgment, Plaintiff "must first establish a *prima facie* case of discrimination by showing that [i] she is a member of a protected class; [ii] she is qualified for her position; [iii] she suffered an adverse employment action; and [iv] the circumstances give rise to an inference of discrimination." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015) (internal quotation marks and citation omitted); *accord Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 515 (2002); *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973).  If Plaintiff can establish her *prima facie* case, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors" and the "burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment."  *Vega*, 801 F.3d at 83 (quoting *Tx. Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 253-54 (1981), and *McDonnell Douglas*, 411 U.S. at 802).

The Second Circuit instructs that NYCHRL claims must be analyzed separately from state and federal claims.  *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Under the NYCHRL, a plaintiff's burden is less because she is not required to show an adverse employment

action and need only "show differential treatment — that she was treated '*less well*' — because of a discriminatory intent." *Id.* at 110 (emphasis added). Courts must "constru[e] the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Id.* at 109 (quoting *Albunio* v. *City of N.Y.*, 16 N.Y.3d 472, 477-78 (2011)).

### 2. Timeliness

Defendants first argue that Plaintiff's discrimination claims are untimely because Plaintiff was aware of the 2008 SERP Amendment that expressly limited the SERP to several named members of YAI's management — all of whom were men — by 2010, and thus her discrimination claims needed to be brought before this case was filed in 2015. (Def. Br. 23-24). Title VII requires that a complaint be filed with the EEOC within 300 days of the alleged discrimination, and bars recovery for claims arising from events more than 300 days prior. *See* 42 U.S.C. § 2000-5(e)(1). The statute of limitations for Plaintiff's NYSHRL and NYCHRL claims is three years, and those claims accrue when "an adverse employment determination is made and communicated to the plaintiff." *Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *11 (S.D.N.Y. Mar. 2, 2016).

Plaintiff filed her complaint with the EEOC on October 13, 2014 (*see* Pl. Opp. 8), therefore she may not recover for alleged discriminatory actions prior to 300 days before that date. Because the Court sees no basis for the application of the continuing violation doctrine, the Court will not assess

Plaintiff's ability to recover for acts more than 300 days before October 13, 2014. *See Valtchev* v. *City of N.Y.*, 400 F. App'x 586, 588 (2d Cir. 2010) (summary order) (citing *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 114 (2002) (holding that discrete acts of discrimination may not benefit from the continuing violation doctrine); *Stewart* v. *City of N.Y.*, No 11 Civ. 6935 (CM), 2012 WL 2849779, at *8 (S.D.N.Y. July 10, 2012) ("[T]he failure to give benefits is generally a discrete act.") Accordingly, the only alleged discriminatory act that the Court will consider under any of these statutes is the 2014 denial of Plaintiff's SERP benefits.

That said, the Court does not believe Plaintiff's discrimination claim stemming from the 2014 denial to be time-barred. Title VII claims accrue when the plaintiff knows or has reason to know of the injury that forms the basis of her complaint. *Espinoza* v. *N.Y.C. Dep't of Transp.*, 304 F. Supp. 3d 374, 385 (S.D.N.Y. 2018). As noted above, NYSHRL and NYCHRL claims accrue when the adverse action is communicated to the employee. Evidence in the record indicates that Plaintiff asked for benefits under the SERP over a period of years, and was in active discussions with YAI employees about SERP benefits into 2014, suggesting that she believed her participation still to be a possibility. (*See* Pl. 56.1 ¶¶ 87-94). While those communications suggest that Defendants did not believe her participation to be a live issue at the time, it is evident that Plaintiff was under the impression that it was. (*See* Zabell Decl., Ex. 24). Moreover, the Court is mindful that the record suggests that Plaintiff was actively misled over the years into believing her SERP participation to be a

possibility. (*See* Pl. 56.1 ¶¶ 77-85). Accordingly, the record suggests that it was not until 2014 that Plaintiff was definitively told that she would not receive SERP benefits. For this reason, the Court finds that her discrimination claims flowing from the 2014 SERP denial were timely filed.

### 3. Plaintiff's Title VII and NYSHRL Claims Fail

Plaintiff's discrimination claims center on three undisputed facts: (i) the SERP did not include any female executives; (ii) Plaintiff was not a SERP participant while Joseph Rut, her predecessor in the Controller and CFO roles, was; and (iii) Philip Levy was recorded during a conversation with Eliot Green as having said that Plaintiff was an "angry woman." (*See* Pl. Br. 23-24). Plaintiff alleges that these facts — together with the purportedly suspicious timing surrounding the implementation of the 2008 Amendment that limited the SERP to Joel Levy, Philip Levy, Stephen Freeman, and Thomas Dern — are sufficient to raise an inference of discrimination. Assuming, purely *arguendo*, that Plaintiff was qualified for her position and suffered an adverse employment action, the Court does not believe that Plaintiff has discharged her minimal burden to show an inference of discrimination.

For starters, Philip Levy's "angry woman" remark, while inartful to be sure, is simply not probative of discrimination. Courts in this Circuit consider four factors to assess whether a statement is indicative of employment discrimination:

> [i] who made the remark (i.e. a decision-maker, a supervisor, or a low-level co-worker); [ii] when the remark was made in relation to the employment decision at issue; [iii] the content of the remark (i.e.

> whether a reasonable juror could view the remark as discriminatory); and [iv] the context in which the remark was made (i.e. whether it was made in the decision-making process).

*Henry* v. *Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). No single factor is dispositive. *Id.* at 150. The content of the remark is troubling, and a juror stripping the comment from the context of the conversation in which it was uttered could find it to be discriminatory. But Defendants are correct that Philip Levy was not a decision-maker conferred with the authority to keep Plaintiff out of the SERP. (Def. Br. 21). Indeed, there is no evidence in the record that Philip Levy could unilaterally decide the issue. What is more, Philip Levy had left YAI by the time Plaintiff's request for SERP benefits was denied in 2014. (*See* A.R. 326). And even though the remark was made to Eliot Green, who was a decision-maker with respect to Plaintiff's SERP benefit, Levy says immediately before the remark that Plaintiff was "affable … wonderful … terrific" and "presents beautifully" on behalf of YAI. (Zabell Decl., Ex. 22 at 28:1-6). Plaintiff's own contention that Green told her she had been treated unfairly by being denied SERP benefits cuts against any inference that Green was tainted by Levy's remark. (*See* Pl. Dep. 225:9-226:12). Moreover, the remark was made several years before Plaintiff's request for SERP benefits in 2014, and was not made during the decision-making process. Taking all of these factors together, the Court finds that Philip Levy's remark does not support an inference of discrimination.[14]

---

[14]    The Court agrees with Defendants that Plaintiff has creatively excerpted the transcript of Levy's remarks to suggest that he said he would not put Plaintiff in the SERP *because*

35

The record similarly does not support Plaintiff's contention that the 2008 Amendment was suspiciously implemented soon after she made a request for SERP benefits. Plaintiff avers that the 2008 Amendment was implemented 24 days after the ECC discussed her request for benefits at a meeting on November 24, 2008. (Pl. 56.1 ¶ 65). But a November 18, 2008 email from Michael Connors to Craig Miller contains a completed draft of the 2008 Amendment (A.R. 162-75), reflecting that the changes were drafted prior to a discussion of Plaintiff's request. Connors's email also states that the 2008 Amendment was simply meant to implement "design changes" that memorialized reductions in benefits for the current participants. (*Id.*). While the Court does not share Connors's view that these changes were coextensive with the 2005 changes, the record shows that Connors believed they were, and this precludes an inference that the 2008 Amendment was drafted with the express purpose of excluding Plaintiff.

The Court is thus left with Plaintiff's allegations that the SERP did not have any female participants, and that she was denied entry even though Joseph Rut was given benefits under the SERP. Defendants argue that Plaintiff and Rut are not comparators because they did not hold the same positions at the same time, and because there was a material change in the tax laws between the time when Rut was admitted into the SERP in 1993 and the time when Plaintiff possibly became eligible for the SERP in the 2000s. (Def.

---

she was an "angry woman." (Def. 56.1 Opp. ¶ 86). The full transcript does not support such a causal link. The remark was made in the context of discussing whether Plaintiff could be a whistleblower against YAI. (Zabell Decl., Ex. 22 at 28:1-25).

Opp. 17-18).  "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  *Mandell* v. *Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal citation and quotation marks omitted).  Though the Court does not adopt Defendants' rationale that changes in the tax laws justified Defendants' decision to exclude Plaintiff from the SERP, it recognizes that the Board labored under this misapprehension for many years — and, more importantly, that Plaintiff's exclusion was the product of this misimpression, rather than any discriminatory animus.  In consequence, even if Plaintiff and Rut were considered to be similarly situated because Plaintiff succeeded Rut in two roles at YAI, the Court does not find that the difference in treatment supports an inference of discrimination.

On these facts, the Court cannot find that Plaintiff has discharged her minimal burden to establish a *prima facie* case of discrimination.  That said, even if she could, Plaintiff would fail on the third prong of the *McDonnell Douglas* analysis.  As noted, the Court does not agree with the reasons that Defendants proffer for their decision to deny Plaintiff's request for SERP benefits, but it does agree that the Board sincerely believed that its concerns over the SERP's tax status and Plaintiff's performance were factors it could consider.  And, more to the point, the record does not suggest that any reason given for the 2014 denial of Plaintiff's participation in the SERP was pretextual.  Plaintiff testified at her deposition that when Green called her on July 1, 2014, to tell her that her SERP benefits request had been denied, he told her that he

believed her request had been denied because Joel Levy had supported her inclusion in the SERP and that because YAI was in the midst of contentious litigation with Levy, they denied the request. (Pl. Dep. 225:9-226:12). Plaintiff went on to say that Green told her that the Board said that she had been compensated enough over the years and did not deserve more money from YAI. (*Id.*). Finally, Plaintiff recounted that Green told her that "there were negative conversations and he found them — they were disappointing as well as discriminatory." (*Id.*). Green denies making this statement. (A.R. 177 ¶¶ 3-4). Even if he did, in the face of overwhelming evidence that the Board's conduct stemmed from a desire to "clean house" at YAI, this single, hearsay-encrusted recollection by Plaintiff is insufficient to generate a triable issue of fact that there were discriminatory conversations surrounding Plaintiff's SERP participation.

### 4.   Plaintiff's NYCHRL Claim Fails

Under the NYCHRL, a plaintiff need only "show differential treatment — that she was treated '*less well*' — because of discriminatory intent." *Mihalik*, 715 F.3d at 110 (emphasis added). That said, "[t]he breadth of the NYCHRL does not preclude summary judgment in every case." *Baldwin* v. *Goddard Riverside Cmty. Ctr.*, 615 F. App'x 704, 706 (2d Cir. 2015) (summary order). Under that statute, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory … motives, or if the defendant proves the conduct was nothing more than petty slights or trivial inconveniences." *Mihalik*, 715 F.3d at 113 (internal quotation marks and

citations omitted). To be sure, Plaintiff was treated less well than certain male executives at YAI with respect to the SERP. However, for the reasons detailed above, the record does not support a holding that the differential treatment occurred in any part because of her gender.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED in its entirety; Defendants' motion for summary judgment is DENIED as to Plaintiff's ERISA claim and GRANTED as to Plaintiff's discrimination claims.

The Court understands that upon a finding that a plan administrator has acted in an arbitrary and capricious manner, the Court will generally remand the employee's claim to the administrator for further proceedings. *See, e.g.*, *Miller*, 72 F.3d at 1073. The parties have not briefed the issue of how this case ought to proceed in the event summary judgment could not issue on Plaintiff's ERISA claim, and the Court believes the parties should be heard on this issue. Accordingly, the parties are directed to submit letters to the Court by September 14, 2018, setting forth their respective positions on how this case may proceed.

The Clerk of Court is directed to terminate the motions at Docket Entries 105 and 112.

SO ORDERED.

Dated:     August 14, 2018
           New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge