UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN WEGMANN,

                              Plaintiff,

        -v.-

YOUNG ADULT INSTITUTE, INC.,
TRUSTEES OF THE SUPPLEMENTAL
PENSION PLAN FOR CERTAIN
MANAGEMENT EMPLOYEES OF
YOUNG ADULT INSTITUTE.,

                              Defendants.

15 Civ. 3815 (KPF)

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Karen Wegmann challenges Defendants' decision to exclude her

from participating in and receiving benefits under a retirement plan that is

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"),

*codified in part at* 29 U.S.C. ch. 18.  This retirement plan, known as the

Supplemental Pension Plan for Certain Management Employees (the "SERP"),

was offered by Plaintiff's former employer, Defendant Young Adult Institute

("YAI").  On May 29, 2019, the Court held a bench trial to resolve the parties'

remaining disputes concerning Plaintiff's ERISA claim.  In this Opinion, the

Court presents its Findings of Fact and Conclusions of Law pursuant to

Federal Rule of Civil Procedure 52.

        The Court has reviewed the parties' pre-trial submissions, the trial

transcript, the trial exhibits, and the parties' post-trial submissions.  The

Court's review of these documents is enhanced by its own recollection of the

trial and assessment of the credibility of the witnesses.  For the reasons that

follow, the Court finds for the Plaintiff and schedules oral argument to determine the amount of damages owed to Plaintiff.

## PROCEDURAL HISTORY

Prior proceedings before this Court narrowed the issues in dispute at the bench trial. Therefore, for completeness, the Court includes the relevant procedural history of the case.

Plaintiff filed her Amended Complaint on April 15, 2016, asserting gender discrimination claims and an ERISA claim. (Dkt. #32). In an Opinion and Order dated August 5, 2016, the Court stayed this action to give Plaintiff an opportunity to exhaust her administrative remedies at YAI. (Dkt. #43). On August 12, 2016, Plaintiff made a formal claim for benefits under the SERP. Plaintiff's claim was denied on November 10, 2016; she appealed, and her appeal was denied on April 17, 2017. Following the resolution of Plaintiff's administrative claim, the Court lifted the stay of this litigation and commenced discovery. (Dkt. #53-54). Following the close of fact discovery, the parties submitted cross-motions for summary judgment concerning Plaintiff's remaining claims: one brought under ERISA and others alleging that Defendants had engaged in gender discrimination. (Dkt. #103, 105-126).

The Court granted Defendants' motion for summary judgment on the gender discrimination claims, but denied the cross-motions for summary judgment as to Plaintiff's ERISA claim. *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2018 WL 3910820 (S.D.N.Y. Aug. 14, 2018) ("*Wegmann*

*III*").[1]  The Court determined that the decision of YAI's Board of Trustees (the "Board") to deny Plaintiff benefits under the SERP was arbitrary and capricious; the Board had found that Plaintiff could not be admitted to the SERP because she had not received Board approval, but the SERP did not contain such a requirement.  *Id.* at *10-13.  Though the decision to deny Plaintiff benefits was based on an inaccurate reading of the SERP, the Court did not go so far as to find that the Board was required to grant Plaintiff SERP benefits.  *Id.*  Instead, the Court concluded that additional questions of fact remained concerning whether Plaintiff was entitled to SERP benefits.  *Id.*  Thus, the Court did not grant her summary judgment on the ERISA claim. *Id.*

In advance of the bench trial, Defendants abandoned many of the defenses they had previously raised.  (Dkt. #145).  By the time of the bench trial, Defendants disputed: (i) whether Plaintiff was a participant in the SERP; (ii) whether Plaintiff's ERISA claim was time-barred by the applicable statute of limitations; (iii) whether Plaintiff's ERISA claim was barred by the equitable defenses of laches or equitable estoppel; and (iv) if Plaintiff were found to be entitled to benefits, the extent of the benefits owed under the SERP.  (Dkt. #164 ¶¶ 243-277; Dkt. #147 at 13-24).

---

[1]     In previous decisions, the Court had dismissed Plaintiff's original complaint, *see Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *1 (S.D.N.Y. Mar. 2, 2016) ("*Wegmann I*"), and stayed the case pending exhaustion of Plaintiff's administrative remedies, *see Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 8711557, at *1 (S.D.N.Y. Aug. 5, 2016) ("*Wegmann II*").

# FINDINGS OF FACT[2]

## A.   The Parties

YAI is a New York not-for-profit and tax-exempt corporation that operates a network of agencies that provide programs and services to intellectually and developmentally disabled individuals.  (Stip. ¶ 1).  Plaintiff began working for YAI as its Assistant Controller on December 15, 1986.  (*Id.* at ¶ 10).  Plaintiff served as Controller of YAI from 1992 to 2003; in 2003, she took on the additional role of Director of Finance.  (*Id.* at ¶¶ 11-12).  On July 1, 2006, Plaintiff became the Chief Financial Officer ("CFO") after the prior CFO, Joseph Rut, passed away.  (*Id.* at ¶ 13).  Plaintiff served as CFO until she became the Chief Business Officer ("CBO") on July 1, 2012.  (*Id.* at ¶ 18).  Plaintiff resigned from YAI effective June 30, 2014.  (*Id.* at ¶ 20).

## B.   The SERP

### 1.   The 1985 SERP

YAI established the SERP on July 1, 1985.  (Stip. ¶ 4).  The SERP is a "top-hat" pension plan, maintained by YAI for a select group of management or highly compensated employees.  (*Id.* at ¶ 28).  *See generally Wegmann III*, 2018

---

[2]  This Court relied on several documents in drafting this Opinion, including the transcript of the trial ("Trial Tr." (Dkt. #159)) and the exhibits that Plaintiff ("Pl. Ex.") and Defendants ("Def. Ex.") introduced during that trial; Defendants' Pre-Trial Memorandum of Law ("Def. Br." (Dkt. #147)); Plaintiff's Pre-Trial Memorandum of Law in Opposition ("Pl. Opp." (Dkt. #152)); Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Pl. FFCL" (Dkt. #163)); Defendants' Proposed Findings of Fact and Conclusions of Law ("Def. FFCL" (Dkt. #164)); and the Stipulations of Fact and Law ("Stip.") contained in the Joint Pretrial Statement (Dkt. #145).  For ease of reference, the Court will refer to the page numbers of Bates-stamped exhibits by the numerical portion of the relevant Bates numbers.  Further, citations to a witness's sworn statements will be referred to using the convention "[Name] Decl.", and citations to a witness's deposition testimony will be referred to using the convention "[Name] Dep."

WL 3910820, at *8 (discussing top-hat plans).  The Board of Trustees of YAI

serves as the Plan Administrator of the SERP.  (Stip. ¶ 5).

The original version of the SERP (the "1985 SERP") stated, in § 10.1.2

under the title "Eligibility":

> Each Management Employee who shall complete 15
> years of service with [YAI] and whose compensation is
> not fully considered in the computation of Federal
> Social Security benefits, shall be eligible to participate
> in the Plan.  Entry into the Plan as a Plan Participant
> shall be on the July 1 coincident with or next following
> the employee's compliance with the Eligibility
> Requirements.

(Def. Ex. A at 380).  Though the SERP did not define Management Employee or

Eligibility Requirements, it defined Participant as "an employee who satisfied

the eligibility requirements of Subsection 10.1.2." (*Id.*).  The Court accordingly

refers to the requirements listed in § 10.1.2 of the SERP as the "Eligibility

Criteria."  The SERP granted the Board the power to enact amendments

through resolution of the Board or the Board's Executive Compensation

Committee ("ECC"), but provided that no amendment could have the effect of

"directly or indirectly divesting the interest of any [SERP] participant in any

amount that he or she would have removed had he terminated his employment

with the Institute immediately prior to the effective date of such amendment."

(*Id.* at 372).

The SERP provided that upon termination, participants would be entitled

to an annual annuity, paying a specified monthly amount equal to:

[(a) times (b) times (c)] less (d) less (e) less (f):

(a)     Three percent (3%) times

(b)     All years and partial years of service with [YAI] (not to exceed 33 1/3), times

(c)     The highest total annual earnings of the participant while in the employ of YAI, less

(d)     The benefits payable under the YAI and Workshop, Inc. Discretionary Defined Contribution Retirement Plan, less

(e)     The benefits payable under the YAI and Workshop, Inc. Employees' Limited Defined Benefit Pension Plan, less

(f)     The benefits payable under The Make-Up Plan For YAI.

With adjustments made annually, following the commencement of any payments, in proportion to increases in the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) or any succeeding index which the Bureau of Labor Statistics shall deem a replacement for such index.

(Def. Ex. A at 382-83).  By the time a participant in the SERP works at YAI for 19 years, 100% of his or her SERP benefits would be nonforfeitable.  (*Id.* at 383).  For participants hired in 1978 or later, benefits would be paid once the individual reached the age of 65.  (*Id.*).

In April 1993, the Board adopted a resolution approving Joel Levy, Philip Levy, Joseph Rut, Enid Barbell, Stephen Freeman, and Thomas Dern as participants in the SERP.  (Def. Ex. C at 118).  As of the date of adoption, neither Dern nor Rut had completed 15 years of service at YAI, and their respective admissions into the SERP were conditioned on satisfaction of that requirement.  (*Id.*).  At the time, Joel Levy was the Chief Executive Officer ("CEO"), Philip Levy was the Chief Operating Officer ("COO"), Freeman and

Dern were executive directors, Rut was the CFO, and Barbell was Joel Levy's executive assistant. (*Id.* at 119).

### 2. The 2008 Amendment to the SERP

On March 22, 2005, the Board adopted three recommendations from the ECC to limit benefit accruals under the SERP to the "top 5 executives[,]" namely, the CEO, the COO, the two Associate Executive Directors, and the CFO. (Def. Ex. H, I, J).[3] These 2005 limitations were formally incorporated into the language of the SERP in an amendment dated December 18, 2008, with an effective date of July 1, 2007 (the "2008 Amendment"). (Def. Ex. AT). The 2008 Amendment also established an administrative claims procedure for individuals claiming benefits under the SERP — something that was lacking in the original version — and changed the Eligibility section to state: "Effective July 1, 2008, the Plan's sole Participants shall be Joel M. Levy, Philip H. Levy, Stephen Freeman, and Thomas Dern." (*Id.* at 419, 423).

The 2008 Amendment also purported to change the method by which SERP benefits were calculated:

[(a) times (b) times (c)] less (d) less (e) less (f):

(a)     Three percent (3%) times

(b)     All years and partial years of service with [YAI] (not to exceed 33 1/3), times

(c)     The highest total annual earnings of the participant while in the employ of [YAI], less

---

[3]     As discussed in greater detail below, the Board's actions in 2005 failed to amend the SERP. *See infra* at 26-29; *Levy* v. *Young Adult Inst, Inc.*, 744 F. App'x 12, 15 (2d Cir. 2018) (summary order).

<div style="padding-left: 2em;">

(d)    The benefits paid or payable under the YAI Discretionary Defined Contribution Retirement Plan, less

(e)    The benefits payable under the YAI and Workshop, Inc. Employees' Limited Defined Benefit Pension Plan, less

(f)    The benefits payable under the YAI and Workshop, Inc. Limited Defined Benefit Target Plan, less

(g)    The benefits paid or payable under The Make-Up Plan For YAI.

With adjustments made annually, following the commencement of any payments, in proportion to increases in the Consumer Price Index – All Urban Consumers (CPI-U) or any succeeding index which the Bureau of Labor Statistics shall deem a replacement for such index.

</div>

(Def. Ex. AT at 425-26).  Notwithstanding that benefit formula, the 2008 Amendment provided that, for certain specified participants in the SERP, their benefits would be capped at the higher of (i) the participant's accrued benefits as of June 30, 2008, or (ii) 65% of the participant's highest total annual earnings.  (*Id.* at 426).  Further, the 2008 Amendment defined "Total Annual Earnings" to include all cash compensation (salary plus bonuses) paid through any agency affiliated with the YAI National Institute for People with Disabilities Network, excluding the bonuses denominated "YAI Bonus II" and "YAI Interest Bonus."  (*Id.*).

### 3.     The 2013 Amendment to the SERP

On August 6, 2013, the SERP was further amended (the "2013 Amendment") to grant the Board the powers, *inter alia*, to "interpret the Plan, … to resolve ambiguities, inconsistencies and omissions," and "to

determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan." (Def. Ex. DA at 391). As to the Board's interpretations of Plan terms, the 2013 Amendment stated that such determinations "shall be binding, final and conclusive on all interested parties[.]" (*Id.* at 391).

## C. Plaintiff's Participation in, and Understanding of Her Participation in, the SERP

Each of Defendants' affirmative defenses relates to Plaintiff's understanding of her status as an actual or potential participant in the SERP; how that understanding evolved over time; and when Plaintiff came to know that she had been denied participation in the SERP. Accordingly, the Court makes the following findings of fact relating to Plaintiff's understanding of her participation and her entitlement to participate in the SERP over time.

### 1. Plaintiff Satisfied the 1985 SERP's Eligibility Criteria and Believed Board Approval Was Necessary

In December 2001, Plaintiff met two of the three criteria of the 1985 SERP: she (i) had worked at YAI for 15 years; and (ii) had a compensation that was not fully considered in the computation of Federal Social Security benefits. (Stip. ¶¶ 15-16; Def. FFCL ¶ 63). Plaintiff also believed she met the third criterion, requiring that she be a management employee, because she considered her job as Controller to be a management-level position. (Trial Tr. 12:4-9). However, the Board determined that Plaintiff was not a Management Employee within the meaning of the SERP until she was promoted to the position of CFO on July 1, 2006; the Court has already

concluded that this determination was reasonable. *See Wegmann III*, 2018 WL 3910820, at *10-11. Accordingly, the Court finds that Plaintiff satisfied the Eligibility Criteria of the 1985 SERP on July 1, 2006.

It appears to the Court that, in July 2006, none of the relevant parties believed that Plaintiff would be automatically enrolled in the SERP simply because she had satisfied the Eligibility Criteria.[4] Defendants believed that no person eligible for inclusion in the SERP could be included in the SERP absent express approval from the Board. (Def. FFCL ¶¶ 47-49; Fava Decl. ¶ 26). Plaintiff, too, believed Board approval was necessary to be enrolled in the SERP. (Trial Tr. 22:23-23:7 ("Q. Did you understand that part of that process was that Dr. Levy would recommend you to the board, but the board would ultimately have to approve it, as I read? ... A. Yes.")).[5] But Plaintiff did not understand the requisite Board approval to involve an exacting second-level

---

[4]    As explained in the Court's August 14, 2018 Opinion, the parties were incorrect on this point. *Wegmann* v. *Young Adult Institute, Inc.*, No. 15 Civ. 3815 (KPF), 2018 WL 3910820, at *11-13 (S.D.N.Y, Aug. 14, 2018) ("*Wegmann III*"). The plain language of the SERP states that an individual who satisfies the Eligibility Criteria shall be entered into the SERP on the July 1 coincident or next following the employee's satisfaction of the Eligibility Criteria. *Id.* The SERP does not confer any discretionary authority upon the Board to exclude an individual who has satisfied the Eligibility Criteria. *Id.*

[5]    The Court acknowledges that Plaintiff's testimony concerning whether she was automatically enrolled in the SERP beginning in 2001 was not always clear. At one point, Plaintiff testified that she understood that, once she hit the "15-year period and had met the other criteria, it was automatic that [she was] in the SERP as of 2001." (Trial Tr. 16:5-9). But after a careful analysis of all of Plaintiff's statements in context, the Court finds that Plaintiff believed Board approval constituted a separate rubber stamp that she had to acquire. (*Id.* at 15:4-10 ("THE COURT: Were you actually a member of the SERP at that point? A: Yes. THE COURT: Nothing else had to be done? A: I think — the only other thing was a formality, as Joel explained to me, which is that he would put me in the plan, you know.")). This finding is further supported by Plaintiff's Proposed Findings of Fact (Pl. FFCL ¶ 44 ("Ms. Wegmann believed that she automatically became a SERP participant upon meeting the eligibility requirements with the only other step in the process being an administrative formality[.]")) and Plaintiff's efforts to secure Board approval, as discussed in greater detail below. *See infra* at 11-13, 18-20.

review.  Instead, Plaintiff understood that approval was a mere administrative formality — a rubber stamp needed to finalize her enrollment and to permit the calculation of her benefits to begin.  (Pl. FFCL ¶ 44; Trial Tr. 14:7-15:12; *id.* at 25:17-27:19).

## 2. Plaintiff Believed that Board Approval Was Certain to Be Granted

Both parties agree that, from 2004 to 2009, Plaintiff had multiple conversations with YAI CEO Joel Levy regarding her participation in the SERP. (Def. FFCL ¶ 112; Pl. FFCL ¶¶ 43-44).  Plaintiff has consistently maintained that Dr. Levy told her that Board approval was necessary for her participation in the SERP *and* that the Board was certain to approve her participation. (Wegmann Decl. ¶¶ 14-15; Trial Tr. 23:8-14).  Dr. Levy remembers the conversations slightly differently, testifying that he believed Plaintiff deserved to be and should be in the SERP and that he would do everything in his power to get her into the SERP, but that he did not promise her that she would be in the SERP.  (Levy Dep. 4:8-17, 20:8-21:17, 54:16-22).

Dr. Levy recommended to the Board[6] that Plaintiff be approved for inclusion in the SERP a total of four times from approximately 2004 to 2008. (Levy Dep. 5:3-10, 21:6-17).  The Board declined to approve Plaintiff for inclusion in the SERP each time Dr. Levy raised the issue.  The Board declined

---

[6]     Testimony regarding whether Dr. Levy recommended Plaintiff's approval into the SERP to the Board or to the ECC is inconsistent.  (*See generally* Levy Dep.).  Because preliminary approval by the ECC was considered a prerequisite to approval by the full Board (Def. FFCL ¶ 55), the Court does not consider the distinction to be a meaningful one for purposes of its Opinion, and refers to the entity to which Dr. Levy made his recommendations as the Board.

the first recommendation because the Board believed it did not understand the SERP and wanted to engage in further review of the document; the Board did not decline to approve based on any concern specific to Plaintiff. (*Id.* at 14:21-15:11). The second time Dr. Levy recommended Plaintiff to the Board, the Board declined to act because they wanted a report addressing how much it would cost to include Plaintiff in the SERP. (*Id.* at 15:12-23). On the third occasion, the Board had just approved changes to the SERP that had not yet been formalized by the 2008 Amendment and wanted to postpone addressing Plaintiff's inclusion. (*Id.* at 19:4-16). The fourth and final time Dr. Levy recommended Plaintiff to the Board for inclusion in the SERP was in 2008, when Dr. Levy was nearing the end of his tenure at YAI. (*Id.* at 19:17-21:13). The Board told Dr. Levy that they intended to defer consideration of Plaintiff's participation in the SERP until after a new CEO and a new chairman of the Board had been appointed, so the application could be examined with "fresh eyes." (*Id.* at 21:6-17). Dr. Levy fully apprised Plaintiff regarding each of these interactions. (*Id.* at 68:14-69:11).

The Court credits the testimony of Plaintiff and Dr. Levy and finds that Plaintiff was led to believe that Board approval was required to enter into the SERP, and that such approval remained, at the least, a very real possibility through 2009.[7] The fact that the Board had declined to approve Plaintiff for inclusion on the SERP in prior instances would not have provided Plaintiff with

---

[7]     As will be discussed further below, contemporaneous documents support the finding that Plaintiff maintained this belief that Board approval was a possibility into 2014.

clear notice that she would never be approved, because no declination was said to be final or to have been based on Plaintiff's lack of fitness or failure to qualify. Indeed, the fourth time the Board declined to approve Plaintiff, Dr. Levy told her that the Board wished to reevaluate her inclusion in the SERP after a new CEO was appointed in 2009. (Levy Dep. 19:17-21:17, 68:14-69:11). Further, the Court finds credible Plaintiff's testimony that she understood her conversations with Dr. Levy to mean that Board approval was not merely a possibility, but a certainty.[8]

Defendants argue that the record proves the inverse is true: Plaintiff knew or should have known that she would never be included in the SERP. (Def. FFCL ¶¶ 136-203). The Court disagrees. In this regard, Defendants point to evidence ostensibly demonstrating that Plaintiff herself did not believe she was included in the SERP from 2006 through 2014, including:

- Tax forms that Plaintiff viewed and approved during her tenure as CFO of YAI that listed the participants of the SERP but did not include Plaintiff's name (*see, e.g.*, Def. Ex. AD, AZ; Fava Decl. ¶ 50);

- Emails that Plaintiff received or sent during her tenure as CFO of YAI that manifested her understanding that she was not one of the participants in the SERP and no funds were being set aside for her benefits (*see, e.g.*, Def. Ex. AF, AV, BA);

---

[8] Defendants argue that Plaintiff's claim that she believed her SERP participation was certain is undermined by Plaintiff's testimony that she understood that both the SERP formula and the resulting calculation of her benefit could change. (Def. FFCL ¶ 101; Trial Tr. 72:5-20). According to Defendants, if Plaintiff had truly believed she would definitely participate in the SERP, she would have understood that the formula could not change. The Court disagrees, because the SERP formula was subject to change even for its current participants, as evidenced by the 2008 Amendment to the SERP. (Def. Ex. AT).

- Meetings that Plaintiff attended during her tenure as CFO of YAI in which she did not challenge representations that the participants in the SERP did not include her (*see, e.g.*, Def. Ex. BJ; Trial Tr. 97:21-99:14); and

- Plaintiff's testimony that she never told anyone at YAI that she was a participant in the SERP (*see* Trial Tr. 12:4-18).

The Court does not question the authenticity of these documents or the credibility of the supporting testimony. And the Court accepts that each supports a finding that Plaintiff did not believe herself to be a fully-processed, Board-approved participant in the SERP. But the evidence does nothing to undermine Plaintiff's testimony that she believed she could and would receive Board approval to participate in the SERP.[9]

Defendants also cite to testimony provided by Attorney Michael P. Connors for the proposition that Plaintiff knew the SERP was closed to her and to any other potential new participants. By way of background, Mr. Connors was engaged by YAI in 2007 "to serve as outside counsel on matters involving YAI's employee benefits and executive compensation programs, including the SERP." (Def. FFCL ¶ 80; Connors Decl. ¶¶ 6-7). Mr. Connors understood that

---

[9] Defendants claim that, as CFO, Plaintiff should have known that YAI ought to have been setting aside funds beginning in 2006 for eventual payment of Plaintiff's benefits. (Def. FFCL ¶¶ 144-47). The fact that Plaintiff was not insisting that funds be set aside, Defendants say, manifests her belief that she would not be included in the SERP. (*Id.* at ¶¶ 147, 157, 180). The Court does not find this line of argument convincing. Though Plaintiff may have understood that it would be a best practice to begin allocating funding for her SERP benefits at the earliest possible date, she was not in a position to demand that such allocation happened before she was a participant in the SERP, which Plaintiff believed required Board approval. (*See* Trial Tr. 90:1-9 ("I knew there was an amount of money in the fund, and that when it came time for my calculation or I was closer to retirement that it would be calculated.")).

certain negative tax consequences would follow if any new participants were added to the SERP.  (Connors Decl. ¶¶ 10, 15-16).  Mr. Connors believed everyone at YAI knew that the SERP was closed and could not admit new participants.  (Trial Tr. 214:14-18).

At trial, Mr. Connors testified that he had spoken with Plaintiff about retirement benefits, but understood these conversations to have referred to *a* SERP — meaning some potential, hypothetical SERP — but not *the* 1985 SERP. (Trial Tr. 216:7-14).  What is more, Mr. Connors said that he believed Plaintiff understood that they were talking about her possible participation in *a* SERP, not *the* SERP, because he "thought [he] made it obvious to everybody all the time" that *the* SERP was closed.  (*Id.* at 216:15-21).  If he had understood that Plaintiff wanted to be in *the* SERP, Mr. Connors testified that he "would have" told her that she could not be added due to the potential tax consequences. (Connors Decl. ¶ 29).  But Mr. Connors admitted having no specific recollection of speaking to Plaintiff about the SERP being closed, or about potential tax consequences that might arise from admitting a new participant into the SERP. (Trial Tr. 216:22-217:7).

The Court credits Mr. Connors' testimony that he understood the SERP to be closed to new participants from the moment he was engaged as outside counsel for YAI.  But this belief was born of his understanding of the negative tax consequences that would result if the SERP were not closed, based on his knowledge as an expert in executive compensation.  Plaintiff did not share that knowledge.  (Trial Tr. 67:7-69:15).  Mr. Connors has no specific recollection to

rebut Plaintiff's testimony that she did not discuss tax consequences with him and that he never told her she could not be included in the SERP. (*Id.* at 69:18-70:21, 216:15-217:7). Accordingly, the Court finds that, though Mr. Connors may have understood the SERP to be closed, he did not tell Plaintiff that. The misunderstanding between the parties may have been caused by the subtle distinction in terminology that Mr. Connors identified: While he believed they were discussing Plaintiff's inclusion in a hypothetical supplemental pension plan that had not been created (which Mr. Connors thought to be possible), Plaintiff believed they were discussing her inclusion in the SERP that already existed.[10]

Thus, the Court finds that Plaintiff believed her participation in the SERP was dependent upon Board approval, and that such approval was not just possible, but certain.

### 3. The 2008 Amendment Did Not Alter Plaintiff's Belief That Board Approval Was Certain

Even if Plaintiff did at some point believe that the Board would continue to consider and eventually approve her inclusion in the SERP, Defendants contend that the 2008 Amendment put Plaintiff on notice that the SERP was

---

[10] Plaintiff recalled that at one point "Mr. Connors congratulated [her] on the 'good news' concerning [her] SERP participation." (Wegmann Decl. ¶¶ 53-54). Plaintiff understood that to mean that her participation in the SERP was certain. Mr. Connors, however, stated that he never told Plaintiff that she would be included in the SERP. (Connors Decl. ¶ 30). Similarly, Marcella Fava, who was Chairwoman of the Board of YAI from 1982 to 2009, testified that she and other members of the Board understood that each time Dr. Levy recommended Plaintiff's participation in the SERP to the Board, Plaintiff was actually seeking some additional retirement benefit separate from inclusion in the YAI SERP. (Fava Decl. ¶ 56; Def. FFCL ¶¶ 102-106). These misunderstandings, too, are explained by the miscommunication between the parties concerning whether they were discussing the YAI SERP, or some other retirement benefit.

forever closed to her.  (Def. FFCL ¶¶ 158-163; Def. Br. 10-11, 13-14).  To review, the 2008 Amendment revised § 10.1.2 of the SERP, which had set forth the Eligibility Criteria, to state that "Effective July 1, 2008, the Plan's sole Participants shall be Joel M. Levy, Philip H. Levy, Stephen Freeman, and Thomas Dern." (Def. Ex. AT at 423).  Defendants argue that, had Plaintiff read the 2008 Amendment, she would have known that she was not in the SERP and could not be included in the SERP in the future.  (Def. Br. 10-11).  And, according to Defendants, Plaintiff must have been aware of the 2008 Amendment once it was adopted on December 18, 2008.  (Def. FFCL ¶¶ 247-248).

To establish Plaintiff's knowledge of the amendment, Defendants cite to testimony from: (i) Mr. Connors, stating that Plaintiff would have needed a copy of the 2008 Amendment to complete her duties as CFO to administer the SERP (Connors Decl. ¶ 26); and (ii) Dr. Levy, stating that he thought it would have been "given to her as a holder of the documents" (Levy Dep. 123:21-124:4). (Def. FFCL ¶¶ 158-163, 247-248).  From this evidence, Defendants maintain that Plaintiff saw the 2008 Amendment in 2008 and knew then that she could not be included in the SERP.  (*Id.*).

The Court disagrees with Defendants on both counts.  *First*, the Court finds that Plaintiff saw the amendment for the first time in July 2010.  Plaintiff credibly testified that she received the 2008 Amendment for the first time in July 2010, when it was emailed to her by an external actuary that had been hired by YAI.  (Trial Tr. 34:1-7).  Plaintiff's testimony is supported by the

physical record:  The first evidence of Plaintiff having the 2008 Amendment in her possession comes from an email attaching the 2008 Amendment, sent to Plaintiff on July 9, 2010, from an external actuary.  (Pl. Ex. P-16).  In that email, the actuary says that "[Phillip Levy (the CEO of YAI in 2010)] has requested that in order to protect the confidentiality of these documents, no copies be provided to anyone without his express approval."  (Pl. Ex. P-16).  This suggests that the 2008 Amendment was not shared freely within YAI, and that Plaintiff had indeed never seen it before.  Furthermore, the witnesses on whom Defendants rely to establish that Plaintiff received the 2008 Amendment contemporaneously with its issuance did not testify that they gave her the document or knew that she had received the document in that year.  The witnesses merely stated that they believed she would have received the documents at that time.  This is insufficient to establish that Plaintiff saw the 2008 Amendment before July 2010.

*Second,* the Court is not convinced that Plaintiff was made aware that she would be excluded from the SERP when she saw the 2008 Amendment. The amendment did provide a list of the "sole participants" in the SERP effective July 1, 2008.  But Plaintiff had been told by Dr. Levy that the Board had considered adding her to the SERP in 2008, and that the Board would take up that issue again in 2009, after a new CEO was installed.  (Levy Dep. 19:17-21:17, 68:14-69:11).  And Phillip Levy, the new CEO and Dr. Joel Levy's brother, had also brought Plaintiff's inclusion in the SERP to the Board sometime after 2009.  (Green Dep. 145:9-146:4).  Even as late as 2014, Plaintiff

made a request to the Board that manifested her understanding that she was "entitled to the SERP as an executive." (Pl. Ex. P-14).

The Court observes that Plaintiff has given conflicting testimony on the topic of whether she understood the 2008 Amendment to have barred her from participating in the SERP. During her deposition, she responded affirmatively when asked if the 2008 Amendment "was saying [she was] not and would not be a participant." (Trial Tr. 45:12-14). At trial, however, Plaintiff said "no" when asked if she knew the amendment "was saying that [she was] not and would not be a participant." (*Id.* at 44:23-45:1). On the record before it, which features multiple instances in which Plaintiff attempted to gain Board approval to participate in the SERP even after she had seen the 2008 Amendment, the Court finds that Plaintiff was not aware that the 2008 Amendment meant that she was not and would not be a member of the SERP. Rather, the 2008 Amendment led Plaintiff to believe that she was "includable, but not included" in the SERP. (*Id.* at 44:11-14).

### 4. Plaintiff Was Told She Would Not Be in the SERP for the First Time in 2014

In the spring of 2014, Plaintiff approached Eliot Green — then Chairman of the Board, which administered the SERP — to discuss her SERP benefits. (Wegmann Decl. ¶ 55). Plaintiff testified that Mr. Green informed her that, because she was nearing retirement from the organization, YAI would have Mr. Connors begin to prepare her SERP package. (*Id.* at ¶ 57). The fact that Plaintiff had a conversation with Mr. Green about her entitlement to SERP benefits is supported by an email sent from Matthew Sturiale (the CEO of YAI

in 2014) to Mr. Green on May 1, 2014.  (Pl. Ex. P-14).  In that email, Mr. Sturiale wrote:  "As discussed, [Plaintiff] is looking for a contribution to her pension to get her to that 50%.  This will require another level for analysis based upon her thinking of being entitled to SERP as an executive.  Do you want ... me to approach Mike Connors on doing a comp study?"  (*Id.*).  Thus, the Court finds that even if Defendants uniformly believed that Plaintiff was not entitled to SERP benefits, Plaintiff still believed she would be included in the plan as of 2014.[11]

On July 1, 2014, Plaintiff received a phone call from Mr. Green, who told her that the Board had denied her SERP benefits.  (Wegmann Decl. ¶¶ 63-67).  Plaintiff understood from this conversation that she would never receive benefits under the SERP.  (*Id.*).  The Court finds that that conversation was the first time anyone at YAI had unequivocally told Plaintiff that she would never be a participant in the SERP.

---

[11]     Defendants argue that communications between Plaintiff and Mr. Sturiale in 2014 indicate that Plaintiff was seeking some benefit other than participation in the SERP. (Def. FFCL ¶ 281).  In one such communication, Plaintiff provides Mr. Sturiale with a "calculation for [her] retirement showing the YAI plan is 30.7%."  (Pl. Ex. P-13).  And in the same email in which Mr. Sturiale told Mr. Green that Plaintiff thought she was "entitled to the SERP as an executive," Mr. Sturiale wrote that Plaintiff was "looking for a contribution to her pension to get her to that 50%."  (Pl. Ex. P-14).  The Court does not believe that these communications suggest Plaintiff did not believe she was entitled to SERP benefits.  As an initial matter, the emails do not suggest that Plaintiff was seeking pension benefits to the exclusion of benefits under the SERP.  To the contrary, Mr. Sturiale expressly stated that Plaintiff believed she was entitled to benefits under the SERP.  (*Id.*).  And even if Plaintiff were negotiating with Defendants regarding an increase in her pension benefits (as opposed to full benefits under the SERP), this would not necessarily suggest that Plaintiff believed she had no right to SERP benefits.  Plaintiff may have simply been seeking to reach a settlement with YAI regarding her SERP benefits, as other participants in the SERP had already done.  (*See* Def. FFCL ¶ 203 (stating that Philip Levy, Stephen Freeman, Thomas Dern, and Kathleen Rut had settled their potential SERP claims by August 1, 2013)).

On August 12, 2016, Plaintiff submitted a formal claim for benefits with the SERP Plan Administrator. (Stip. ¶ 22). That claim was denied on November 10, 2016. (*Id.* at ¶ 23). Plaintiff appealed the denial on January 15, 2017, and that appeal was denied on April 17, 2017. (*Id.* at ¶¶ 24-25). Plaintiff was informed that the April 17, 2017 letter was meant as a final decision subject to review under ERISA.

**D.    Plaintiff's Compensation at YAI**

If the Court were to determine that Plaintiff was a participant in the SERP and entitled to SERP benefits, the parties further disagree regarding the amount of benefits Plaintiff is owed. The Court makes the following findings of fact necessary to calculate the amount of benefits Plaintiff should be paid if she were a participant in the SERP.

Each year, Plaintiff received several categories of payment and benefits from YAI:

- Regular salary/base pay

- Longevity bonus

- Car allowance

- Long-term disability

- Bonus

(Pl. FFCL ¶¶ 78-79). Plaintiff also received a bonus from the New York League of Early Learning (the "NYL"). The NYL is 501(c)(3) nonprofit entity that is managed by YAI, but is not owned by YAI. (Trial Tr. 53:25-54:6). Plaintiff also served as CFO of the NYL. (*Id.* at 52:20-22). The bonuses Plaintiff received

from NYL were paid directly by NYL, but the amount of those bonuses was determined by Dr. Levy, who served as CEO of NYL while he was CEO of YAI. (*Id.* at 52:7-14, 53:19-22).

## CONCLUSIONS OF LAW

Based on the foregoing facts, Plaintiff sought review of Defendants' decision to deny her benefits under the SERP by bringing an ERISA claim. The Court determined in a prior Opinion that the Board's decision was arbitrary and capricious, but the Court was unable at that time to determine if Plaintiff was in fact a participant in the SERP and owed benefits accordingly. *Wegmann III*, 2018 WL 3910820, at *11-13. For the reasons that follow, the Court now concludes that Plaintiff is a participant in the SERP and attained a vested interest in the SERP on July 1, 2006. Further, the Court rejects Defendants' contentions that Plaintiff's ERISA claim is barred by the applicable statute of limitations, or by the defenses of laches or equitable estoppel.

**A.    Plaintiff Became a Participant in the SERP**

**1.    Legal Standards for Reviewing ERISA Claims**

It is well-settled that "[t]he default standard of review for a plan administrator's underlying benefits determination is *de novo*." *Elizabeth W.* v. *Empire HealthChoice Assurance, Inc.*, 709 F. App'x 724, 726 (2d Cir. 2017) (summary order) (citing *Firestone Tire & Rubber Co.* v. *Bruch*, 589 U.S. 101, 111-12 (1989)). However, an administrator is entitled to arbitrary and capricious review so long as the administrator shows that it has "discretionary authority to determine eligibility for benefits or to construe the terms of the

plan." *Sigal* v. *Metro. Life Ins. Co.*, No. 16 Civ. 3397 (JPO), 2018 WL 1229845, at *5 (S.D.N.Y. Mar. 5, 2018) (citing *Krauss* v. *Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008)). The Court has already determined that the SERP entitles the Plan Administrator — here, the Board — to the deferential arbitrary and capricious standard of review. *Wegmann III*, 2018 WL 3910820, at *8.[12]

The scope of arbitrary and capricious review is narrow, and a denial of benefits may be overturned only if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Roganti* v. *Metro. Life Ins. Co.*, 786 F.3d 201, 211 (2d Cir. 2015) (quoting *Pagan* v. *NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached" and "requires more than a scintilla but less than a preponderance." *Celardo* v. *GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003). Given the narrow scope of review, the Court may not substitute its own judgment for that of the administrator. *Id.* The Court's review is generally

---

[12]   As the Court noted in its prior Opinion, the SERP is a "top hat" plan that is exempt from many of ERISA's provisions. *Wegmann III*, 2018 WL 3910820, at *8. The Second Circuit has not directly addressed a split among the Circuits concerning whether *de novo* or arbitrary and capricious review should apply to top hat plans. *Id.* (discussing *Am. Int'l Grp., Inc. Amended & Restated Executive Severance Plan* v. *Guterman*, 496 F. App'x 149, 150-51 (2d Cir. 2012) (summary order)). Furthermore, this Court noted that Plaintiff herself had argued that *de novo* review was appropriate because the version of the SERP that was operative at the time she vested into the plan did not entitle the Board to deference. Because the Court concluded that Defendants' review of Plaintiff's claim was deficient under the more generous arbitrary and capricious standard, it did not resolve a dispute over which standard is appropriate. *Id.* It need not do so here either; even when employing an arbitrary and capricious standard of review, the Court concludes that Defendants' decision denying Plaintiff's benefits was erroneous, and that she is in fact a participant in the SERP.

confined to the administrative record; it "may expand its review beyond the administrative record, but only for good cause shown." *Knopick* v. *Metro. Life Ins. Co.*, 457 F. App'x 25, 28 (2d Cir. 2012) (summary order) (internal citations omitted).[13]

Because the Court's review under the arbitrary and capricious standard is limited to the administrative record, "it follows that, if upon review a district court concludes that the [administrator's] decision was arbitrary and capricious, it must remand to the [administrator] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'" *Miller* v. *United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (citing *Wardle* v. *Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 828 (7th Cir. 1980)).

### 2. Plaintiff Attained a Vested Right in the SERP in 2006, and Defendants' Decision to the Contrary Was Arbitrary and Capricious

To review, the Court has already had occasion to consider the Board's decision to deny Plaintiff benefits when issuing its Opinion addressing the parties' cross-motions for summary judgment on Plaintiff's ERISA claim.

---

[13]     For purposes of this portion of the Opinion, which addresses Plaintiff's entitlement to benefits under the SERP, as opposed to the timeliness of Plaintiff's ERISA claims, the Court considers only the administrative record. The administrative record of the YAI Board's review of Plaintiff's claim is attached as Exhibit A to the Declaration of Jeffery A. Mordos (Dkt. #108–A1-15), and the Court will refer to the record as "A.R.". The documents in the administrative record are contained in the Bates range YAI SERP-WEGMANN-00000001 to YAI SERP-WEGMANN-00000351. For ease of reference, the Court will refer to the page numbers of the administrative record by the numerical portion of the relevant Bates numbers (e.g., A.R. 1-351).

*Wegmann III*, 2018 WL 3910820, at \*10-13.  As articulated in their motion papers, the parties' disputes primarily centered on "competing definitions of what it means to be a 'Management Employee' and what it means to 'be eligible' to participate in the SERP."  *Id.* at \*10.  The Board had found that Plaintiff's right to participate in the SERP could not have vested until 2006, because she was not a management employee within the meaning of the SERP until she was promoted to CFO in that year.  *Id.* at \*10-13.  But the Board also concluded that Plaintiff was not a participant in the SERP even after 2006, because Board approval was a prerequisite for participation and Plaintiff had never received it. *Id.*

This Court concluded that the Board's determination that Plaintiff was not a "Management Employee" until she was promoted to CFO was reasonable. *Wegmann III*, 2018 WL 3910820, at \*10-11.  That said, its decision that the SERP required Board approval before an employee could be "eligible to" participate in the SERP represented an abuse of discretion.  The original eligibility provision of the SERP set forth the three Eligibility Criteria:  an employee had to (i) be a "Management Employee" at YAI; (ii) complete 15 years of service with YAI; and (iii) have compensation that is not fully considered in the computation of Federal Social Security benefits.  (A.R. 57).  Once these requirements were met, the employee would enter into the SERP "on the July 1 coincident with or next following the employee's compliance" with the requirements.  (*Id.*).  Crucially, the SERP "did not carve out any role for the Board in determining eligibility."  *Wegmann III*, 2018 WL 3910820, at \*12.

Thus, the Board's decision to deny Plaintiff SERP benefits because she had not received Board approval was premised on an unreasonable construction of the terms of the SERP itself and was not worthy of deference under ERISA.

The Court stopped short, however, of granting summary judgment in Plaintiff's favor and finding that Plaintiff had a vested interest in the SERP. The Court declined to go to this next step because additional evidence needed to be adduced to determine if the Board's actions in 2005, which included adopting the ECC's recommendation to limit benefit accruals under the SERP to YAI's top five executives, might have precluded Plaintiff from vesting in the SERP in 2006, before she was a top five executive at YAI. *Wegmann III*, 2018 WL 3910820, at *12-13. Because new evidence might have conceivably proven that the 2005 actions were binding, thus permitting the Board to deny Plaintiff's claim, the Court thought it inappropriate at that time to "substitute its own judgment for that of the administrator." *Id.* (quoting *Miller*, 72 F.3d at 1074).

The situation changed appreciably with the Second Circuit's decision in *Levy* v. *Young Adult Institute, Inc.*, 744 F. App'x 12, 15 (2d Cir. 2018) (summary order). There, the Second Circuit held that the Board's actions in 2005 did not constitute a valid amendment of the SERP. *Id.* (affirming *Levy* v. *Young Adult Inst., Inc.*, No. 13 Civ. 2861 (JPO) (SN), 2016 WL 6092705, at *14-15 (S.D.N.Y. Oct. 18, 2016) ("YAI's purported 2005 SERP amendment was invalid because YAI did not follow the SERP's specific amendment procedures")).

The Second Circuit's decision on that issue effectively resolves any remaining disputes of fact concerning the effectiveness of the Board's 2005 actions under the doctrine of nonmutual offensive collateral estoppel. Nonmutual offensive collateral estoppel precludes a defendant "from relitigating an issue the defendant has preciously litigated and lost to another plaintiff." *Faulkner* v. *Nat'l Geographic Enter. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (citing *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 329 (1979)). The doctrine may apply where a plaintiff satisfies five conditions: (i) "the issues in both proceedings [are] identical"; (ii) "the issue in the prior proceeding [was] actually litigated and actually decided"; (iii) "there [was] a full and fair opportunity for litigation in the prior proceeding"; (iv) "the issue previously litigated [was] necessary to support a valid and final judgment on the merits"; and (v) application of the doctrine would not be unfair to the defendant. *Bifolck* v. *Philip Morris USA Inc.*, 936 F.3d 74, 79-80 (2d Cir. 2019) (citing *Parklane Hosiery Co.*, 439 U.S. at 331).

The Court finds each of these conditions to be met here. Both the proceeding in *Levy* and this proceeding involve identical questions of whether the YAI Board's actions in 2005 resulted in a valid amendment to the SERP. This question was both actually litigated in the prior proceeding and essential to the outcome of that proceeding. Furthermore, Defendants were given a full and fair opportunity to litigate the issue, both before a sister court in this District and on appeal. Finally, the Court finds that imposing collateral estoppel on the question of whether the Board amended the SERP in 2005

would promote judicial economy while being fair to Defendants. Defendants themselves seem to have embraced the application of nonmutual offensive collateral estoppel by stipulating to the Second Circuit's decision. (Stip. ¶ 26).

By virtue of the Second Circuit's decision in *Levy*, and the parties' stipulation thereto, the Court concludes that there is no longer any dispute concerning the effect of the Board's actions in March 2005. The Board's actions did not amend the SERP and could not have limited the individuals admissible into the SERP. Thus, the Eligibility Criteria contained in the 1985 SERP were in effect in 2006. Based on the facts contained within the administrative record, the Court concludes that Plaintiff met each of the three Eligibility Criteria on July 1, 2006, when she: (i) was a Management Employee as CFO of YAI (A.R. 291, 334); (ii) had completed more than fifteen years of service with YAI (*id.* at 334, 349); and (iii) had a salary that was not fully considered in the computation of Federal Social Security benefits (*id.* at 203). Under the plain terms of the SERP, Plaintiff became a vested member of the SERP on July 1, 2006. And it is equally clear under the SERP that no amendment after July 1, 2006, could have the effect of divesting Plaintiff's interest in the SERP. (*Id.* at 49 ("The Institute shall have the right to amend the Trust … provided, however, that no amendment shall have the effect of … directly or indirectly divesting the interest of any Plan participant in any amount that he or she would have removed had he terminated his employment with [YAI] immediately prior to the effective date of such amendment[.]")).

Given the state of the record, the Court finds that no new evidence could reasonably permit Defendants to deny Plaintiff's claim, and remand would be a "useless formality." *Miller*, 72 F.3d at 1071-72.[14]  Accordingly, the Court concludes that Plaintiff was a participant in the SERP as of July 1, 2006.

## B. Defendants' Defenses Against Plaintiff's ERISA Claim Fail

Defendants argue that, irrespective of the merits of Plaintiff's ERISA claim, it must be denied for one or more of three reasons: (i) it was not filed within the applicable statute of limitations; (ii) it is barred under the doctrine of laches because of Plaintiff's unreasonable delay in bringing the claim; and (iii) Plaintiff is equitably estopped from raising the claim because Defendants' relied on her silence regarding her right to SERP benefits.  The viability of each of these defenses hinges upon when Plaintiff (i) believed she was a participant in the SERP and (ii) knew or should have known she would not be included in the SERP.  For the reasons that follow, the Court concludes that each of Defendants' defenses fails and Plaintiff is entitled to relief under ERISA.

---

[14]     The Court notes that the parties themselves explicitly declined the opportunity to have the matter remanded to the Plan Administrator following the Court's Opinion of August 14, 2018.  There, the Court stated that, because the Plan Administrator had acted in an arbitrary and capricious manner, it was inclined to "remand the employee's claim to the administrator for further proceedings," but would allow the parties to be heard on how the case ought to proceed.  *Wegmann III*, 2018 WL 3910820, at *8.  Thereafter, Defendants requested that the case proceed to a bench trial (Dkt. #128), because that would be "more practical and efficient ... than remand ... to the SERP administrator for further proceedings."  (Dkt. #134 at 7).  Plaintiff, too, advised that "further proceedings before the administrator of the [SERP] would be a circuitous act of futility," and stated its belief that the administrative record permitted the Court to determine Plaintiff's eligibility for SERP benefits.  (Dkt. #129).

### 1. Plaintiff's ERISA Claim Was Timely Filed Within the Statute of Limitations

#### a. Applicable Law

Because ERISA does not contain a statute of limitations for denial of benefits claims, the Second Circuit directs district courts to look to the most analogous state action, breach of contract, for the applicable limitations period. *Guilbert* v. *Gardner*, 480 F.3d 140, 148-49 (2d Cir. 2007). Consequently, the six-year statute of limitations applicable to New York law breach of contract cases applies to cases brought under ERISA § 502(a)(1)(B). *Id.* at 148. The Second Circuit has further held that a cause of action under ERISA accrues "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff — regardless of whether the plaintiff has filed a formal application for benefits." *Carey* v. *Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999); *see also Miles* v. *N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983).

#### b. Analysis

Plaintiff filed her suit on May 18, 2015. (Dkt. #1). Thus, her ERISA claim is barred if Defendants clearly repudiated her right to participate in the SERP any time before May 18, 2009. Defendants present a laundry list of events that they say should have made Plaintiff aware that her right to participate in the SERP was repudiated well in advance of that date:

    i.    Plaintiff viewed the 2008 Amendment shortly after it was adopted on December 18, 2008, which should have

notified Plaintiff that she would never participate in the SERP;

ii.    Plaintiff was aware that the Board had adopted recommendations in March 2005 that stated that the SERP covered YAI's "top 5 executives," along with a list of individuals that did not include Plaintiff;

iii.   Plaintiff knew that Dr. Levy had raised her participation in the SERP with the Board four times before 2009, and that each time the Board had declined to include Plaintiff;

iv.    Plaintiff had conversations with Mr. Connors beginning in 2007, in which Mr. Connors told Plaintiff she could not be included in the SERP; and

v.     Plaintiff received emails and approved tax documents before May 2009 that reflected her exclusion from the SERP at that time.

(Def. Br. 13-15). The Court concludes that none of these events constituted a clear repudiation.

*First*, the 2008 Amendment did not serve to notify Plaintiff that she would be excluded from participation in the SERP before May 18, 2009. As an initial matter, the Court has already concluded that Plaintiff did not see the 2008 Amendment until July 2010. *See supra* at 17-18. And even if Plaintiff had seen the Amendment in the five months between the date it was signed by the Board, December 18, 2008, and May 18, 2009, the Court concludes that the Amendment would not have clearly repudiated Plaintiff's right to participate in the SERP. As the Court has previously found, Plaintiff continued to believe that she was eligible for inclusion in the SERP by vote of the YAI Board even after she saw the 2008 Amendment. *See supra* at 18-21. This belief was manifested by Plaintiff's willingness to approach the Board as late as 2014 to

express her understanding that she was "entitled to the SERP as an executive" (Pl. Ex. P-14), and supported by Dr. Levy's assurance to Plaintiff that the Board stated it would consider adding Plaintiff to the SERP in 2009, after the 2008 Amendment had been adopted. (Levy Dep. 19:17-21:17, 68:14-69:11). Relatedly, Plaintiff's understanding that she could still participate in the SERP even after viewing the 2008 Amendment was not unreasonable. The 2008 Amendment did provide a list of "sole participants" in the SERP, but the SERP could be further amended through Board vote. And Plaintiff had already been led to believe both that a Board vote was necessary to add her to the SERP and that such vote was certain to occur.

Second, and for much the same reason, the Court concludes that the Board's actions in March 2005 did not and should not have notified Plaintiff that she would not be included in the SERP. To review, in March 2005 the Board voted to adopt three recommendations from the ECC to limit benefit accruals under the SERP to the "top 5 executives[,]" namely, the CEO, the COO, the two Associate Executive Directors, and the CFO. (Def. Ex. H, I, J). Even assuming Plaintiff was immediately aware of the Board's action, it does not follow that she would have known she had been rejected from participating in the SERP. As it happened, the Board's action in March 2005 did not constitute a valid amendment to the SERP. *See Levy*, 744 F. App'x at 15. But even if the Board's actions had modified the SERP, the plain language of the recommendation adopted stated that YAI's CFO would be a participant in the SERP. (Def. Ex. H, I, J). When Plaintiff read that agreement, she could have

reasonably understood it to mean that she would become a participant in the SERP when she was promoted to CFO in 2006.

*Third*, neither Plaintiff's conversations with Dr. Levy nor her conversations with Mr. Connors clearly repudiated her right to participate in the SERP. Although Dr. Levy told Plaintiff that the Board had declined to include her in the SERP on four separate occasions, he assured her each time that he would continue to advocate for her inclusion, indicating that the possibility had not been forever foreclosed. (Levy Dep. 19:17-21:17, 68:14-69:11; Wegmann Decl. ¶¶14-15). Indeed, the Court has found that Dr. Levy led Plaintiff to believe that she would eventually be included in the SERP. *See supra* at 11-13. The fact that Dr. Levy told Plaintiff the Board would consider admitting her into the SERP in 2009 further undermines Defendants' arguments that she should have known her participation had been repudiated by May 18, 2009. (*Id.*).

Likewise, any conversations Plaintiff had with Mr. Connors prior to May 18, 2009, did not serve as clear repudiation because, as the Court has found, Mr. Connors did not clearly express to Plaintiff that she could not be included in the SERP. *See supra* at 14-16. This failure may have been caused by a miscommunication between the two; Mr. Connors understood his discussions with Plaintiff about retirement plans to be about a hypothetical, not-yet-created supplemental pension plan, while Plaintiff understood they were discussing her inclusion in the already-established SERP.

Finally, though there are numerous instances in which Plaintiff was told or herself represented that she was not a member of the SERP from 2007 to 2009 (*see* Def. FFCL ¶¶ 136-203), none of them served as clear repudiation that she would not eventually be included in the SERP. Throughout this time period, Plaintiff was led to believe that her participation in the SERP was assured, and would be finalized with the ministerial task of Board approval. *See supra* at 11-16. Instances in which Plaintiff was told by others, or in which she told others, that she was not included in the SERP do not establish that Plaintiff knew she has been denied participation in the SERP — they merely reflect Plaintiff's understanding that her participation was forthcoming.

For all of these reasons, the Court finds that Plaintiff did not receive clear repudiation before May 18, 2009, that either did cause or should have caused her to understand that she would not participate in the SERP. Accordingly, Plaintiff's ERISA claim was timely filed within the statute of limitations.

### 2. The Equitable Defense of Laches Does Not Bar Plaintiff's ERISA Claim

#### a. Applicable Law

"A party asserting the equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." *Veltri* v. *Building Service 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (quoting *King* v. *Innovation Books*, 976 F.2d 824, 832 (2d Cir. 1992)).[15] Where the associated

---

[15] The Court notes that courts have disagreed regarding whether laches may apply to ERISA claims. The dispute stems from the principle that "laches is not a defense to an action filed within the applicable statute of limitations," because "[a]n express

34

statute of limitations has not run, the burden remains on the defendant to prove the defense. *Fed. Treasury Enters. Sojuzplodoimport* v. *Spirits Int'l B.V.*, 809 F.3d 737, 745-46 (2d Cir. 2016).

### b. Analysis

Defendants' laches argument is largely indistinguishable from its statute of limitations argument and must be rejected on similar grounds. Defendants

---

limitations period 'reflect[s] a legislative value judgment' striking the appropriate balance between the interests promoted by the statute and countervailing interests of repose." *Ivani Contracting Corp.* v. *City of New York*, 103 F.3d 257, 260 (2d Cir. 1997) (quoting *Ashley* v. *Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995)). In *Ivani*, the Second Circuit summarized the "prevailing rule": "when a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely." 103 F.3d 257, 260 (2d Cir. 1997). The Court went on to apply this rule to claims brought under 42 U.S.C. §§ 1981, 1983, and 2000d, which do not have express statutory limitations periods, and instead borrow their limitations period from state law. *Id.* The Court held that laches could not apply to these claims, because Congress' silence amounted to a "legislative decision to borrow a state statute of limitations for a federal substantive statute," which deserves judicial respect. *Id.*; *see also Leopard Marine & Trading, Ltd.*, v. *Easy Street Ltd.*, 896 F.3d 174, 194 (2d Cir. 2018). Drawing upon these principles, at least one court has found that laches cannot apply to ERISA claims, because ERISA claims incorporate the most nearly analogous state limitations statute. *See Trustees of Hollow Metal Tr. Fund* v. *FHA Firedoor Corp.*, No. 12 Civ. 7069 (PAC), 2013 WL 1809673, at *3 (S.D.N.Y. Apr. 30, 2013) ("Since a six-year statute of limitations applies to ERISA claims … laches is not applicable to the Funds' claims.").

A different body of case law, however, suggests the opposite may be true, and that laches may apply to a claim that borrows an analogous state statute of limitations. *Conopco, Inc.* v. *Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ("[P]rior to the running of the most closely analogous state statute of limitations there is no presumption of laches and the burden remains on the defendant to prove the defense."). This has led other sister courts to apply laches to ERISA claims. *See Wagner* v. *Metro. Life Ins. Co.*, 08 Civ. 11284 (GBD) (HBP), 2011 WL 2638143, at *7-9 (S.D.N.Y. Feb. 28, 2011) (applying laches to an ERISA claim), *report and recommendation adopted*, 2011 WL 2623390 (S.D.N.Y. July 1, 2011).

The Court takes notice that, most recently, the Second Circuit has suggested that a federal claim that adopts an analogous state statute's limitations period is not immune from laches. In *Federal Treasury Enterprises Sojuzplodoimport* v. *Spirits International B.V.*, the Court found that laches could apply to claims brought under the Lanham Act, which does not prescribe a statute of limitations and instead adopts the most analogous state statute's limitations period. 809 F.3d 737, 745-46 (2d Cir. 2016). Thus, the Court concludes that laches may apply to federal claims brought under statutes that do not themselves contain express statutes of limitation, but rather adopt the limitations period of an analogous state-law claim.

claim that Plaintiff knew she would not be included in the SERP beginning in 2004 and displayed an unreasonable lack of diligence in protecting her rights by waiting until 2015 to bring an ERISA claim challenging that denial. (Def. FFCL ¶¶ 256-265). As proof of Plaintiff's early knowledge that she had been denied participation in the SERP, Defendants point to the same events relied upon in their statute of limitations briefing: (i) Plaintiff's conversations with Mr. Connors and Dr. Levy; and (ii) Plaintiff's knowledge that YAI was not setting funds aside to fund her SERP benefits. (*Id.*).

The Court has already concluded that none of the events Defendants cite caused or should have caused Plaintiff to believe she would not participate in the SERP. *See supra* at 11-16. Further, the Court has found that Plaintiff continued to believe she was eligible to participate in the SERP into 2014, when she approached the chairman of the YAI Board and informed him of her belief that she was entitled to SERP benefits. *See supra* at 16-20 (citing Pl. Ex. P-14). It was only in July 2014 that Defendants finally and firmly informed Plaintiff that she would not receive any SERP benefits. *See supra* at 19-20. The Court finds that, upon receiving this information, Plaintiff did not display a lack of diligence in initiating an action; she filed her ERISA claim just eleven months later.

Even if Plaintiff had been lax in pursuing her rights, the Court is not convinced that the prejudice prong of the laches analysis would be satisfied. Defendants claim that, had Plaintiff informed them earlier that she believed she was entitled to benefits under the SERP, they could have: (i) modified the SERP

to reduce the benefits Plaintiff would be owed over time; (ii) set aside funds to finance Plaintiff's SERP benefit; or (iii) attempted to settle Plaintiff's SERP claim, as they did with other SERP participants. (Def. FFCL ¶ 264). It is true that Defendants would likely be in a stronger position today had they engaged any one of these mitigating techniques in prior years. But their failure to do so cannot be blamed entirely on the fact that Plaintiff did not file an ERISA action at some earlier point in time. Defendants received notice on at least five prior occasions that Plaintiff was seeking to be included in the SERP: the four instances in which Dr. Levy raised Plaintiff's inclusion to the Board from 2004 to 2008, and the meeting in 2014 in which Plaintiff told the chairman of the YAI Board that she thought she was entitled to benefits. *See supra* at 11-13, 18-19. Defendants did not take any one of these opportunities to clarify their position that Plaintiff would never be included in the SERP, to prepare for Plaintiff's eventual inclusion in the SERP, or even to analyze closely the contents of the SERP, which contents unambiguously provide that Plaintiff became a vested participant in the SERP on July 1, 2006. Thus, any prejudice that Defendants have suffered may just as readily be blamed upon their own lack of diligence in administering the SERP.

For these reasons, the Court concludes that Plaintiff's claim is not barred by laches.

### 3. Plaintiff Is Not Equitably Estopped from Asserting Her ERISA Claim

#### a. Applicable Law

"The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow* v. *New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (citing *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996)). Under federal law, a party may be estopped from pursuing a claim or defense where: (i) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; (ii) and the other party reasonably relies upon it; (iii) to her detriment. *Kosakow*, 274 F.3d at 725 (citing *Heckler* v. *Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984)).[16] Silence may in some cases be sufficient to establish a misrepresentation, but only where an individual has a duty to speak. *Gaia House Mezz LLC* v. *State Street Bank and Trust Co.*, 720 F.3d 84, 90 (2d. Cir. 2013); *see also Veltri*, 393 F.3d at 326 ("Silence may in some cases be sufficient to establish a misrepresentation.").

---

[16] The Court notes that, whether equitable estoppel applies in a given case is ultimately a question of fact. *Bennett* v. *United States Lines, Inc.*, 64 F.3d 62, 65 (2d Cir. 1995). The Court has included its equitable estoppel analysis in the Conclusions of Law portion of the Opinion because the analysis addresses Defendants' defense and is closely related to the analysis of Defendants' other two defenses which are addressed in the Conclusions of Law section. Nevertheless, the Court understands that its conclusion on the subject is a finding of fact.

## b.    Analysis

Defendants contend that Plaintiff should be equitably estopped from arguing that she was automatically a participant in the SERP on July 1, 2006, because if she believed that to be true, she should have told Defendants as much on that date or shortly thereafter.  To frame the argument more squarely within the confines of equitable estoppel, Defendants claim that: (i) Plaintiff was silent regarding the fact that she was a participant in the SERP as of July 1, 2006; (ii) Plaintiff had a duty to inform Plaintiff that she was a participant in the SERP; (iii) Defendants reasonably relied on Plaintiff's silence concerning her participation in the SERP; and (iv) Defendants' reliance was to their detriment.  (Def FFCL ¶¶ 266-277).

The core factual issue is whether Plaintiff believed she was a SERP participant once she satisfied the Eligibility Criteria on July 1, 2006.  If Plaintiff did believe she was automatically enrolled in the SERP, the Court would find that she misrepresented that fact by approving YAI tax filings and other documents that indicated she was not a participant in the SERP.  (*See, e.g.*, Def. FFCL ¶ 202).[17]  But, as the Court has found on a consideration of the full record, Plaintiff did *not* believe she was automatically a fully vested participant in the SERP once she satisfied the Eligibility Criteria.  *See supra* at 11-16.  Plaintiff believed that the YAI Board needed to take a final, formalistic action,

---

[17]    Defendants have argued that Plaintiff had an affirmative duty to speak with the Board regarding her participation in the SERP, and that her silence on the subject was a misrepresentation.  (Def. Br. 20 n.1).  The Court need not address whether Plaintiff had such an affirmative duty, because it concludes that she understood during the relevant times that she was not a participant in the SERP.

and approve her SERP participation. (*Id.*). Plaintiff was led to have this belief by Defendants' own course of conduct and multiple representations by Dr. Levy, Defendants' then-CEO. (*Id.*) Further, Plaintiff was led to believe that such approval was guaranteed, and that she would certainly be approved to participate in the SERP. (*Id.*). Thus, Plaintiff was not making any misrepresentations to Defendants when her actions indicated she did not believe she was a participant in the SERP. Nor was she misrepresenting the truth when she repeatedly sought to have the Board approve her participation. To the contrary, Plaintiff was acting consistently with her belief that she was not at that time a participant in the SERP, though she would one day be.

Even if Plaintiff had made a misrepresentation to the Board concerning her belief that she was not a participant in the SERP, which she did not, the Court is not convinced that Defendants would have been reasonable in relying upon that misrepresentation. As the Court determined in a prior Opinion, the plain terms of the SERP clearly provide that an employee is automatically enrolled in the SERP once the Eligibility Criteria are satisfied. *Wegmann III*, 2018 WL 3910820, at *12-13. And as administrator of the SERP, the Board of YAI can fairly have been expected to understand the plain meaning of the document itself. In executing its duties as Plan Administrator, the Board would have been unreasonable to rely to any significant degree on Plaintiff's reading of the SERP.

To put a finer point on it, the Court finds that, though the SERP plainly provides that Plaintiff was a participant in the SERP as of July 1, 2006, all of

the parties in the litigation mistakenly believed that Board approval was necessary through 2014.  Defendants invocation of equitable estoppel is premised on the belief that it would be unfair to hold them to the plain meaning of the SERP, because Plaintiff herself misunderstood the document for much of the relevant history.  The Court disagrees.  Plaintiff's misunderstanding of the SERP was based on assurances provided to her by executives at YAI and by Defendants' own course of conduct.  It would be inequitable to allow Defendants to avoid their clear contractual obligation when Plaintiff brought a timely suit to enforce her rights.

For these reasons, the Court finds that Plaintiff became a participant in the SERP on July 1, 2006, and is entitled to benefits under the SERP. Defendants' defenses against Plaintiff's ERISA claim are unavailing.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff is entitled to relief on her ERISA claim.  It is ORDERED, ADJUDGED, AND DECREED that Plaintiff shall have judgment against Defendants in an amount to be determined later.

While the parties presented evidence and arguments concerning the proper construction of Plan terms and the proper method of calculating the benefits to which Plaintiff is entitled, the Court does not have all of the information it needs to complete these calculations.  As such, the Court concludes that an additional hearing, consisting of oral argument from both Plaintiff and Defendants, is required to determine the amount of benefits to

which Plaintiff is entitled.  Accordingly, the parties are ORDERED to appear for a hearing on **November 13, 2019, at 10:00 a.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.  If, prior to that date, the parties conclude that they would prefer the Court to stay the matter briefly, so that they can attempt to resolve among themselves the remaining issues in the case, they should promptly advise the Court.

    SO ORDERED.

Dated:      October 31, 2019
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge