UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| KAREN WEGMANN, | |
|---|---|
| Plaintiff, | |
| -v.- | 15 Civ. 3815 (KPF) |
| YOUNG ADULT INSTITUTE, INC., TRUSTEES OF THE SUPPLEMENTAL PENSION PLAN FOR CERTAIN MANAGEMENT EMPLOYEES OF YOUNG ADULT INSTITUTE, INC., | **ORDER** |
| Defendants. | |

KATHERINE POLK FAILLA, District Judge:

Familiarity with the extensive procedural history of this case is presumed. *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) (granting motion to dismiss complaint); *Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 8711557 (S.D.N.Y. Aug. 5, 2016) (granting motion to stay pending exhaustion of administrative remedies with respect to Plaintiff's ERISA claim in amended complaint); *Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2018 WL 3910820 (S.D.N.Y. Aug. 14, 2018) (denying cross-motions for summary judgment as to Plaintiff's ERISA claim; granting Defendants' motion for summary judgment as to Plaintiff's gender discrimination claim). On May 29, 2019, the Court held a bench trial as to Plaintiff's remaining claim under ERISA. On October 31, 2019, the Court issued its Findings of Fact and Conclusions of Law, determining that Plaintiff was entitled to relief on her

ERISA claim. *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2019 WL 5682666 (S.D.N.Y. Oct. 31, 2019). (Dkt. #165).[1]

On November 13, 2019, the Court held a hearing to determine the amount of damages owed to Plaintiff, and it now renders its decision. After considering the parties' pre- and post-trial submissions, the evidence developed at trial, and the parties' arguments advanced during the damages hearing, the Court concludes that Plaintiff is entitled to a net annual annuity of $274,339.09, to be paid in monthly installments commencing on January 25, 2022.[2]

## DISCUSSION

Defendants introduced into the record a declaration and written report by their expert witness, actuary Victor Harte. (Harte Decl.). Mr. Harte submitted two documents, titled Schedule I and Schedule II, in which he provided the Court with his calculation of the net annual annuity that Plaintiff would be owed using two different formulas: (i) the formula set forth in the original 1985 SERP (Schedule II); and (ii) the formula set forth in the 2008 Amendment to the SERP (Schedule I). During the damages hearing, the parties

---

[1] The Court assumes familiarity with its Findings of Fact and Conclusions of Law and adopts the same naming conventions contained therein. (Dkt. #165).

[2] The Court provided the parties an opportunity to have this specific matter remanded to the Plan Administrator, so that it could determine whether Plaintiff was entitled to ERISA benefits and, if so, the amount of benefits owed. The parties declined this opportunity and stated that they preferred for the Court to conduct further proceedings. (Dkt. #129, 134). Later, after the damages hearing, the Court provided the parties a period of time in which to submit supplemental briefing concerning the amount of benefits owed to Plaintiff. The parties elected not to file any supplemental papers.

2

made clear that they generally accepted the accuracy of Mr. Harte's damages calculations, but disagreed on three key issues:

(i) What types of compensation and benefits that Plaintiff received while working at YAI should be included in her "total annual earnings," as the term appears in the 1985 SERP and the 2008 Amendment to the SERP (Def. Ex. A at 382-83; Def. Ex. AT at 425-26);

(ii) Whether, under the 2008 Amendment, Plaintiff's annual annuity before offset should be limited to her accrued benefit before June 30, 2008, or 65% of her highest annual earnings (Def. Ex. AT at 426); and

(iii) Whether the formula provided in the 1985 SERP or the 2008 Amendment should be used to calculate Plaintiff's benefit.

(November 13, 2019 Hearing Tr. 30; Trial Tr. 34:11-18). The Court resolves each of these disputes in turn.

### 1. Plaintiff's "Total Annual Earnings" Figure Differs Under the 1985 SERP and the 2008 Amendment

While employed by YAI, Plaintiff received compensation and other benefits in the forms of: (i) regular pay; (ii) a longevity bonus; (iii) a car allowance; (iv) long-term disability; (v) a bonus from YAI; and (vi) a bonus from an entity called the New York League of Early Learning (the "NYL"). (Pl. FFCL ¶ 79). As explained below, the answer to the question of which of these payments are included in Plaintiff's "total annual earnings" figure for SERP purposes differs depending upon whether one considers the 1985 SERP or its 2008 Amendment.

The Court begins with the 1985 SERP, which does not provide a definition for the phrase "total annual earnings." (Def. Ex. A at 382-83). And,

as it happens, there is little evidence in the record to aid the Court in determining the proper definition. Defendants have offered the Court:

(i) Mr. Harte's expert testimony that "total annual earnings" means salary and regular bonus (but not longevity bonus). (Trial Tr. 228:18-229:3, 230:3-231:15, 241:18-242:18);

(ii) The testimony of former YAI Board of Trustees Chair Marcella Fava that the Board considered "total annual earnings" to consist solely of a participant's salary and YAI bonus (Fava Decl. ¶ 19); and

(iii) Documents that indicate that the Board believed "total annual earnings" to include salary and bonus paid by YAI (Def. Ex. I at 403; Def. Ex. F at 3074).

This evidence, which suggests that Plaintiff's total annual earnings is limited to her salary and YAI bonus, is further supported by the dictionary definition of "earnings": "Revenue gained from labor or services, from the investment of capital, or from assets." *Earnings*, BLACK'S LAW DICTIONARY (11th ed. 2019).[3] This definition suggests that "earnings" should include only payments related to labor, and not supplemental benefits, like car allowances. Plaintiff, for her part, has introduced no evidence, aside from her own testimony, in which she opined that "total annual earnings," as the phrase appears in the 1985 SERP, should include her longevity bonus, car allowance, long-term disability, and bonus received from the NYL. On this record, the Court finds that "total

---

[3] *See Textron Lycoming Reciprocating Engine Div., Avco Corp.* v. *United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656 (1998) (using dictionary definition to determine meaning of word "for" in federal question case); *Nasdaq, Inc.* v. *Exch. Traded Managers Grp., LLC*, No. 17 Civ. 8252 (PAE), 2019 WL 6977393, at *36 (S.D.N.Y. Dec. 20, 2019) ("Words and phrases are to be given their plain and ordinary meaning, and New York courts will commonly refer to dictionary definitions in order to determine that meaning." (quoting *Summit Health, Inc.* v. *APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014)).

annual earnings" under the 1985 SERP is limited to Plaintiff's salary and YAI bonus.

The 2008 Amendment, in contrast, expressly provides that "Total Annual Earnings shall include all cash compensation (salary plus bonuses) paid through any agency affiliated with the YAI National Institute for People with Disabilities Network, excluding the bonuses denominated 'YAI Bonus II' and 'YAI Interest Bonus.'" (Def. Ex. AT at 426). The calculation of Plaintiff's "total annual earnings" under this definition is correspondingly different: Plaintiff's regular pay and YAI bonus are plainly included, while her car allowance and long-term disability payments, which are neither salaries nor bonuses, are plainly not. Whether Plaintiff's "total annual earnings" includes her longevity bonus and her bonus received from the NYL requires additional discussion.

The Court concludes that Plaintiff's longevity bonus should be included. Because it employs the plural version of the word "bonus," the 2008 Amendment clearly contemplates that multiple bonuses received by a SERP participant may be counted. More importantly, the amendment clarifies that all bonuses paid through YAI should be included, which would encompass the longevity bonus.

Conversely, the Court concludes that the NYL bonus should not be included. This bonus could be counted only if the NYL were "affiliated" with YAI. (Def. Ex. AT at 426). And the parties have provided scant evidence concerning whether the NYL was in fact an affiliate of YAI. Plaintiff believed that the NYL was an affiliate of YAI, because the two were joined by

5

management agreements. (Trial Tr. 52:23-54:11). But Plaintiff admitted that YAI had no ownership interest in the NYL. (*Id.*). In light of the limited evidence at hand, the Court again looks to the dictionary, which defines affiliate as "[a] corporation that that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation," or "[s]omeone who controls, is controlled by, or is under common control with an issuer of a security." *Affiliate*, BLACK'S LAW DICTIONARY (11th ed. 2019). (*See also* Def. FFCL ¶¶ 289-91). Because the record does not demonstrate that YAI has an ownership interest in the NYL (or the converse), the Court cannot conclude that the two organizations are affiliated as the 2008 Amendment requires. Thus, the bonus Plaintiff received from the NYL will not be included in her total annual earnings figure as defined by the 2008 Amendment.

The Court must next determine in which year Plaintiff had her highest "total annual earnings," under either definition of the term. On the record before it, the Court concludes that Plaintiff realized the highest total annual earnings under the 1985 SERP, when she received: (i) $270,885.53 in regular pay; and (ii) $46,261.04 in YAI bonus. (Pl. FFCL. ¶ 79; Harte Decl. Schedule IV). [4] Plaintiff also realized the highest total annual earnings under the 2008

---

[4] During the damages hearing, the Court suggested to the parties that one reading of Section 7.1 of the 1985 SERP would require the Court to limit Plaintiff's highest total annual earnings under the 1985 SERP to payments she received before June 30, 2007, the date immediately prior to the effective date of the 2008 Amendment. (*See generally* Nov. 13, 2019 Hearing Tr.; Def. Ex. A at 372). By this logic, all inputs to the formula provided in the 1985 SERP would assume that Plaintiff had been terminated on June 30, 2007. (*Id.*). The parties agreed, however, that the Court should consider Plaintiff's full career at YAI, including the payments she received from YAI until her resignation on June 30, 2014, when performing calculations under the 1985 SERP's

6

Amendment in the year 2009, when she received: (i) $270,885.53 in regular pay; (ii) $46,261.04 in YAI bonus; and (iii) $73,817.89 in longevity bonus. (*Id.*). Thus, Plaintiff's highest total annual earnings under the 1985 SERP is $317,146.57, and Plaintiff's highest total annual earnings under the 2008 Amendment is $390,964.46.

### 2. The 2008 Amendment Does Not Limit Plaintiff's Annual Annuity Before Offset to the Greater of Her Accrued Benefit Before June 30, 2008, or 65% of Her Highest Annual Earnings

In addition to modifying the 1985 SERP's formula for calculating benefits, the 2008 Amendment expressly limited certain specified individuals' annual annuity before offset to the greater of: (i) their accrued benefit before June 30, 2008; or (ii) 65% of their highest annual earnings. (Def. Ex. AT at 426). Defendants argue that these limitations should apply to Plaintiff as well, notwithstanding the fact she is not one of the individuals the 2008 Amendment identifies as being affected by them. (Nov. 13, 2019 Hearing Tr. 23:12-22, 27:12-28:3). Defendants' argument is premised on the fact that, at the time the 2008 Amendment was adopted, the Board did not know that Plaintiff was a participant in the SERP and thus did not believe her benefits needed to be limited. (*Id.*). The Court is unmoved by Defendants' arguments. "[A]s administrator of the SERP, the Board of YAI can fairly have been expected to understand the plain meaning of the document itself." (Dkt. #165 at 40). Thus, the Board has no excuse for not knowing that Plaintiff was a participant

---

formula. The Court will not disturb the parties' stipulation and performs the calculations herein accordingly.

in the SERP at the time of the 2008 Amendment. Further, in drafting the 2008 Amendment, the Board could have chosen to apply the limitations to all SERP participants, rather than to specific individuals. They failed to do so. Even if the Board's failure to list Plaintiff were the result of an honest mistake, the meaning of the 2008 Amendment is plain. Because the 2008 Amendment does not limit Plaintiff's annual annuity before offset to the greater of her accrued benefit before June 30, 2008, or 65% of her highest annual earnings, the Court will not do so either.

### 3. The Formula Specified in the 2008 Amendment Will Be Used to Calculate Plaintiff's Benefits

Plaintiff argues that the Court must use the formula set forth in the 1985 Amendment, because the 2008 Amendment cannot apply to Plaintiff. (Nov. 13, 2019 Hearing Tr. at 31:4-32:7). Plaintiff bases this argument on the fact that the preamble to the amendment states that it will "document the imposition of certain Plan accrual limitations as agreed under employment agreements between the Institute, and, respectively, Joel M. Levy and Philip H. Levy, and to make certain other changes." (Def. Ex. AT at 417). Plaintiff claims that, because there is no evidence that limitations concerning Plaintiff's accrual were agreed to in any of the relevant employment agreements, the Amendment does not contemplate imposing any changes upon Plaintiff's SERP benefits. (Nov. 13, 2019 Hearing Tr. at 31:4-32:7).

But Plaintiff misunderstands the limiting effect of the preamble to the 2008 Amendment. The sentence in question countenances the imposition of changes to the SERP that were agreed to in the employment agreements *in*

8

*addition to* "certain other changes." (Def. Ex. AT at 417). Thus, the fact that changes regarding Plaintiff's benefits were not agreed to in the employment agreements does not mean that the 2008 Amendment cannot apply to Plaintiff.

After careful consideration of the record, the Court concludes that the 2008 Amendment may apply to Plaintiff, but only if it would not leave Plaintiff with a lesser benefit than she would have received before the 2008 Amendment was adopted. The Court's understanding is derived from Section 7.1 of the 1985 SERP, which gives YAI the right to amend the SERP at any time, provided that:

> [N]o amendment shall have the effect of: (i) directly or indirectly divesting the interest of any Plan participant in any amount that he or she would have removed had he terminated his employment with the Institute immediately prior to the effective date of such amendment, or the interest of any beneficiary of such participant as such interest existed prior to the effective date of such amendment[.]

(Def. Ex. A at 372). Accordingly, the formula provided by the 2008 Amendment can be binding upon Plaintiff only if it would not divest her of any interest in the SERP and would instead provide her with additional value. The Court must thus conduct two calculations, one using the formula provided in the 1985 SERP and one using the formula provided in the 2008 Amendment. The calculation that provides Plaintiff with the greater benefit is the one to which she is entitled.

To review, the Court (i) has determined Plaintiff's highest total annual earnings under both the 1985 SERP and the 2008 Amendment and (ii) has concluded that Plaintiff's 2008 Amendment does not limit Plaintiff's annual

9

annuity before offset to the greater of her accrued benefit before June 30, 2008, or 65% of her highest annual earnings. The parties have otherwise stipulated to the accuracy of Mr. Harte's proposed inputs and calculations. Therefore, the Court relies on the calculations provided by Mr. Harte in Schedules I and II, modifying them only to reflect the Court's decisions regarding Plaintiff's total annual earnings and the lack of a limitation on Plaintiff's annual annuity before offset. Under the 1985 SERP, Plaintiff would be entitled to a net annual annuity of $224,787.55, which, the Court observes, matches the figure in Mr. Harte's schedule. (Harte Decl. Schedule II). Under the 2008 Amendment, Plaintiff would be entitled to a net annual annuity of $274,339.09. (*See* Harte Decl. Schedule I). Thus, Plaintiff would be entitled to a greater benefit under the 2008 Amendment. For this reason, the 2008 Amendment will apply to Plaintiff.

Plaintiff is awarded damages in the form of a net annual annuity of $274,339.09, to be paid in monthly installments (*see* Def. Ex. A. at 381; Def. Ex. AT at 424), commencing on Plaintiff's sixty-fifth birthday, on January 25, 2022. (Trial Tr. 89:3-8).

## CONCLUSION

For the foregoing reasons, the Court awards Plaintiff a net annual annuity of $274,339.09, to be paid in monthly installments commencing on January 25, 2022. The Court recognizes that this is a considerable supplemental benefit, particularly given the charitable organization for which Plaintiff worked, and yet it is the agreement these parties made.

The claim under which this award is made was brought by Plaintiff pursuant to 29 U.S.C. § 1132(a)(1)(B); a different subsection of this provision affords the Court discretion to award attorneys' fees to prevailing parties. *See generally* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."); *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (permitting fees where the party seeking fees has obtained "some degree of success on the merits"). (*See also* Am. Compl. ¶ 132(f) (requesting attorneys' fees)). The parties are ORDERED to meet and confer on this issue. If the parties cannot agree on a figure for fees and costs, they are further ORDERED to submit a proposed briefing schedule for the motion on or before **March 7, 2020**.

SO ORDERED.

Dated: February 14, 2020
       New York, New York

*[signature: Katherine Polk Failla]*

KATHERINE POLK FAILLA
United States District Judge